SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------X
FRANCESCO GALLO,

        Plaintiff,

-against-

ALITALIA - LINEE AEREE ITALIANE –
SOCIETA PER AZIONI,
PIERANDREA GALLI, and
GIULIO LIBUTTI,

        Defendants.
---------------------------------------------------------------X

Index #:
Date purchased:

Plaintiff designates:
NEW YORK COUNTY as the
Place of trial

**SUMMONS**

07108597

The basis of the venue is

Plaintiff's residence in
in the County of New York
at 300 E. 59th St., NY, NY

To the above named Defendants

 YOU ARE HEREBY SUMMONED to answer the amended complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
    June 20, 2007

              AKIN & SMITH, LLC
              Attorneys for Plaintiff

              By: DEREK T. SMITH
              305 Broadway, Suite 1101
              New York, New York 10007
              (212) 587-0760

Defendants' Addresses:
ALITALIA - LINEE AEREE ITALIANE – SOCIETA PER AZIONI
VIA SECRETARY OF STATE

PIERANDREA GALLI
VIA HAGUE CONVENTION

GIULO LIBUTTI
VIA HAGUE CONVENTION

FILED
JUN 20 2007
COUNTY CLERK'S OFFICE
NEW YORK

SUPREME COURT OF THE STATE OF NEW YORK      INDEX #:
COUNTY OF NEW YORK
----------------------------------------X
FRANCESCO GALLO,
                Plaintiff,
    -against-                                **COMPLAINT**

ALITALIA - LINEE AEREE ITALIANE –
SOCIETA PER AZIONI,
PIERANDREA GALLI, and
GIULO LIBUTTI,                                  07108597

                Defendants
----------------------------------------X

    Plaintiff, by his attorneys, AKIN & SMITH, LLC complains of defendants upon information and belief as follows:

[FILED JUN 20 2007 COUNTY CLERK'S OFFICE NEW YORK]

1. Plaintiff complains pursuant to the laws of the State of New York and the Administrative Code of the City of New York, seeking damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, being harassed, discriminated and retaliated against, and discharged by Defendants, Plaintiff's former employer as a result of his age, citizenship, disability, perceived sexual orientation and in retaliation for opposing the unlawful employment practices of defendants.

2. Plaintiff is a resident of the State of New York, is over the age of 40, male, and is an American Citizen.

3. Defendant ALITALIA - LINEE AEREE ITALIANE – SOCIETA PER AZIONI (hereinafter also referred to as "Alitalia") is a foreign business corporation duly existing under the laws of the State of New York.

4. Defendant ALITALIA - LINEE AEREE ITALIANE – SOCIETA PER AZIONI is a foreign business entity which does business in the State of New York.

5. Defendant PIERANDREA GALLI ("GALLI" or "Mr. Galli") was at all times material an employee of Defendant ALITALIA.

6. Defendant PIERANDREA GALLI was at all times material a supervisor of Plaintiff.

7. Defendant PIERANDREA GALLI was at all times material a resident of Italy.

8. Defendant PIERANDREA GALLI was at all times material the direct supervisor of Plaintiff.

9. Defendant GIULIO LIBUTTI ("LIBUTTI" or "Mr. Libutti") was at all times material an employee of Defendant ALITALIA.

10. Defendant GIULIO LIBUTTI was at all times material a supervisor of Plaintiff.

11. Defendant GIULIO LIBUTTI was at all times material a resident of Italy.

12. Defendant GIULIO LIBUTTI was at all times material the direct supervisor of Plaintiff.

13. Plaintiff began working for ALITALIA around September of 1968 as an accountant.

14. Plaintiff worked his way up through Alitalia to become Managing Director of Alitalia - North America.

15. Around September 15, 2005 Plaintiff was purportedly reassigned as a "Consultant" to Alitalia pursuant to an agreement between the parties.

16. However, in reality, Plaintiff was not reassigned as a "Consultant" but was rather kept on and reassigned as the Senior Vice President of Alitalia for Corporate and Regulatory Affairs for North America, working under LIBUTTI.

17. After September 15, 2005, Plaintiff continued as an employee of Defendants.

18. The above Agreement also purported to release Alitalia from all claims up to September 15, 2005.

19. Defendants wrongfully terminated Plaintiff on or around the end of May, 2006. [handwritten: orig. say Ma(r)ch 15]

20. Plaintiff brings this action for all discrimination and retaliation for all instances of unlawful employment conduct and discrimination after September 15, 2005. However, Plaintiff fully reserves the right to introduce all previous instances of unlawful discrimination as evidence of the hostile work environment, discriminatory adverse employment actions, and as evidence of unlawful retaliation against Plaintiff. Any mention of dates and instances prior to September 15, 2005 are for evidentiary reasons pertinent to the work conditions and employment actions after September 15, 2005.

21. On or about December 2003, during a meeting held in New York, Mr. Francesco Mengozzi, the CEO of the Alitalia, directed Plaintiff to make sure, by the same year ending, to terminate at least 50% of Alitalia's North American Division employees, supervisors and managers who were over the age of 50 years, and to replace these "older" workers with younger individuals, not older than "30/32 years of age."

22. During the first week of October 2005, Plaintiff was told by Mr. PierAndrea Galli, (Senior Director Sales Worldwide) located at Alitalia's Headquarters in Rome, Italy, (Plaintiff's direct superior), that as of that date, he was not reporting to him directly any longer, and that his new direct Supervisor was Mr. Giulio Libutti (SVP. Sales North American).

23. Almost every single morning, Mr. Libutti would call Plaintiff into his office and, always closing his office's door, and ask Plaintiff questions related to the sexual orientation of various employees male and female alike.

24. On or about the second week of December 2005, Mr. Libutti asked Plaintiff, "Franco, (Plaintiff's nickname for Francesco), I would like to know from you, why do you always defend gays and lesbians? Why don't you want to fire them? Is it possible that you are one of them?"

25. On or about the end of December 2005, while Mr. Libutti was either on vacation, or out on business, during an initially work-related telephone conversation, Mr. Libutti told Plaintiff "I'm having the greatest time on the beach, so much pussy available!! Even if my wife is here. I making sure to get all my opportunities! Well I forgot that you don't care about pussy. . . How are all the queers (FROCI was the Italian word used which has a much worse connotation than Fag) at Alitalia? . . Since I'm not there, you must be very busy taking it in the ass. Try to be good. . . Think what would happen if your wife would find it out!"

26. Upon Mr. Libutti's return to the office, making reference to the telephone conversation, Plaintiff related to him that he did not appreciate at all his conduct, and it was necessary to stop immediately. While leaving his office, Mr. Libutti grabbed Plaintiff's arm, forcefully closed the office's door and yelled: "sit down on this fucking chair, and listen to me carefully, or I will break your ass.........oh no, no you might like that very much, but listen to me once and for all: as you should know by now, I am a real and convinced fascist, like your friend Mazzucco, I hate with all my passion gays, lesbians, Jews, and all these fucking Americans attorneys, that protect

them. Now I understand why you negated your Italian citizenship and became one of them. Do you think that I don't know that you rushed to become an American, in order to fuck my strategy?" — new

27. On the following day, during a telephone conversation with Mr. Galli in Rome Plaintiff informed Mr. Galli that his working conditions with Mr. Libutti were unbearable and that Libutti's objective was to force Plaintiff to quit the company. Mr Galli replied that he was very busy at that particular time, but promised Plaintiff that he would talk to Libutti. After not even 20 minutes, Mr. Galli called Plaintiff back and said: "Franco, I spoke to Giulio (Mr. Libutti) and I can assure you, that it is all in your imagination, Giulio loves you, and he needs your professionalism and capabilities to solve the company's problems. Is it possible that with your health conditions, you are making this up?" — new

28. Two days later, Mr. Libutti called Plaintiff for coffee as usual, and said to Plaintiff: "Franco, remember, that you must do what I tell you to do, I am the Boss here, and if you think that Mr. Galli is your friend, you are fucking wrong, how can you be so fucking stupid, don't you understand? I had an order from him, before I came to work in the States to make sure to fire you.... Franco, remember, again I am the boss here, and as you can see I talk to you only on a one-on-one basis. It will always be my word against yours." Mr. Libutti then took a pad out of a folder and told Plaintiff, "Franco, it is your responsibility to find a way at zero cost to the company, to fire the following people: Angela Ross, Esther Lo Russo, Betty Santella, Gabriele Mariotti, Concetta Corso, Marylin Abbott etc and all others that didn't accept the retirement package. It is also your responsibility, to select and hire two new employees, a manager in the

HR Department will replace Angela Ross, and a vice president, that will replace Orlando D'oro, and will report to you... Do also remember that I don't give a shit.. about your adoptive country, all new employees must be young, no more then 30 years old, no gays, no lesbians, and no blacks."

29. Plaintiff greatly opposed this discriminatory practice and told Libutti so.

30. In response to Plaintiff's complaints, Libutti, stated that he was all over the world and never faced with all these complications. He continued with negative remarks about this country, and he was sure, that "as the Roman Empire came to an end, soon the United States of America would also follow the same destiny."

31. Libutti asked Plaintiff to follow him to his office, closed his office's door, and then slammed Plaintiff against the door, grabbing Plaintiff's arms and pushing him again toward the other wall, near the window. Plaintiff was terrified, especially looking at Libutti's face which was red and seeing how extremely angry he was.(Alitalia's office is located at the Empire State Building on the 37th floor) Plaintiff did his best to free his body from Libutti's hands, and Plaintiff told Libutti that it was his firm request, to leave his office. Libutti stated, inter alia, in return: "You will be free to go, only after you have listened to me...." and Libutti continued to berate Plaintiff.

32. In the following days, walking around the office, Plaintiff noticed and felt a big change on the part of his coworkers; that their usual behavior was exactly the opposite than before, preferring to avoid him as much as possible. In fact, Mr. Orlando D'oro, Vice President of Regulatory Affair and Plaintiff's Assistant, informed Plaintiff that Libutti, while Plaintiff was in Chicago for a legal deposition,

visited D'oro's office, asking questions about Plaintiff's trip, and telling D'oro numerous denigrating comments about Plaintiff.

33. Around the end of February, 2006, Plaintiff selected a new candidate, for the HR Manager position, but contrary to the past practice, before hiring her, Plaintiff invited the HR manager from Rome and Libutti to be present at the final interview. Libutti stated that professionally Plaintiff selected OK, but physically he didn't like her at all, stating that she was "Fat Horse." Again, Plaintiff opposed this employment practice.

34. On or about Feb. 21 2006, Plaintiff reported all the credentials of Mr. Dursun Oksus to Libutti for possible promotion.. Libutti told Plaintiff "Good. He is a Turk, and he was born in Istanbul, I know Turks very well, I have many Turkish friends. They are not American like you, and I trust Muslim people a lot."

35. With Libutti's permission, Plaintiff promoted Mr. Oksuz.

36. Mr. Oksus is a homosexual male.

37. Around April, 2006, Mr. Oksuz, was vigorously complaining to Plaintiff that he was being continuously harassed by Libutti. Plaintiff asked Mr. Oksuz to prepare a letter to Plaintiff regarding his complaints of harassment by Libutti. The following day, Plaintiff decided to talk to Libutti, about Mr. Oksuz. After mentioning Mr. Oksuz to Libutti, Libutti told Plaintiff "I'm very sorry. This is a disgrace. This guy is worth nothing. He is a very strange person. I know now that he is a dirty gay, and now I know why you promoted him. You must make sure that he will not pass the probation period. You must fire him. He is a fucking son of a bitch"

38. Plaintiff informed Libutti that he was tired of his conduct and his accusations, his hostility towards him, and his harassment and discriminatory actions. At this point,

Libutti stated: "You don't scare me. Nor you or any other Gay, Old, American shit, son of bitch like you."

39. Plaintiff frequently saw Libutti and Mr. Oksuz having what appeared to be confidential meetings.

40. For the next 3 days Plaintiff didn't go to the office and was enduring much suffering. He decided after 3 days to go back to work at the office and try to avoid Libutti, which was not easy. So Plaintiff decided to keep his office's door closed as much as possible, and focus on his work.

41. On or about May 8, 2006, while Plaintiff was working, Mr. Galli and Mr. Libutti (Mr. Galli just arrived from Rome at Newark airport) entered Plaintiff's office, closed the door and Mr. Galli said: "Franco I know that you don't deserve all this, after all the good things that you have done for the company, but I am here to tell you that the same company now, wants you out of here, you have been fired, and I am sorry to be the one to tell you. You must leave the Alitalia office, as soon as possible. They don't want you here anymore." Plaintiff asked who they were, but received no response. Plaintiff told Mr. Galli, that he needed some time to prepare his personal belongings, after 38 years of service, he needed at least a week of time, also because he had certain corporate responsibilities with respect to the American government, as well as other institutions for which he was a fiduciary in name and for the account of Alitalia.

42. On or about May 23, 2006 while Plaintiff was preparing his boxes to leave, Libutti entered Plaintiff's soon-to-be former office, and told Plaintiff "I'm telling everybody that you will be going on a medical leave of absence, I urge you to say likewise."

43. Around the end of May, 2006, Plaintiff was no longer an employee of defendants.

44. Each of the Defendants fired Plaintiff because of his age, his disability of depression and anxiety, a perceived sexual orientation, his citizenship, and because of Plaintiff's opposition to Defendants unlawful employment practices.

45. Additionally, on or about May 12, 2006, two managers of Alitalia from Rome were in New York on a business trip. They visited Libutti in his office. Libutti told these two officers of the company that Francesco Gallo (Plaintiff) was fired by him and Galli because he is gay, and that it was necessary to "clean up" Alitalia, and that the majority of Alitalia's North American employees were "Gays and Lesbians."

46. Soon thereafter, Plaintiff was receiving, numerous telephone calls from Alitalia's offices all over the world; From colleagues and long time friends, expressing affection and support, and asking Plaintiff to please take all necessary steps to defend his reputation, but also to put a stop to this kind of company's practice.

47. Around this time, Plaintiff learned that Mr. Oksuz was leaving the company.

48. Thereafter, on or about the third week of June, Plaintiff received a threatening telephone call from Libutti stating: "Franco, I'm very sorry for you, but Mr. Oksuz has sued you and the company. I want you to contact our new law office, that represents Alitalia. If you promise me, that you won't sue Alitalia, for what we did to you, Alitalia will take care of the case and we will pay some money to keep his mouth shut. Mr. Oksuz, is accusing you of sex abuse, but I know that it is not true, and that he is doing this, to get some money. I do repeat, it is very important for you not to sue Alitalia, otherwise, you must pay Oksuz . . . " Defendants continued to pressure Plaintiff into not enforcing his rights under the discrimination and anti-retaliation laws. [new]

49. Plaintiff had been so unlawfully humiliated, defamed, harassed and emotionally strained by the Defendants, that two or three days later, he found himself as an in-patient at New York Presbyterian Hospital where he remained for about 10 days to help alleviate his mental suffering.

50. Once discharged from the hospital, Plaintiff's wife informed him that while he was at the hospital, she received a telephone call from Libutti, telling her that he was very sorry for Plaintiff, that he wanted to help her, not asking Plaintiff to repay the amount that Alitalia had to pay Mr. Oksuz for his claims. Libutti told Plaintiff's wife, in order to minimize the big scandal, she had to promise Libutti that she would force Plaintiff to not sue Libutti and Alitalia. Libutti also told Plaintiff's wife that if Plaintiff would sue Alitalia, he would ruin Plaintiff's reputation among everyone in the world that Plaintiff knew.

51. In the same conversation with Plaintiff's wife, Mr. Libutti told Plaintiff's wife that Plaintiff was a homosexual and he told Plaintiff's wife that Plaintiff had had anal sex with Mr. Oksuz.

52. The above defamatory statements were false and Mr. Libutti knew them to be false at the time of making them.

53. Plaintiff's wife informed Plaintiff that many people had called her and offered her support, since Mr. Libutti made sure to advertise the matter, within the entire Alitalia, Italy, including, the General Consulate Of Italy. Even Plaintiff's children were made aware at their school.

54. On or about the second week of August, Plaintiff received a telephone call, from Mr. Oksuz, who told Plaintiff that he attempted suicide, and that he was at Beth Israel

Hospital. Mr. Oksuz told Plaintiff, that he wanted Plaintiff to know, that he (Mr. Oksuz) was "the worst man in the world"; that he was very sorry, but at this time he badly needed Plaintiff's pardon and try not to judge him extremely for what he was forced to do. Mr. Oksuz promised that he learned at a high price the lesson that will guide him for his future, if there will be one. Plaintiff's suspicions of what went on in the confidential meetings between Oksuz and Libutti were now confirmed.

55. Plaintiff's wife eventually left Plaintiff as a result of the defamatory statements and emotional toll the above events took on Plaintiff.

56. Plaintiff complained about the discriminatory and unlawful conduct, yet the discrimination continued.

57. Plaintiff and Defendants also entered into an agreement dated September 15, 2005 wherein Defendants agreed to provide Plaintiff with continuation of all employee benefits to which Plaintiff was then entitled and in which he was then participating up to age 65.

58. Defendants breached that agreement and as a result Plaintiff suffered damages.

59. Plaintiff's opposition to Defendants' unlawful conduct culminated in Plaintiff's termination.

60. The above are just some of the examples and this type of behavior occurred to Plaintiff on a daily, continuous and pervasive manner.

61. Defendants treated Plaintiff differently because of perceived sexual orientation and age.

62. Plaintiff complained to Defendant about his discriminatory conduct and Defendant retaliated against plaintiff for his good-faith complaints about said discriminatory conduct.