to the various responsible person, according to the function responsibilities." Mr. Di Bianco stated that according to him this was a very wrong and dishonest decision, and that Alitalia, would have paid terrible consequence for this decision. Defendants were clearly retaliating against Plaintiff because of his age and because of his opposition to Defendants unlawful employment practices.

84. On or about the month of March, 2003 Mr. Wulf, arrived in New York, and while Plaintiff was still in the Hospital, he telephoned Plaintiff. Mr. Wulf and asked Plaintiff to vacate his office, because it was decided, that his office would now be occupied by him. Plaintiff called Mr. Di Bianco in Rome and asked why he had to release, his office space to Wulf. Mr. Di Bianco said that since the office was quite large, Plaintif and Mr. Wulf had to share the space, dividing it with a partition. Mr. Wulf refused such order.

85. Plaintiff thereafter learned that Mr. Maurizio Pace had become his new boss. At the beginning of April 2003, Plaintiff returned from his sick leave and found all his office belongings as well as his personal items in the corridor. Plaintiff was forced to use a meeting room, without a window as his office. Plaintiff felt very humiliated, especially when the employees were asking Plaintiff "What was going on" and "What terrible thing did you do to deserve that."

86. On or about December of 2003, Mr. Mengozzi during a visit in the office, with Mr.Zanichelli., P.R. Executive S.V.P., Mr.D'angelo, H.R. V.P., and Mr. Antonio Pola. Director Administration during a meeting with Plaintiff, Mr. Wulf and Mr. Mengozzi started attacking Plaintiff, in a very brutal and humiliating way, accusing plaintiff of not having terminated the "old" employees; that Plaintiff was not the right guy to do

what he ordered. Mr. Mengozzi said to plaintiff, "Since you are now a psychiatric subject, how can I trust that you understand what I really want to be done?"

87. After the meeting, Mr Mengozzi, requested to meet the H.R. Director, Mr. Howard Tiegel. Mr Tiegel, that evening, reported to Plaintiff that Mengozzi, asked him to prepare a list with the names of all employees over 50 years of age, and making a statement that all these people had to leave the company.

88. Mr. Tiegel protested Alitalia's discriminatory policies so Alitalia paid Mr. Tiegel money to secure a release, and terminated Mr. Tiegel.

89. Alitalia requested Plaintiff to take over the responsibility of H.R. in the interim, directly under his supervision, while keeping all of his other responsibilities until a new H.R. Director could be nominated.

90. After about six months, a new H.R. was nominated: Mr. Andrea Sciarresi, a 32 years old expatriate, from Rome, with only two months of seniority with company.

91. Mr. Sciarresi, after a month in service, in North America, around April of 2004 informed Plaintiff that Mr. D'Angelo (V.P. H.R. foreign markets) has instructed Mr. Sciarresi to try to learn from Plaintiff as much as possible in the shortest time possible, because it was Defendants' plan to terminate Plaintiff, because Plaintiff knows too much about all of the skeletons that the company has in the closet.

92. Around the fall of 2003, Mr. Wulf was terminated by the company. Mr. Galli and Mr. Libutti were transferred to New York. Both of them are much younger than Plaintiff: Mr. Galli about 45 years old and Mr. Libutti about 42.

93. When Galli and Libutti were transferred to New York, Mr. Galli decided to have his office in the building at Rockefeller center, where Plaintiff was, Libutti instead at

666 fifth avenue where the majority of the employees were located. Plaintiff asked Mr. Galli why he didn't want to be in Plaintiff's former office at the other building, after all it was a much bigger office and very executively decorated. Being number one in the North America organization of Alitalia, Galli told Plaintiff that Plaintiff's former office will now be occupied by Mr. Libuti and that he preferred to be near Plaintiff.

94. Since the very first day and on a daily basis, Mr. Gallli playing the friend's role, started and continued to tell Plaintiff on a daily basis to resign, from Alitalia; that Plaintiff was not a young guy anymore; and that would have been just stupid to continue to work, considering that in the past he was in a psychiatric ward. Plaintiff was very stressed and depressed from the realization that the company which he loved so much, and to which he dedicated most of his life, was ready to dispose of him as a dirty object.

95. During Mr. Galli's stay in New York, while in the office Plaintiff noticed very frequently Mr. Galli looking at him and with a maliciously smile, was keeping moving his penis inside his pocket. After about 20 times that such an event took place, since this all was making Plaintiff very uncomfortable, Plaintiff decided to confront Mr. Galli and told him that I wouldn't accept any longer his genital game maneuverings, and that if he was in the urge to touch himself he should go to the men's room and play as long as he wanted. Mr. Galli smiling and getting closer to Plaintiff with his right arm, on Plaintiff's shoulder said: "Franco I know that you may want to play with it, you could come to the bathroom with me, but I have one

condition, you must shave your beard first" Plaintiff felt disgusted, and asked him to leave Plaintiff's office immediately.

96. Plaintiff's working relationship with Galli changed deeply.

97. Plaintiff was later very happy when he learned that Galli was recalled to Rome for a big promotion, but Plaintiff was still very sad knowing that Galli would continue to be his boss.

98. On or about the fall of 2004, Mr. Galli organized a meeting in New York, inviting Mr. Michele Ruggiero from Rome (He was the administrator of Alitlia's Executives of the company) to finalize Plaintiff's package out of Alitalia. Plaintiff refused to accept Defendants' package. The following day, Mr. Galli told Plaintiff "Franco, this company, is not for you anymore, you have the possibility to get a great package that I presented to you and that Ruggiero presented to you. I tell you as a brother, this company has few more months of life then will go bankrupt and you will lose everything. I'm looking after your interest because you have been good to the company, but remember that the company that you know doesn't exist anymore.

99. As further evidence of the mistreatment of their employee, Defendants also wrongly misappropriated funds from the employee pension plan, thereby negatively affecting the worth of Plaintiff's pension, in addition to the worth of all of the other employees' pensions.

100. Eventually, Plaintiff was beaten down to the point where he did sign an Agreement With Alitalia which purported to make Plaintiff a "consultant" to Alitalia.

101. According to the Agreement, September 15, 2005 was the last day of employment for Plaintiff.

102. However this is not true. Plaintiff was held on and was continued as an employee of Defendants as Senior Vice President of Corporate and Regulatory Affairs working under Giulio Libutti until May of 2006.

103. If it is ultimately decided that Plaintiff was not held on as an employee after September 15, 2005, Plaintiff claims he was a consultant and was entitled to protection under the law as a consultant.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

104. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

105. Executive Law § 296 (1) provides that It shall be an unlawful discriminatory practice:

> (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

106. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his age, disability, citizenship, and perceived sexual orientation.

107. Plaintiff also claims that defendants violated any and all applicable sections of New York State's Executive Law pertaining to the facts herein.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

108. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

109. New York State Executive Law §296(7) also provides that "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article. 8. It shall be an unlawful discriminatory practice for any party to a conciliation agreement made pursuant to section two hundred ninety-seven of this article to violate the terms of such agreement."

110. Defendant engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

111. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

112. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

113. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

114. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

115. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

116. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by actually and constructively

discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of his age, disability, citizenship, and perceived sexual orientation.

117. Plaintiff also claims that defendants violated any and all applicable sections of New York City's Administrative Code pertaining to the facts herein.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

118. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

119. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice:

> "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

120. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A SIXTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

121. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

122. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice:

> "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

123. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A SEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE
### NEW YORK CITY ADMINISTRATIVE CODE

124. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

125. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any

person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

126. Each of the Defendants violated the herein section as set forth herein.

### AS A EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE NEW YORK CITY
### ADMINISTRATIVE CODE

127. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

128. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

   (1) the employee or agent exercised managerial or supervisory responsibility; or

   (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an

employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

129. Defendants violated the herein section as set forth herein.

## AS A NINTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

130. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

131. Defendants engaged in extreme and outrageous conduct.

132. Defendants intended to cause, or disregarded a substantial probability of causing, severe emotional distress to Plaintiff.

133. There exists a causal connection between the above conduct and said injury.

134. As a result of said conduct Plaintiff suffered and suffers from severe emotional distress.

## AS A TENTH CAUSE OF ACTION
## DEFAMATION AND SLANDER

135. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

136. Defendant Libutti's statements were false and defamatory and were of and concerning the plaintiff.

137. Defendant Libutti published said statements to numerous persons including but not limited to Plaintiff's wife, a third party.

138. There exists fault on the part of the defendant.

139. Plaintiff sustained injury and damages as a result of the above.

140. Additionally, defendants defamation and slander constitute slander *per se*.

## AS AN ELEVENTH CAUSE OF ACTION
## BREACH OF CONTRACT

141. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

142. Plaintiff and Defendants had an agreement dated September 15, 2005.

143. Defendants Breached said agreement.

144. Plaintiff suffered damages as a result of said damages.

## INJURY AND DAMAGES

145. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses, disability benefits, and Plaintiff has also suffered future pecuniary losses, emotional pain,

suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

WHEREFORE, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practice prohibited by state common law, New York State Executive Law §296 et. Seq. and The New York City Administrative Code Title 8, §8-107 et. Seq.; and that the Defendants harassed, discriminated against, constructively discharged, and retaliated against Plaintiff on the basis of sex;

B. Awarding damages to the Plaintiff, retroactive to the date of discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful termination of employment and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in a amount in excess of the jurisdiction of all lower courts;

D. Awarding Plaintiff damages from defendants' Breach of Contract.

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated:    New York, NY
June 20, 2007

AKIN & SMITH, LLC

By: _____
Derek T. Smith

Attorneys for Plaintiff
305 Broadway
Suite 1101
New York, NY 10007
(212) 587-0760