UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCESCO GALLO,

                Plaintiff,

        -against-

ALITALIA – LINEE AEREE ITALIANE –
SOCIETA PER AZIONI, PIERANDREA GALLI,
and GIULIO LIBUTTI,

            Defendants.

Case No.  07 CV 06418 (CM) (HP)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL**
**<u>PROCEDURE 12 (b) (6)</u>**

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ................................................................................................... 1

    A.    Procedural History ........................................................................................ 1

    B.    Relevant Time Periods .................................................................................. 2

    C.    Background ..................................................................................................... 2

    D.    Specific Allegations ...................................................................................... 3

        1.    Factual Allegations Concerning Discriminatory Termination For Age ...................................................................................................... 3

        2.    Factual Allegations Concerning Discriminatory Termination for Disability ............................................................................................. 4

        3.    Factual Allegations Concerning Discriminatory Termination for Citizenship ......................................................................................... 4

        4.    Factual Allegations Concerning Discriminatory Termination Based on Perceived Sexual Orientation.......................................................... 5

        5.    Factual Allegations Concerning a Hostile Work Environment ................ 6

        6.    Factual Allegations Concerning Retaliation ........................................... 6

        7.    Factual Allegations Concerning Aiding and Abetting............................. 7

        8.    Factual Allegations Concerning Coercion and Intimidation ................... 7

        9.    Factual Allegations Concerning Intentional Infliction of Emotional Distress................................................................................................ 8

        10.    Factual Allegations Concerning Defamation and Slander........................ 9

        11.    Factual Allegations Concerning Breach of Contract ................................ 9

        12.    Factual Allegations Concerning the Decision to "Fire" Plaintiff ........... 10

ARGUMENT ................................................................................................................. 10

STANDARDS FOR A MOTION TO DISMISS.............................................................. 10

POINT I

THE COMPLAINT FAILS TO STATE A CLAIM FOR DISCRIMINATORY TERMINATION ............................................................................................... 11

    A.    Plaintiff's Claims Based On Alleged Disability Discrimination Must Be Dismissed ................................................................................................... 11

    B.    Plaintiff's Claims Based on Alleged Citizenship Discrimination Must Be Dismissed ............................................................................................... 12

    C.    Plaintiff's Claims Based on Alleged Age Discrimination Must Be Dismissed ................................................................................................... 12

# TABLE OF CONTENTS
(continued)

**Page**

    D.    Plaintiff's Claims Based on Perceived Sexual Orientation Discrimination Must Be Dismissed ............................................... 12

    E.    As the Pleadings Are Insufficient to Support a Claim of Discriminatory Termination, the First and Fourth Causes Must Be Dismissed ........................... 13

POINT II
    PLAINTIFF'S ALLEGATION THAT HE WAS SUBJECTED TO A HOSTILE WORKING ENVIRONMENT MUST BE DISMISSED BECAUSE HE HAS PLEADED INSUFFICIENT FACTS TO SHOW THAT THE WORKPLACE WAS PERMEATED WITH SEVERE AND PERVASIVE DISCRIMINATORY INTIMIDATION AND RIDICULE ................................................................. 14

POINT III
    PLAINTIFF HAS FAILED TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM FOR RETALIATION ......................................................... 16

POINT IV
    PLAINTIFF'S CLAIMS FOR AIDING AND ABETTING MUST BE DISMISSED BECAUSE HE HAS FAILED TO STATE A CLAIM FOR DISCRIMINATION AGAINST ALITALIA ............................................. 18

POINT V
    PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR COERCION AND INTIMIDATION MUST BE DISMISSED BECAUSE IT IS NOT A RECOGNIZED CAUSE OF ACTION ............................................. 19

POINT VI
    PLAINTIFF'S EIGHTH CAUSE OF ACTION FOR "EMPLOYER LIABILITY" MUST BE DISMISSED BECAUSE IT IS NOT A RECOGNIZED CAUSE OF ACTION ......................................................................... 20

POINT VII
    PLAINTIFF'S NINTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM MUST BE DISMISSED BECAUSE THERE IS NO ALLEGATION OF EXTREME AND OUTRAGEOUS CONDUCT ................................................................. 20

POINT VIII
    PLAINTIFF'S TENTH CAUSE OF ACTION FOR DEFAMATION MUST BE DISMISSED AS AGAINST GALLI BECAUSE THERE ARE NO ALLEGATION THAT GALLI MADE ANY DEFAMATORY STATEMENT .......... 22

POINT IX
    PLAINTIFF'S ELEVENTH CAUSE OF ACTION FOR BREACH OF CONTRACT MUST BE DISMISSED BECAUSE THERE IS NOT A SINGLE FACTUAL ALLEGATION SUPPORTING IT ............................................. 23

**TABLE OF CONTENTS**
(continued)

                                                                                                                  **Page**

CONCLUSION ............................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Achtman v. Kirby, McInerney & Aquire, LLP*
  464 F.3d 328 (2d Cir. 2006)............................................................................................ 12

*Alfano v. Costello,*
  294 F.3d 365 (2d Cir. 2002)............................................................................................ 14

Bampoe v. Coach Stores, Inc.,
  93 F.Supp. 2d 360 (S.D.N.Y. 1999)............................................................................... 17

*Brennan v. Metropolitan Opera Assoc.,*
  192 F.3d 310 (2d Cir. 1999)............................................................................................ 14

*Burlington Northern & Santa Fe Railway Co. v. White,*
  126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) ...................................................................... 17

*Connell v. Consolidated Edison Co. of N.Y., Inc.,*
  109 F.Supp.2d 202 (S.D.N.Y. 2000)............................................................................. 13

*Curtis v. Airborne Freight Corp.,*
  87 F. Supp. 2d 234 (S.D.N.Y. 2000).............................................................................. 16

*Daniels v. Alvarado,*
  2004 WL 502561 (E.D.N.Y. 2004)................................................................................ 22

*DeWitt v. Lieberman,*
  48 F.Supp.2d 280 (S.D.N.Y. 1999)............................................................................... 18

*Dillon v. City of New York,*
  261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999) ....................................................... 22

*Feingold v. New York,*
  366 F.3d 138 (2d Cir. 2004)............................................................................................ 18

*Fischer v. Maloney,*
  43 N.Y.2d 553, 373 N.E.2d 1215, 402 N.Y.S.2d 991 (1978)..................................... 21

*Forrest v. Jewish Guild for the Blind,*
  3 N.Y.3d 295, 819 N.E.2d 998, 786 N.Y.S.2d 382 (2004)......................................... 14

*Freihofer v. Hearst Corp.,*
  65 N.Y.2d 135, 480 N.E.2d 349, 490 N.Y.S.2d 735 (1985)....................................... 20

*Gilligan v. Town of Moreau,*
  234 F.3d 1261 (2d Cir. 2000).......................................................................................... 13

NEWYORK/#178430.4

*Green v. Harris Publications*,
331 F.Supp.2d 180 (S.D.N.Y. 2004)......................................................................... 21

*Harris v. Forklift Sys.*,
510 U.S. 17, 114 S.Ct. 367, 126 L.Ed. 295 (1993)..................................... 14, 15, 16

*Howell v. New York Post Co.*,
81 N.Y.2d 115, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993)................................... 21

*Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC* ,
470 F. Supp. 2d 345 (S.D.N.Y. 2007).................................................................... 16

*Kotcher v. Rosa & Sullivan Appliance Ctr.*,
957 F.2d 59 (2d Cir. 1992)..................................................................................... 15

*Liebowitz v. Bank Leumi Trust Co. of New York*,
152 A.D.2d 169, 548 N.Y.S.2d 513 (2d Dep't 1989)............................................. 21

*Murphy v. American Home Products Corp*,
58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983)..................................... 20

*Murphy v. ERA United Realty*,
251 A.D.2d 469, 674 N.Y.S.2d 415 (2d Dep't 1998)............................................. 18

*Nader v. General Motors Corp.*,
25 N.Y.2d 560, 255 N.E.2d 765, 367 N.Y.S.2d 647 (1970)................................... 21

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)............................................ 15

*Pisani v. Westchester County Health Care Corp.*,
424 F.Supp 2d 710 (S.D.N.Y. 2006)................................................................. 10, 11

*Plaza Marine Inc. v. Exxon Corp.*,
814 F.Supp 334 (S.D.N.Y. 1993)........................................................................... 12

*Richardson v. New York State Dep't of Corr. Servs.*,
180 F.3d 426 (2d Cir. 1999)................................................................................... 15

*Seltzer v. Bayer*,
272 A.D.2d 263, 709 N.Y.S.2d 21 (1st Dep't 2000) ........................................ 21, 27

*Smalls v. Allstate Ins. Co.*,
396 F. Supp. 2d 364 (S.D.N.Y. 2005)..................................................................... 15

NEWYORK/#178430.4

*Torres v. Pisano,*
    116 F.3d 625 (2d Cir. 1997)........................................................................... 14

*Whidbee v. Garzarelli Food Specialties, Inc.,*
    223 F.3d 62 (2d Cir. 2000).............................................................................. 16

vi

Defendants Alitalia Linee Aeree Italiane, S.p.A. ("Alitalia"), Pierandrea Galli ("Galli") and Giulio Libutti ("Libutti") (collectively, "Defendants"), by their attorneys, Vedder, Price, Kaufman & Kammholz, P.C., submit this Memorandum of Law in support of their Motion, pursuant to Fed. R. Civ. Pr. 12 (b) (6), to dismiss the first nine and the eleventh Causes of Action in the complaint ("Complaint") of plaintiff Francesco Gallo ("Plaintiff" or "Gallo") in their entirety for failure to state a claim upon which relief can be granted.  Defendant Galli also moves herein to dismiss the tenth Cause of Action (for defamation) as against him for failure to state a claim.  A copy of the Complaint is attached to the accompanying Notice of Motion as Exhibit 1.

## STATEMENT OF FACTS

### A.    Procedural History

On or about June 20, 2007, Plaintiff filed the instant Complaint, containing eleven causes of action.  The Complaint was served on Alitalia, via the Secretary of State, on or about June 25, 2007, and on defendants Galli and Libutti on or about July 18, 2007, in Italy.  On July 13, 2007, Alitalia removed the litigation to this Court.

Plaintiff's first three causes of action are pleaded under the New York State Human Rights Law ("NYSHRL"), Executive Law § 296, alleging, respectively:   First Cause, discrimination based on age, disability, citizenship and perceived sexual orientation (Cplt. ¶¶ 104-107); Second Cause, retaliation (Cplt. ¶¶ 108-110); and Third Cause, aiding and abetting the alleged discrimination and retaliation. (Cplt. ¶¶ 111-113)

Plaintiff's next five causes of action are pleaded under the New York City Human Rights Law ("NYCHRL"), City Administrative Code, § 8-107, alleging, respectively: Fourth Cause, discrimination based on age, disability, citizenship and perceived sexual orientation (Cplt. ¶¶ 114-117); Fifth Cause, retaliation (Cplt. ¶¶ 118-120); Sixth Cause, aiding and abetting the alleged discrimination and retaliation (Cplt. ¶¶ 121-123); Seventh Cause, coercion and

intimation (Cplt. ¶¶ 124-126); and Eighth Cause, employer liability for the conduct of its employees. (Cplt. ¶¶ 127-129)

Plaintiff's Ninth Cause of Action is for intentional infliction of emotional distress (Cplt. ¶¶ 130-134), the Tenth is for defamation and slander (Cplt. ¶¶ 135-140) and the Eleventh Cause is for breach of contract. (Cplt. ¶¶ 141-144)

### B.    Relevant Time Periods

On September 15, 2005, Gallo and Alitalia entered a separation agreement which included, *inter alia,* a full release of claims by Gallo up to that date; accordingly, Gallo sues only for events that occurred after September 15, 2005. (Cplt. ¶¶ 15, 18, 20, 75) The relevant time periods are therefore as follows:

- for the first eight Causes, normally subject to a three year statute of limitations, only alleged events that occurred after September 15, 2005 (the "relevant Discrimination time period") are actionable.

- for the Ninth and Tenth Causes, subject to a one year statute of limitations, only alleged events that occurred after June 20, 2006 (the "relevant Tort time period") are actionable.

- for the Eleventh Cause, normally subject to a six year limitations period, only alleged events that occurred after September 15, 2005 (the "relevant Contract time period') are actionable.

### C.    Background

Alitalia is an Italian corporation licensed to do business in New York. (Cplt. ¶ 3) Beginning in 1968, Plaintiff was employed by Alitalia in various capacities until he separated from Alitalia on September 15, 2005, pursuant to the confidential severance agreement

mentioned above.  (Cplt. ¶ 15)  Plaintiff alleges that he continued as an employee after the Severance Agreement was signed (Cplt. ¶¶ 16, 102), although pursuant to that agreement, Plaintiff became a "consultant" and September 15, 2005 was his last day of employment.  (Cplt. ¶¶ 100, 101)[1]

Defendant Galli was based in Rome, Italy as Senior Director of Sales, Worldwide during the relevant time period.  (Cplt. ¶ 22)  Prior to signing his Severance Agreement on September 15, 2005, Plaintiff reported directly to defendant Galli in Rome.  Beginning in October of 2005, Plaintiff was instructed by Galli to report to defendant Libutti, the Senior Vice President of Sales for North America and Mexico.  (Cplt. ¶ 22)

### D.    Specific Allegations

The factual allegations in the Complaint are not organized according to Plaintiff's miscellaneous allegations, but the following is a good faith attempt to muster the factual allegations in the Complaint according to plaintiff's various legal theories, which are not clearly separated, but rather frequently appear in the Complaint in clusters under a single Cause of Action.[2]

### 1.    Factual Allegations Concerning Discriminatory Termination For Age

Plaintiff alleges that in December, 2005, Libutti told him that all new hires must be "no more then [sic] 30 years old."  (Cplt. ¶ 28)  There are no allegations regarding any other event or

---

[1] Because of this allegation, Defendants do not at this time raise as a defense to the first three Causes of action the fact that Gallo was a consultant, and not an employee protected by the New York State Human Rights Law.

[2] As one example, the First and Fourth Causes, for discrimination, include (or appear to include) claims for discrimination based on discriminatory termination by reason of age, disability, citizenship and/or perceived sexual orientation, as well as creation of a harassing environment based on perceived sexual orientation and/or age, and/or citizenship and/or disability.  Thus under a single Cause, at least eight potential claims may be found, and these are doubled by their being alleged under both the State and City Human Rights Laws.

statement relating to age—and certainly not to Plaintiff's age—during the relevant Discrimination time period. Nor is there any allegation linking Libutti or Galli or anyone else to the decision to "fire" Plaintiff because of his age.

### 2. **Factual Allegations Concerning Discriminatory Termination for Disability**

Plaintiff alleges that he has the "disability of depression and anxiety." (Cplt. ¶ 44) There are no other factual allegations in the Complaint with respect to Plaintiff's claim that he was terminated because of his alleged disability, although he does report that Galli allegedly asked him in December, 2005, whether he might, because of his health conditions, be making up stories about Libutti's behavior. (Cplt. ¶ 27)

### 3. **Factual Allegations Concerning Discriminatory Termination for Citizenship**

Plaintiff alleges that in late December of 2005 or early January of 2006, Libutti allegedly said (after disclosing that he is "a real and convinced fascist") that he hated "with all my passion gays, lesbians, Jews and all these f___ing Americans [sic] attorneys, [sic] that protect them," adding that he now understood why Plaintiff had negated his Italian citizenship in favor of U.S. citizenship "in order to f__k my strategy." (Cplt. ¶ 26) Plaintiff alleges that Libutti also said "I don't give a s__t about your adopted country" (Cplt. ¶ 28), and that he said that the United States would "follow the same destiny" as the Roman Empire. (Cplt. ¶ 30) Plaintiff also alleges that Libutti, when speaking of a Turkish employee, indicated that he liked Turks and that "they are not American like you [Plaintiff]."[3] (Cplt. ¶ 34) Plaintiff further alleges that Libutti referred to

---

[3] In an interesting aside for a "real and convinced fascist," Mr. Libutti allegedly added, "and I trust Muslim people a lot." (Cplt. ¶ 34)

4

him as an "American s__t[4]."  (Cplt. ¶ 38)  There are no additional factual allegations in the Complaint with respect to Plaintiff's citizenship discrimination claims, and no allegation that Plaintiff complained about these alleged statements or, indeed, that anyone else heard them or knew about them.

### 4.     Factual Allegations Concerning Discriminatory Termination Based on Perceived Sexual Orientation

Plaintiff alleges that Libutti frequently asked him about the sexual orientation of other employees (Cplt. ¶ 23); that in December of 2005 Libutti asked Plaintiff why he defends gays and lesbians, and suggested that perhaps Plaintiff was gay (Cplt. ¶ 24); that in December of 2005 Libutti said that Plaintiff did not "care about pussy" and that he must have been very busy "taking it in the ass" when Libutti was away (Cplt. ¶ 25); and that Libutti stated that he hated gays and lesbians.  (Cplt. ¶ 26)

Plaintiff also alleges that he promoted a male homosexual employee (Mr. Oksuz) with Libutti's express permission (Cplt. ¶¶ 35, 36); that Libutti later referred to Mr. Oksuz as a "dirty gay" (Cplt. ¶ 37); that Libutti also called Plaintiff a "Gay, Old, American s__t, son of bitch" (Cplt. ¶ 38); and that Libutti told Plaintiff's wife that Plaintiff was a homosexual and had had anal sex with Mr. Oksuz.  (Cplt. ¶ 51)

Plaintiff also alleges that on or about May 12, 2006, Libutti told two Alitalia managers from Italy that Plaintiff had been fired because he was gay.  (Cplt. ¶ 44)

---

[4] Actually, this was in the context of an extremely strange statement attributed to Libutti:  "You don't scare me.  Nor you or any other Gay, Old, American s__t, son of bitch like you."  (Cplt. ¶ 38)

5.    **Factual Allegations Concerning a Hostile Work Environment**

To support his hostile work environment claim, Plaintiff apparently relies primarily on his factual allegations used to support his claim for discriminatory termination for perceived sexual orientation, as set forth above.  In addition, Plaintiff also alleges that on the occasion when Libutti informed him of his fascist convictions and his dislike of gays and their American attorneys, he had grabbed Gallo by the arm and forced him into a chair to deliver that harangue (Cplt. ¶ 26), and a few days later, slammed Plaintiff against a door, grabbed his arms and pushed him against a wall while berating him.  (Cplt. ¶ 31)  All of this apparently occurred in December, 2005.

6.    **Factual Allegations Concerning Retaliation**

**Alleged Protected Activity.**  Plaintiff alleges that, in December of 2005, he told Libutti that he did not appreciate Libutti's conduct (Cplt. ¶ 26), and that he subsequently told Galli that working under Libutti was "unbearable."  (Cplt. ¶ 27)  Plaintiff also alleges that he "greatly opposed" Alitalia's alleged practice of firing older workers and hiring younger replacements. (Cplt. ¶¶ 29, 81)  After Libutti allegedly told Plaintiff to fire a co-worker (Oksuz), Plaintiff alleges that he told Libutti he "was tired of his conduct . . . and discriminatory actions."  (Cplt. ¶ 38)

**Alleged Retaliatory Conduct.**  In addition to Libutti's alleged physical and verbal actions in December, 2005 — some of which was apparently in response to Plaintiff's alleged complaint about Libutti's crude language (Cplt. ¶¶ 25-26) and Plaintiff's alleged opposition to discriminatory hiring instructions from Libutti (Cplt. ¶¶ 28–31) — Plaintiff alleges that after these events (in or about December of 2005), he "noticed and felt a big change on the part of his coworkers" who allegedly began to avoid him.  (Cplt. ¶ 32)  He also alleges that on May 8, 2006, Galli and Libutti apologetically informed him that he was "fired," and that by the end of May,

2006, he was no longer an "employee" of Alitalia.  (Cplt. ¶¶ 41, 43)  He conclusorily alleges that his "firing" was based, in part, on his "opposition to Defendants [sic] unlawful employment practices" (Cplt. ¶ 44) and that after he protested to Defendants, he "became the subject of discriminatory retaliation by Defendants."  (Cplt. ¶ 68)[5]

7.    **Factual Allegations Concerning Aiding and Abetting**

**Galli.**  As to Galli, Plaintiff alleges only (1) that after one of his dustups with Libutti, when he informed Galli by telephone that Libutti was trying to get him to quit the company, Galli assured him that Libutti loved him and needed his professionalism (Cplt. ¶ 27); and (2) that on May 8, 2006, Galli apologetically informed him that Alitalia no longer needed his services. (Cplt. ¶ 41)

**Libutti.**  As to Libutti, the aiding and abetting allegations are presumably grounded on Libutti's allegedly discriminatory, harassing and/or retaliatory conduct, as discussed above.  No separate "aiding and abetting" facts are alleged.[6]

8.    **Factual Allegations Concerning Coercion and Intimidation**

Plaintiff's allegations of "coercion and intimidation," if they exist independently at all, are evidently grounded in his allegations regarding the two incidents with Libutti in December, 2005, discussed above in connection with an alleged harassing environment.  The only other alleged acts that could remotely be construed as coercion or intimidation come in connection

---

[5] Paradoxically, however, Plaintiff also alleges that he was warned in mid-2004 that he would be fired because he knew "too much about all of the skeletons that the company has in the closet." (Cplt. ¶ 91), and, of course, he elsewhere conclusorily alleges that he was fired "because of his age, his disability of depression and anxiety, a perceived sexual orientation [and] his citizenship. (Cplt. ¶ 44)

[6]  Because Alitalia is the employer accused of wrongful behavior, it is self-evident that Alitalia cannot aid and abet its own alleged wrongful acts.  Thus, there are (and there can be) no allegations of aiding abetting with respect to Alitalia.

with Libutti's report that Dursun Oksuz had accused Plaintiff of sexual abuse:  first, Libutti supposedly tried to persuade Plaintiff not to sue Alitalia for what Plaintiff claims is discrimination and retaliation, or Alitalia would not defend or pay Oksuz on Plaintiff's behalf; and second, that Libutti supposedly made the same request to Plaintiff's wife, and also told Plaintiff's wife that if Plaintiff sued Alitalia he—the antecedent to this pronoun is unclear— would ruin Plaintiff's reputation among everyone in the world that Plaintiff knew.  (Cplt. ¶¶ 48, 50)

**9.**    **Factual Allegations Concerning Intentional Infliction of Emotional Distress**

**Intentional Acts.**    The acts constituting alleged intentional infliction of emotional distress are apparently those on which the claims for discrimination, harassment, retaliation and coercion are based, as discussed above, and perhaps those upon which the defamation claim is based, as discussed below.

**Emotional Distress.**    Plaintiff alleges that, in or about April of 2006, for three days he "didn't go to the office and was enduring much suffering" following Libutti's alleged instructions to fire Dursun Oksuz, whom Plaintiff with Libutti's approval had promoted, because Oksuz was gay.  (Cplt. ¶ 40)  Following Libutti's disclosure to Plaintiff around the third week in June that Oksuz had accused Plaintiff of sex abuse and was "suing" Gallo and Alitalia (charges that Libutti supposedly assured Gallo he knew were untrue), Plaintiff became a patient at New York Presbyterian Hospital "where he remained for about 10 days to help alleviate his mental suffering."[7]    Plaintiff also alleges generally that "[a]s a result of defendants' actions he felt

---

[7] Plaintiff does not directly attribute this hospitalization to the news that Oksuz had made these charges but rather as a result of being "so unlawfully humiliated, defamed, harassed and emotionally strained by Defendants." (Cplt. ¶ 49).

extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed" (Cplt. ¶ 69) and "suffered severe emotional distress and physical ailments." (Cplt. ¶ 71)

### 10.    Factual Allegations Concerning Defamation and Slander

Plaintiff alleges that in December of 2005, Plaintiff learned that Libutti made "numerous denigrating comments about Plaintiff to Alitalia's Vice President of Regulatory Affairs, although he does not disclose what these comments were." (Cplt. ¶ 32)

In May, he claims to have learned that Libutti told two managers from Rome that he and Galli fired Gallo because he was gay, which evidently created a great deal of gossip in Alitalia worldwide, as Plaintiff claims to have received calls from colleagues all over the world telling him to put a stop to "this kind of company practice." (Cplt. ¶¶ 45, 46)

In June, Plaintiff received Libutti's call about Oksuz's allegations of sexual abuse against Plaintiff. (Cplt. ¶ 48) Plaintiff alleges that while he was in the hospital, around the third week of June, Libutti, in a conversation addressing Oksuz's claims against Plaintiff, told Plaintiff's wife that Plaintiff was a homosexual and that Plaintiff had had anal sex with Oksuz. (Cplt. ¶ 51) The Complaint states that the Oksuz accusations were false and that Libutti knew they were false (Cplt. ¶ 52) — indeed, Libutti allegedly expressly reassured Gallo on this point (Cplt. ¶ 48) — but that Libutti "made sure to advertise the matter, within the entire Alitalia, Italy." (Cplt. ¶ 53)

### 11.    Factual Allegations Concerning Breach of Contract

Plaintiff sets forth no factual allegations with respect to his breach of contract cause of action. His only allegation relating to the claim is the conclusory assertion that Defendants breached the severance agreement, apparently with respect to the continuation of unspecified employee benefits to which he was entitled. (Cplt. ¶¶ 57, 58)

9

12.    __Factual Allegations Concerning the Decision to "Fire" Plaintiff__

Plaintiff's allegations regarding his alleged termination in May, 2006, are inconsistent and almost entirely conclusory.  While he asserts that his firing was both discriminatory and retaliatory (Cplt. ¶ 44), he also says that he was warned in mid-2004 that he would be fired because he knew "too much about all of the skeletons that the company has in the closet," which (if true) would hardly constitute an unlawful reason for termination.  More to the point, it is not clear who was responsible for the decision to terminate Plaintiff's employment.  Plaintiff sues both Galli and Libutti as though the decision to fire him was theirs, but there are no factual allegations to that effect,[8] except perhaps the double hearsay claim that Libutti told two managers from Rome that he and Galli fired Gallo because he was gay, although Libutti is not quoted as saying that the decision to fire Gallo was his and Galli's.  (Cplt. ¶ 44)  This is a very slender reed on which to lean individual liability under the NYCHRL, especially since Plaintiff's own account of his actual termination, the news of which was allegedly delivered by Galli, with Libutti present, makes it clear that the decision was not theirs at all but was made by others with whom Galli apparently did not agree.  (Cplt. ¶ 41)

## ARGUMENT

## STANDARDS FOR A MOTION TO DISMISS

"On a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b) (6), the issue is whether the claimant is entitled to offer evidence to support the claims."  *Pisani v. Westchester County Health Care Corp.*, 424 F.Supp 2d 710, 714 (S.D.N.Y. 2006).  "In resolving a motion to dismiss

---

[8]    There are no allegations that would make either Galli or Libutti an "employer" under the NYSHRL, so they cannot be liable under that statute (First and Second Causes) in any event.  However, as the NYCHRL does impose liability on supervisors and managers, the practical effect of their non-liability under the NYSHRL is essentially vitiated, so the need to dismiss the NYSHRL Causes as against them on this basis is not insisted on in this Memorandum.

pursuant [to] FRCP 12(b)(6), the Court must accept as true all well-pleaded facts in the amended complaint" and should "not dismiss the amended complaint unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle her to relief." *Plaza Marine Inc. v. Exxon Corp.*, 814 F.Supp 334 (S.D.N.Y. 1993).   However, "[g]enerally, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Pisani*, 424 F.Supp 2d at 714; *see also Achtman v. Kirby, McInerney & Aquire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).

## POINT I

## THE COMPLAINT FAILS TO STATE A CLAIM FOR DISCRIMINATORY TERMINATION

### (FIRST and FOURTH CAUSES)

Apart from the alleged hostile environment, the Complaint's claims of discrimination appear to be based entirely on Plaintiff's supposed "firing" in May, 2006.  For the reasons shown below, the Complaint does not set forth sufficient allegations to state a claim that Plaintiff's "termination" was based on discriminatory factors relating to his disability, citizenship, age or perceived sexual orientation.

### A.    Plaintiff's Claims Based On Alleged Disability Discrimination Must Be Dismissed

Plaintiff's allegations with respect to alleged disability discrimination fall far short of stating a viable claim.   The only allegation in the entire Complaint concerning Plaintiff's disability is that he suffered from the "disability of depression and anxiety." (Cplt. ¶ 43)  Apart from Galli's speculation that Plaintiff's medical conditions might be causing him to imagine or misperceive Libutti's alleged misconduct, there is not a single allegation that any of the Defendants ever made any sort of comment about Plaintiff's alleged disability, that Plaintiff suffered any adverse employment action or material change in the conditions of his employment

11

based on his disability, or that Defendants otherwise discriminated against Plaintiff because of his alleged disability.  Without a single factual allegation in the Complaint alleging any discriminatory conduct by Defendants with respect to his disability, Plaintiff's disability discrimination claims must be dismissed as a matter of law.

**B.**    **Plaintiff's Claims Based on Alleged Citizenship Discrimination Must Be Dismissed**

As noted in the discussion of the Complaint's failure to state a claim for a discriminatory harassing environment, there is only a single comment (by Libutti) relating to Plaintiff's American citizenship.  While the remaining disparaging remarks allegedly made by Libutti about America would, if true, reflect a clear hostility to aspects of American life and culture — to say nothing of its lawyers — there is no factual connection alleged that can link any of Libutti's anti-American remarks to an intent to fire Plaintiff (or anyone else) for being American, even if Libutti had made the termination decision, which is not alleged.

**C.**    **Plaintiff's Claims Based on Alleged Age Discrimination Must Be Dismissed**

There is no allegation connecting Plaintiff's age with his termination, or with any adverse employment decision affecting Plaintiff at all.  Remarks about retirement allegedly made by Galli were prior to the relevant Discrimination time period, and in any event, there are no allegations in the Complaint that Galli made the decision to "fire" Plaintiff in May, 2006.

**D.**    **Plaintiff's Claims Based on Perceived Sexual Orientation Discrimination Must Be Dismissed**

Despite Libutti's alleged hostility to gay people, and his (alleged) apparent perception that Plaintiff was gay, the only evidence pleaded by Plaintiff to support an implication that his perceived sexual orientation was a factor in his "firing" is based on double hearsay:  Libutti allegedly told two unnamed managers from Rome that Gallo was fired because Gallo was gay, although Libutti is not quoted as saying that he and Galli made the decision. (Cplt. ¶ 45)

Plaintiff does not provide information as to how he learned of this alleged comment by the two managers.

This "evidence" is insufficient to state a claim for discriminatory termination based on sexual orientation.  Such statements have consistently been held to be inadmissible. *Gilligan v. Town of Moreau*, 234 F.3d 1261, at \*3, n. 4 (2d Cir. 2000) *unpublished* (affirming the district court's ruling that the testimony of a witness as to what someone else told them a party said is inadmissible double hearsay); *Connell v. Consolidated Edison Co. of N.Y., Inc.*, 109 F.Supp.2d 202, 208-209 (S.D.N.Y. 2000) (finding a plaintiff's assertion that he heard from an unidentified person that MacGrath publicly announced the company's policy to replace older employees with younger ones constituted inadmissible double hearsay).  Moreover, in *Gilligan*, the Second Circuit noted "the fact that it is a party who repeats the hearsay does not render the statement a party admission." *Id.*  Plaintiff's use of a third party's account of what Libutti allegedly said constitutes double hearsay and is inadmissible.  Without any additional support, Plaintiff's claim must be dismissed.

    **E.**    **As the Pleadings Are Insufficient to Support a Claim of Discriminatory Termination, the First and Fourth Causes Must Be Dismissed**

As it is obvious that Plaintiff has not sufficiently pleaded a claim for discriminatory termination based on any of the characteristics that he claims (POINT I, sections A-D), and as he did not plead sufficient facts to establish a discriminatory harassing environment (POINT II), the First and Fourth Claims should be entirely dismissed.

13

## POINT II

## PLAINTIFF'S ALLEGATION THAT HE WAS SUBJECTED TO A HOSTILE WORKING ENVIRONMENT MUST BE DISMISSED BECAUSE HE HAS PLEADED INSUFFICIENT FACTS TO SHOW THAT THE WORKPLACE WAS PERMEATED WITH SEVERE AND PERVASIVE DISCRIMINATORY INTIMIDATION AND RIDICULE

### (FIRST and FOURTH CAUSES)

In order to establish a claim of unlawful hostile work environment, Plaintiff must show that he was subjected to harassment that permeated the workplace "with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to 'alter the conditions of [his] employment and create an abusive working environment'." *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310, 819 N.E.2d 998, 786 N.Y.S.2d 382, 394 (2004) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)); *Brennan v. Metropolitan Opera Assoc.*, 192 F.3d 310, 318 (2d Cir. 1999); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *Torres v. Pisano*, 116 F.3d 625, 630-631 (2d Cir. 1997); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000). Determining whether a workplace is sufficiently hostile to support a claim "has objective and subjective elements." *Alfano*, 294 F.3d at 374. "A work environment will be considered hostile if a reasonable person would have found it to be so *and* if the plaintiff subjectively so perceived it." *Brennan*, 192 F.3d at 318 (emphasis added).

Plaintiff's pleadings can satisfy neither the objective nor the subjective elements of a hostile work environment claim. The allegations Plaintiff relies on to support his claim comprise one alleged statement regarding age (that Libutti told Gallo all new hires must be no more than 30 years old, Cplt. ¶ 28), and a single comment by Libutti referring to Gallo's American citizenship (*i.e.*, that Libutti felt that Gallo had become an American citizen to undercut some

"strategy" of Libutti's, (Cplt. ¶ 26)[9] and sexual orientation (*e.g.*, that he referred to Oksuz as a

"dirty gay." (Cplt. ¶ 37)[10]  There are no allegations whatever that could be construed as alleging

a hostile environment because of Plaintiff's disability.   These disparate allegations, even added

together, simply do not rise to the level required to establish an objectively hostile work

environment, which requires conduct that is "sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment."  *Harris,*

510 U.S. at 21.   Plaintiff fails to plead facts that show that the conduct was either severe or

pervasive.   Indeed, Plaintiff never alleges that common derogatory terms concerning his age,

citizenship, disability or perceived sexual orientation were directed toward him (or anyone else

for that matter).   Nor does he show that the comments were pervasive, as almost all of the

alleged comments were made in December, 2005: "isolated acts or occasional episodes will not

merit relief."  *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992); *Smalls*

*v. Allstate Ins. Co.*, 396 F. Supp. 364, 372 (S.D.N.Y. 2005) ("anti-discrimination laws do 'not

prohibit all verbal or physical harassment in the workplace'," and "are not 'a general civility

code'," citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81, 118 S.Ct. 998,

1002, 140 L.Ed.2d 201 (1998)); *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d

426 (2d Cir. 1999) (no hostile work environment where Plaintiff identified fifteen alleged

specific incidents of harassment, including three that involved racial slurs); *Curtis v. Airborne*

*Freight Corp.*, 87 F. Supp 2d 234 (S.D.N.Y. 2000) (dismissing on summary judgment a hostile

---

[9]  The remaining anti-American comments attributed by Gallo to Libutti in the Complaint do not relate to Gallo's American citizenship.

[10]  The two episodes in which Libutti allegedly roughed up Gallo while berating him were unrelated to Gallo's age, citizenship, disability or perceived sexual orientation.

work environment allegedly created by nine incidents over ten months, including two racist comments).

Nor do Plaintiff's allegations satisfy the subjective element necessary to state a cause of action for hostile work environment. His Complaint is devoid of any facts showing that he made any serious protestation concerning the alleged incidents. That Gallo allegedly told Libutti he "did not appreciate at all his conduct" (Cplt. ¶ 26) does not suggest any serious distress. Nor does Gallo allege that these stray remarks "unreasonably interfere[d] with [his] work performance." *Harris*, 510 U.S. at 23.

In the absence of allegations showing any conduct that created an abusive environment or any facts showing that Gallo so perceived his environment, he simply does not state a cause of action for hostile work environment. Accordingly, the First and Third Causes should be dismissed to the extent that they allege discrimination based on a hostile work environment relating to Plaintiff's age, disability, citizenship or sexual orientation.

## POINT III

## PLAINTIFF HAS FAILED TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM FOR RETALIATION

### (SECOND and FIFTH CAUSES)

The pleadings regarding retaliation fail in a number of respects. First, it is far from clear that Plaintiff engaged in any protected activity. Although Plaintiff allegedly told Libutti that he did not "appreciate" Libutti's comments to him on the telephone, such a protest does not amount to an objection to conduct prohibited by the statute. *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC* , 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("ambiguous complaints that do not make the employer aware of allegedly discriminatory conduct do not constitute protected activity" under Title VII, the NYSHRL or the NYCHRL); *Bampoe v. Coach Stores, Inc.*, 93

F.Supp. 2d 360, 372 (S.D.N.Y. 1999) ("mere statement to the alleged antagonist, albeit a supervisor employed by a defendant, that a comment was inappropriate does not rise to the level of 'protected activity' for a retaliation claim" under Title VII or state law). Gallo's complaint to Galli that he thought Libutti's behavior was "unbearable" also does not amount to a complaint about discrimination and does not constitute protected activity. The conclusory allegation that Plaintiff "greatly opposed" Libutti's supposed instructions regarding the hiring of younger workers and firing older workers is equally insufficient to establish protected activity. The only arguably protected activity in which Plaintiff engaged was therefore his alleged statement to Libutti that he was tired of his conduct and "discriminatory actions," although even this statement is so conclusory that it could well be argued that Plaintiff was not protesting conduct that he deemed unlawful.

Even if Plaintiff sufficiently alleged that he engaged in protected activity, however, no retaliatory conduct causally connected to such activity is alleged. There is no connection, factual or even temporal, to the "termination" that occurred in May, 2006. There is no allegation that anyone but Libutti was even aware of any protests that Plaintiff may have made — not even Galli, let alone anyone in Rome who might have made the termination decision, as implied by Galli. Libutti's two alleged physical outbursts toward Plaintiff were not prompted by any genuine protected activity on Plaintiff's part, and in any event are not sufficient to alter the terms and conditions of Plaintiff's employment, even under the liberal standards established by *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

For these reasons the Second and Fourth Causes must be entirely dismissed against each Defendant. Even if Plaintiff is deemed to have engaged in protected activity and this Court determines that he was retaliated against for said protected activity, both Causes should

17

nevertheless be dismissed against Galli as it is clear that he is not alleged to have engaged in any unlawfully retaliatory conduct whatever.

## POINT IV

### PLAINTIFF'S CLAIMS FOR AIDING AND ABETTING MUST BE DISMISSED BECAUSE HE HAS FAILED TO STATE A CLAIM FOR DISCRIMINATION AGAINST ALITALIA

### (THIRD and SIXTH CAUSES)

As an initial matter, Plaintiff's claims for aiding and abetting apply only to Galli and Libutti. It is self-evident that Alitalia cannot aid and abet its own alleged violations of discrimination laws.

As to the aiding and abetting claims against Galli and Libutti, claims for aiding and abetting under the NYSHRL and the NYCHRL are analyzed in the same manner, because the wording in their respective aiding and abetting provisions is "virtually identical." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004); *DeWitt v. Lieberman*, 48 F.Supp.2d 280, 293 n.10 (S.D.N.Y. 1999). Thus, if Plaintiff's aiding and abetting claim under the NYSHRL is dismissed, his claim under the NYCHRL must also be dismissed. *Id*.

NYSHRL, §296 (6) permits Plaintiff to show that Galli and Libutti are individually liable for aiding and abetting Alitalia's alleged discrimination, as does the NYCHRL, §8-107 (6). However, as shown above, Plaintiff has failed to plead facts sufficient to establish that Alitalia has any liability for discrimination or retaliation. "It is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting." *DeWitt*, 48 F.Supp.2d at 293; *Murphy v. ERA United Realty*, 251 A.D.2d 469, 472, 674 N.Y.S.2d 415, 417 (2d Dep't 1998). Therefore, because no cause of action for discrimination or retaliation has been stated against Alitalia, neither Galli nor Libutti can be

18

individually liable for aiding and abetting such violation.  Accordingly, Plaintiff's causes of action against Galli and Libutti for aiding and abetting must be dismissed.

**POINT V**

**PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR COERCION AND INTIMIDATION MUST BE DISMISSED BECAUSE IT IS NOT A RECOGNIZED CAUSE OF ACTION**

Diligent research has failed to identify a single case recognizing a separate cause of action pursuant to NYCHRL, § 8-107 (19), pursuant to which Plaintiff brings a cause of action against Alitalia, and perhaps the individual defendants, for coercing, intimidating, threatening and/or interfering with Plaintiff's exercise of the enjoyment of his rights as an employee.  The pronounced absence of any such case suggests that § 8-107 (19) will not, standing alone, independently support a cause of action.  In any event, Plaintiff has not alleged significant conduct that could be construed as coercive, intimidating, threatening or interfering with Plaintiff's right to enjoyment of his employment.  Indeed, Galli had left Alitalia's New York office well before any of the events that fall within the relevant Discrimination time period occurred, and nothing remotely coercive or intimidating is attributed to him.  Libutti's alleged conduct, although clearly unpleasant and uncouth, is not alleged to have interfered in a coercive, intimidating or threatening way with Gallo's statutory rights—including his right to sue Alitalia—and could not sustain a Cause of Action under this section of the City law (even if such a Cause actually exists).  Accordingly, Plaintiff's cause of action pursuant to the NYCHRL, § 8-107 (19) must be dismissed for failure to state a cause of action.

19

## POINT VI

### PLAINTIFF'S EIGHTH CAUSE OF ACTION FOR "EMPLOYER LIABILITY" MUST BE DISMISSED BECAUSE IT IS NOT A RECOGNIZED CAUSE OF ACTION

Plaintiff's cause of action pursuant to N.Y.C. Admin. Code § 8-107 (13) is premised on a statutory provision that simply iterates the principle of respondeat superior, which is the sole basis upon which Alitalia could be held liable under either the NYSHRL or NYCHRL in the first instance:   under certain circumstances, an employer may be held liable for the unlawful discriminatory conduct of its employees or agents.  This bogus "cause of action" is no different from Plaintiff's causes of action for discrimination and retaliation as already alleged against Alitalia in Plaintiff's Fourth and Fifth Causes of Action.  It is not a separate cause of action and may not be set forth as such.  Emphatically, it cannot state a claim against either of the individual Defendants, as neither is an "employer."   Accordingly, Plaintiff's eighth cause of action for "employer liability for discriminatory conduct by employee" must be dismissed.

## POINT VII

### PLAINTIFF'S NINTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM MUST BE DISMISSED BECAUSE THERE IS NO ALLEGATION OF EXTREME AND OUTRAGEOUS CONDUCT

"The tort of intentional infliction of emotional distress predicates liability on the basis of extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143, 480 N.E.2d 349, 490 N.Y.S.2d 735 (1985).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Products Corp*, 58 N.Y.2d 293, 302, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983); *Fischer v. Maloney*, 43 N.Y.2d 553, 557, 373 N.E.2d 1215, 402

20

N.Y.S.2d 991 (1978). "It is manifestly neither practical nor desirable for the law to provide a remedy against any and all activity which an individual might find annoying." *Liebowitz v. Bank Leumi Trust Co. of New York*, 152 A.D.2d 169, 182, 548 N.Y.S.2d 513 (2d Dep't 1989) (*quoting Nader v. General Motors Corp.*, 25 N.Y.2d 560, 569, 255 N.E.2d 765, 307 N.Y.S.2d 647 (1970)). Indeed, this "threshold of outrageousness is so difficult to reach that, of the intentional infliction of emotional distress claims considered by the Court of Appeals, 'every one has failed because the alleged conduct was not sufficiently outrageous'." *Seltzer v. Bayer*, 272 A.D.2d 263, 264, 709 N.Y.S.2d 21, 23 (1st Dep't 2000) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993)).

Illustrative of the difficulty a plaintiff faces in meeting this standard is *Liebowitz*, *supra*, where the Jewish plaintiff alleged that her supervisors often called her a "Hebe" or "kike"; that other employees were instructed not to talk to her; that she was not allowed a personal day to attend the funeral of her closest friend; and that she was told she'd have to "choose between her health and her job." 152 A.D.2d at 171. In affirming the lower court's dismissal of the plaintiff's intentional infliction of emotional distress claim, the *Liebowitz* court stated that, for such a claim to survive, the allegations "must consist of more than mere insults, indignities, and annoyances." *Id.* at 182. "[T]he particular conduct complained of in this case did not rise to such an extreme or outrageous level as to meet the threshold requirements for the tort." *Id.*

In *Green v. Harris Publications*, 331 F.Supp.2d 180 (S.D.N.Y. 2004), the African-American plaintiff heard his supervisor use the terms "niggers" repeatedly, refer to another group of black employees as "uncontrollable blacks" and say that a Blackberry pager should be called a "'Whiteberry' pager because it uses proper English." The *Green* court determined that the racist language complained of did not rise to a sufficiently extreme and outrageous level as to support

21

the plaintiff's claim for the intentional infliction of emotional distress.  *Id*. at 196; *see also Seltzer*, 709 N.Y.S.2d at 23 (allegations that neighbor dumped a pile of cement on plaintiff's sidewalk, tossed lit cigarettes into plaintiff's yard, threw eggs on plaintiff's front steps and threatened to paint a swastika on plaintiff's house did not rise to a sufficient level of outrageousness to support claim); *Daniels v. Alvarado*, No.03 CV 5832, 2004 WL 502561, at *8-9 (E.D.N.Y. Mar. 12, 2004) (characterizing employee as "stupid nigger" insufficient to sustain claim); *Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999) (being referred to as a "f__king asshole" insufficiently outrageous to support claim).

In this case, Plaintiff's allegations fall far short of establishing that any of the Defendants engaged in extreme or outrageous conduct that went beyond all possible bounds of decency. Based on his own pleading, Plaintiff was not subjected to degrading epithets with respect to his age, his citizenship, his disability or his perceived sexual orientation.  Accordingly, Plaintiff's cause of action for the intentional infliction of emotional distress must be dismissed.

## POINT VIII

### PLAINTIFF'S TENTH CAUSE OF ACTION FOR DEFAMATION MUST BE DISMISSED AS AGAINST GALLI BECAUSE THERE ARE NO ALLEGATIONS THAT GALLI MADE ANY DEFAMATORY STATEMENTS

Defendant Galli moves to dismiss Plaintiff's tenth claim, for defamation.  The allegations in support of Plaintiff's defamation claim do not state, or even imply, that Galli made any statements that could possibly be considered defamatory toward Plaintiff during the relevant Tort time period. (*See, e.g.*, Cplt. ¶¶ 32, 45, 51-53).  Accordingly, Plaintiff's defamation claim must be dismissed as against Defendant Galli.

NEWYORK/#178430.4

## POINT IX

## PLAINTIFF'S ELEVENTH CAUSE OF ACTION FOR BREACH OF CONTRACT MUST BE DISMISSED BECAUSE THERE IS NOT A SINGLE FACTUAL ALLEGATION SUPPORTING IT

The only allegation in the Complaint relating to Plaintiff's Breach of Contract claim is the entirely conclusory allegation that Defendants breached the severance agreement, apparently with respect to some unspecified employee benefits.   (Cplt. ¶ 58)   This lone conclusory allegation is not enough to support Plaintiff's frivolous Breach of Contract claim.  As Plaintiff's breach of contract claim is wholly unsupported by the allegations in the Complaint, even when they are read to give every reasonable inference in Plaintiff's favor, the Eleventh Cause of Action must be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants Alitalia Linee Aeree Italiane, S.p.A., Pierandrea Galli and Giulio Libutti respectfully request that the first nine and the eleventh causes of action in the Complaint be dismissed in their entirety as to each of them and that they be granted such other and further relief as the Court may deem just and proper; Defendant Pierandrea Galli further respectfully requests that the tenth cause of action be dismissed as against him.

NEWYORK/#178430.4

Dated: New York, New York        VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
        August 17, 2007

By:   /s/   Alan M. Koral                
         Alan M. Koral (AK 1503)
         Charles S. Caranicas (CC 9244)

Attorneys for Defendants
*Alitalia Linee Aeree Italiane SpA,*
*Pierandrea Galli* and *Giulio Libutti*

1633 Broadway – 47th Floor
New York, New York 10019-7513
(212) 407-7700

24

NEWYORK/#178430.4