UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
FRANCESCO GALLO,

                                        Plaintiff,

                -against-

                                                Case # 07 CV 06418 (CM)(HP)


ALITALIA - LINEE AEREE ITALIANE –
SOCIETA PER AZIONI,
PIERANDREA GALLI, and
GIULO LIBUTTI,

                Defendants

-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

It is respectfully submitted that Defendants' motion to dismiss is entirely frivolous, baseless and should be outright dismissed.

Plaintiff's complaint was painstakingly drafted with such excruciating detail that it reads more like a summary judgment opposition than a complaint. Yet, unbelievably, despite the detail and numerous allegations of discrimination and retaliation, Defendants have the gall to bring the instant motion.

On July 20, 2007, I emailed defense counsel as follows:

"I write this email to ask that you do not move to dismiss the complaint as you did in the Mariotti case. This would be a complete waste of time. In Federal Court, it is Notice Pleading and the complaint not only sets forth enough detail to rival some depositions, it clearly explains the basis for same. . . . In light of the "notice pleading" requirements and the fact that Plaintiff properly placed defendants on notice of his claims, I strongly urge you not to waste our or the court's time on such a motion. Such a motion would only be proper in a motion for summary judgment after the completion of discovery and ONLY if you have a well founded basis for a judgment as a matter of law that no genuine issues of matter fact exist."

(see attached)

However, despite my email, defendants went ahead and made the instant motion to dismiss.

In order to add a Jury Demand and even further "nip in the bud" Defendants' concerns, Plaintiff has Amended his Complaint and has filed same contemporaneously with this Opposition. (please see attached).

Thus, not only did Defendants have a basis to dismiss Plaintiff's complaint, but now with even more detail, defendants have absolutely no basis to press their motion with respect to the Amended Complaint.

Plaintiff clearly sets forth in his Amended Complaint (as well as his original complaint) that he was harassed and fired because of his age, disabilities, perceived sexual orientation, and citizenship. He also alleges that he was retaliated against for opposing defendants' unlawful employment practices.

## FEDERAL COURT HAS A 'NOTICE PLEADING' ONLY REQUIREMENT

As clearly held in *Bolanos v. Norwegian Cruise Lines Ltd*. 2002 WL 1465907, *8 (S.D.N.Y.) (S.D.N.Y.,2002):

> "The Federal Rules of Civil Procedure employ liberal standards for pleading under Rule 8(a), **requiring only a "short and plain statement" showing that the party is entitled to relief.** Fed.R.Civ.P. 8(a); *see, e.g., Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, ----, 122 S.Ct. 992, 996-99, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.... [C]laims lacking merit may be dealt with through summary judgment under Rule 56."); *Conley v. Gibson,* 355 U.S. 41, 47-48, 78 S.Ct. 99, 102-03, 2 L.Ed.2d 80 (1957) ("[A]ll the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.... Such simplified 'notice pleading' is made possible by the liberal

opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues."); *National Asbestos Workers Med. Fund v. Philip Morris, Inc.,* 74 F.Supp.2d 221, 238 (E.D.N.Y.1999) (Weinstein, D.J.) ("A party is not required to allege every particular and detail at the pleading stage.").

As the Second Circuit has explained:

**The complaint should not be burdened with possibly hundreds of specific instances; and if it were, it would be comparatively meaningless at trial where the parties could adduce further pertinent evidence if discovered. They can hardly know all their evidence, down to the last detail, long in advance of trial.** *Nagler v. Admiral Corp.,* 248 F.2d 319, 326 (2d Cir.1957).

Moreover, the court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant. *Palmer v. New York State Office of Court Admin.*  2007 WL 2362360, *5 (N.D.N.Y.) (N.D.N.Y.,2007)

## PLAINTIFF NEED ONLY ALLEGE THAT HE WAS DISCRIMINATED AGAINST

As very clearly stated by the Court in Palmer, Plaintiff need not establish a prima facie case in his complaint. The Court specifically held:

Defendant's position that Plaintiff's complaint must establish a *prima facie* case, has been specifically rejected by the United States Supreme Court in *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). In *Swierkiewicz,* the Supreme Court discredited the concept that there is a heightened pleading standard in discrimination cases and, thus, held that the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a *prima facie* case under *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 99 S.Ct. 1871, 36 L.Ed.2d 668 (1973). *Swierkiewicz,* 534 U.S. at 510 ("The *prima facie* case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement."); *Williams v. New York City Housing Authority,* 458 F.3d 67, 71-72 (2d Cir.2006) (applying *Swierkiewicz* holding to retaliation claims); 445 F.3d 586, 591 (2d Cir.2006) (applying *Swierkiewicz* holding to discrimination claims under Title VII). The Court therefore held that "an employment

discrimination plaintiff need not plead a *prima facie* case of discrimination" so long as the complaint provides the defendant "fair notice of the basis for [the] claims." *Id.* at 514-15. The Court further stated that "[g]iven the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Id.* at 514 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). **A clear statement from the plaintiff alleging discrimination by the defendant is sufficient to achieve these goals.** *Ferro v. Railway Express Agency, Inc.,* 296 F.2d 847, 851 (2d Cir.1961) (holding that a complaint stating "that defendants have, in a willful and malicious manner, discriminated against plaintiff" provided sufficient notice of the discrimination claim). *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 710 (2d Cir.1998) (**recognizing "that the pleading requirements in discrimination cases are very lenient, even *de minimis"* **). To the Court's dismay, Defendant has not even acknowledged the *Swierkiewicz* case.

The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. *Conley, v. Gibson* 355 U.S. 41, 78 S.Ct. 99, 2 L. Ed2d 80 (1957 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits",) quoted in *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. at 999)

*7 The Supreme Court has rejected the argument that allowing lawsuits based on conclusory allegations of discrimination would encourage disgruntled employees to sue and thereby overburden the courts. "Whatever the practical merits of this argument, the Federal Rules do not contain a heightened pleading standard for employment discrimination suits." Swierkiewicz, 534 U.S. at 514-15. Therefore, in considering such a motion for judgment on the pleadings, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Fernandez v. Chertoff,* 471 F.3d 445, 51 (2d Cir.2006).

The Defendant might disagree with that assertion, of course, and may or may not turn out ultimately to be correct, but the Second Amended complaint meets the *Swierkiewicz* standard of giving "fair notice of what [the] claims are and the grounds upon which they rest." 534 U.S. at 514, 122 S.Ct. 992." "It may appear on the

face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Id.* at 515, 122 S.Ct. 992. **Indeed, the Plaintiff's allegation of discriminatory intent may be a "speculative and nebulous legal conclusion, but,** *Swierkiewicz* **clearly indicates that it is not fatal to Plaintiff's case that some of her allegations at this stage may be legal conclusions rather than facts."** *Greenier v. Pace, Local No. 1188,* 201 F.Supp.2d 172, 177 (D.Me.2002). The allegations here, are sufficient in their substantive content to withstand the motion for judgment on the pleadings,

Adopting this approach, if the employment discrimination Plaintiff describes in her pleadings satisfies the "fair notice" pleading standard of Rule 8, the court must still determine whether the plaintiff has pleaded facts sufficient to state a viable claim upon which relief can be granted pursuant to Rule 12(c). Accepting the facts in the complaint as true, Plaintiff has sufficiently alleged that Defendant was her employer and that its acts constituted disability discrimination, retaliation and discharge. Defendant has, therefore, received notice of these claims, and the grounds on which they rest. *Swierkiewicz v. Sorema, N.A.,* 534 U .S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Ergo, Defendant's motion will be denied

*Palmer v. New York State Office of Court Admin.* L 2362360, *6 -7 (N.D.N.Y.,2007)

Plaintiff's Amended Complaint very clearly sets forth allegations of discrimination more than sufficient to satisfy the *Swierkiewicz* liberal requirements. Furthermore, Plaintiff's complaint is so specific that it should satisfy any standard, notice or fact pleading.

Additionally, plaintiff's cause of action for Breach of contract clearly sets forth the existence of agreements between the parties, a breach of same, and damages.

In the event, the court wishes to further consider defendants' motion, the law is clearly in plaintiff's favor regarding the substance of the case.

The Supreme Court of the United States has recently redefined what is necessary in proving a Retaliation case. Mr. Gallo's claims must be analyzed under the Supreme Court's ruling in *Burlington Northern & Santa Fe Railway Co. v. White,* 126 S.Ct. 2405 (2006). "Prior to this case, the Second Circuit generally looked to "whether the plaintiff has suffered 'a materially adverse change in h[is] employment status' or in the terms and conditions of his employment." *Kessler v. Westchester County Dep't of Social Servs.,* 2006 U.S.App. LEXIS 21530, at *20 (2d Cir.2006) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 128 (2d Cir.2004)). **The focus now must be on whether an employment action could be considered materially adverse to a reasonable employee, such that it could dissuade that employee " 'from making or supporting a charge of discrimination.' "** *Burlington Northern & Sante Fe Railway Co. v. White,* ---U.S. ----, 126 S.Ct. 2405, 2415 (2006);  (see Billue v. Praxair, Inc.  2007 WL 1231841 (D.Conn.,2007).

Plaintiff was not only harassed on a daily basis because of his age, disability, perceived sexual orientation and because of retaliation, he was also fired for same. Thus, he more than qualifies under the *Burlington Northern* standard.

Alitalia is also responsible for the acts of its employees. Vicarious liability is based on the maxim that a master may be held liable for the acts of its servants undertaken

within the scope of their employment. *See Ellerth,* 524 U.S. at 756 (quoting Restatement (Second) of Agency § 219(1) (1957)). In the employment discrimination context, the first question that must be answered in connection with an inquiry into vicarious liability is whether the supervisor's behavior "culminate[d] in a tangible employment action" against the employee, "such as hiring, **firing**, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 765. **If it did, "the employer will, *ipso facto*, be vicariously liable**." *Mack,* 326 F.3d at 124; *accord Fairbrother v. Morrison,* 412 F.3d 39, 49 (2d Cir.2005). *Eichler v. American Intern. Group, Inc.* 2007 WL 963279, *8 (S.D.N.Y.) (S.D.N.Y., 2007)

Hostile Work Environment  - Legal Standard

STATE LAW

When determining whether a hostile work environment exists, the standards under Title VII and the NYHRL are identical. See DeWitt v. Lieberman, 48 F. Supp.2d 280, 293 (S.D.N.Y. 1999). Title VII requires employers to provide an atmosphere free of discriminatory abuse or hostility. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); Snell v. Suffolk County, 782 F.2d 1094, 1096 (2d Cir. 1986). In order to establish a hostile work environment claim, a plaintiff must first demonstrate that the workplace was permeated with "discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of her employment and

create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Additionally, a plaintiff must establish both that there existed "an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive," and that the plaintiff "subjectively [perceived] the environment to be abusive." Harris, 510 U.S. at 21. Finally, in determining whether an environment is hostile, the Court must consider the totality of the circumstances. See Harris, 510 U.S. at 23.

To prevail on a hostile work environment claim, a plaintiff must demonstrate: "(1) that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Van Zant v. KLM Royal Dutch Airlines , 80 F.3d 708, 715 (2d Cir. 1996) (quotation omitted). [3]  The conduct alleged must be severe and pervasive enough to create an environment that "would reasonably be perceived, and is perceived, as hostile or abusive." Harris v. Forklift Sys., Inc. , 510 U.S. 17, 22 (1993); see Doe v. R.R. Donnelley & Sons Co. , 42 F.3d 439, 444 (7th Cir. 1994) ("the conduct in question is to be judged by both an objective and a subjective standard").

**Moreover, such violations may occur as the result of even a single incident of egregious conduct.** Imperial Diner, Inc. v. State Human Rights Appeal Bd. (1980) 52 NY2d 72, 436 NYS2d 231, 417 NE2d 525. (emphasis added). See also *Rocha Vigil v.*

*City of Las Cruces*, 119 F.3d 871, 873 (10th Cir. 1997) (Lucero, J., dissenting) ("If sufficiently severe, harassment is actionable under Title VII -- regardless of its pervasiveness or frequency."). The Equal Employment Opportunity Commission (EEOC) also recognizes that a single incident, if sufficiently severe, can create a hostile environment. *Schott v Runyon*, No. 4-G-1381-92, 1996 WL 350896 (E.E.O.C. June 20, 1996) (citing EEOC Policy Guidance on Current Issues of Sexual Harassment, Notice N-915-050, at 104 (March 19, 1990)). The severity as well as the frequency of Defendants' conduct created a pervasive hostile work environment.

Moreover, under the New York City Administrative Code Title 8-107(13), entitled "Employer liability for discriminatory conduct by employee, agent or independent contractor" Defendants are liable for the harassment by Plaintiff's supervisors LIBUTTI AND GALLI. The Code states in relevant part. "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1) **the employee or agent exercised managerial or supervisory responsibility;** or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility;

Under the City's more expansive and more protective law, the mere fact that LIBUTTI AND GALLI were plaintiff's supervisors, Defendants are automatically liable for their harassment of the plaintiff. This is yet another reason why Defendants are liable.

Defendants are also liable under the State law as well as the City law for the acts of Plaintiff's supervisor. Where acts of discrimination are perpetrated by a high-level managerial employee, the employer may be liable for hostile work environment even without any showing of condonation or acquiescence. McKinney's Executive Law § 296, subd. 1(a); New York City Administrative Code, § 8-107, subd. 1(a).

In the instant case, we certainly have the element of condonation and acquiescence in that the harassment continued because it was Defendants' policy and; but we also have the fact that since LIBUTTI and GALLI were high-level managerial employees, which means we don't even need the condonation and acquiescence elements.

NEW YORK CITY'S HUMAN RIGHTS LAW IS MORE PROTECTIVE THAN THE STATE AND FEDERAL LAWS AND EVEN JUST ONE DISCRIMINATORY ACT IS ILLEGAL, LET ALONE MANY

While Plaintiff certainly qualifies under the state and federal standard, it is also much easier for the plaintiff to qualify under the NYCHRL. As held in *Farrugia v. North Shore Hospital*, 820 N.Y.S.2d 718, 2006,

"**The New York City Human Rights Law was intended to be more protective than the state and federal counterpart.** As this Court recently stated in *Jordan v. Bates Advertising, Inc.,* 11 Misc.3d 764, 816 N.Y.S.2d 310 (Sup. Ct., N.Y. Co.2006), "in enacting the more protective Human Rights Law, the New York City Council has exercised a clear policy choice which this Court is bound to honor. The Administrative Code's legislative history clearly contemplates that **the New York City Human Rights Law be liberally and independently construed with the aim of making it the most progressive in the nation.** [FN2] Thus, the case law that has developed in interpreting both **the State Human Rights Law and Title VII should merely serve as a base for the New York City Human Rights Law, not its ceiling**. *See also* Section 1, Local Law 85 ("Local Civil Rights Restoration Act of 2005"); The Council Report of the Governmental Affairs Division, Committee on General Welfare, August 17, 2005." [FN3]

FN2. Remarks by former Mayor David N. Dinkins at a public hearing on Local Laws, June 18, 1991, 1-2 (on file with Committee on General Welfare). As former Mayor Dinkins noted, **it was "the intention of the Council that judges interpreting the City's Human Rights Law ... not to be bound by restrictive state and federal rulings and are to take seriously the requirement that this law be liberally and independently construed."** *Id.* at 1; *see also* Section 1, Local Law 85 ("Local Civil Rights Restoration Act of 2005"), which states in relevant part: It is the sense of the Council that New York City's Human Rights Law has been construed too narrowly to ensure protection of the civil rights of all persons covered by the law. In particular, through passage of this local law, the Council seeks to underscore that the provisions of New York City's Human Rights Law are to be construed independently from similar or identical provisions of New York state of federal statutes. Interpretations of New York State or federal statutes with similar wording may be used as an aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise.

FN3. Indeed, Professor Craig Gurian, the principle drafter of the Local Civil Rights Restoration Act in 1991, argues that the courts' unwillingness to apply a more liberal standard in construing the City's Human Rights Law led to the passage of The Restoration Act in 2005, N.Y.C. Local Law No. 85 (Oct. 3, 2005). Craig Gurian, *A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights Law,* 33 Fordham Urb. L. J. 255 (2006). According to Gurian, "The Restoration Act requires that provisions of the City's Human Rights Law hereafter be construed liberally to accomplish the uniquely broad and remedial' purposes of the local law, regardless of whether federal or New York State ... Human Rights Law, including those laws with provisions comparably-worded to provisions of this title, have been so construed.' " (quoting the Restoration Act at 13, amending N.Y.C. Admin. Code § 8- 130). The existing case law should be used only as an aid in interpreting the City Human Rights Law in one of two ways: the First, "as a floor below which the City Human Rights Law cannot fall, rather than a ceiling above which the local law cannot rise." *Id.* at 278, quoting The Restoration Act at § 1; and, the second "to find the construction that best accomplishes the law's purposes." *Id* at 279.

To establish a claim of sexual harassment under the N.Y.C. Human rights Law, plaintiff must show that (1) he belongs to a protected group; (2) he was subjected to unwelcome sexual harassment; and, (3) the harassment complained of was based upon his sex. Although under the Federal and New York State counterparts plaintiff must also show that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, *see, e.g. Harris v. Forklift Sys. Inc,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); [FN4] *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2nd Cir.1995); *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1042 (2nd Cir.1993), *see also* Judith Johnson, *License to Harass Women,* 62 Md. L.Rev. 85 (2003), such a construct is inconsistent with the City's Human Rights Law. **Under the City's law, liability should be determined by the existence of unequal treatment and questions of severity and frequency reserved for consideration of damages.** *Return to Eyes on the Prize* at 297-303.

*Farrugia v. North Shore Hospital*, 820 N.Y.S.2d 718, 2006 (emphasis added)

As can be seen, under the City's law, it does not even matter if the conduct was not severe and frequent (Which it most certainly was. Please see annexed Affidavits). **Severity and frequency are only questions going to damages**. Nonetheless as stated herein, Plaintiff was harassed on a frequent and severe manner such that he qualifies under the State law as well as the more protective City Law which does not so require.

Plaintiff has also set forth viable claims under Intentional and Negligent Infliction of Emotional Distress

An intentional infliction of emotional distress claim must rest upon allegations that a defendant's behavior was "extreme and outrageous" to such extent that the action was "atrocious and intolerable in a civilized society" [Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143 [1985]; Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303 [1983]; Howell v. New York Post Co., 81 N.Y.2d 115 [1993]].

The same legal standard is generally applicable to negligent infliction of emotional distress [Longo v. Armor Elevator Co., Inc., 307 A.D.2d 848, 850 [1st Dept. 2003], plaintiffs must "establish the element of extreme and outrageous conduct for a negligent infliction of emotional distress claim [by] ... evidence that the ...

defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency"].

Under the common law of New York, "one who by extreme or outrageous conduct intentionally or recklessly causes severe emotions distress to another is subject to liability for such severe emotional distress" (Freihofer v. Hearst Corp., 65 NY2d 135 [1985]; see also, Fisher v. Maloney, 43 NY2d 533 [1978]; Restatement [Second] of Torts §46). In order to make out a prima facie case of intentional or reckless infliction of emotional distress a plaintiff must show that (1) defendant's conduct was extreme and outrageous; (2) defendant acted with an intent to cause severe emotional distress or with reckless disregard that such conduct would cause severe emotional distress; (3) her injury was caused by defendant's conduct; and (4) she suffered severe emotional distress (Howell v. New York Post Company, 81 NY2d 115 [1993]; see also, Zaffino v. Surles, 1995 U.S. Dist. LEXIS 4225 [S.D.N.Y.]).

The burden on the plaintiff is not an easy one because it must be shown that the conduct was "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (Murphy v. American Home Products Corp., 58 NY2d 293 [1983]; see also, Howell, supra).

**A claim of harassment, such as the one before this court, based on a pattern of abusive conduct has been held to give rise to a claim of intentional infliction of**

**emotional distress where the alleged conduct goes far beyond the bounds of decency** (see, Polley v. FRB of New York, 1994 U.S. LEXIS 11813 [S.D.N.Y.], citing, *Collins v. Wilcox, Inc.*, 158 Misc2d 54 [Sup. Ct. 1992]; see also, *O'Reilly v. Executone of Albany*, Inc., 121 AD2d 772 [3rd Dept. 1986]; *Bonner v. Guccione*, 916 FSupp 271 [S.D.N.Y. 1996]). **In *Collins v. Wilcox Incorporate*, supra, where the harassment continued over and over again, the Court found Defendants could be liable for Intentional Infliction of Emotional Distress. The court stated that; "Although each individual act . . is probably not actionable, except as to a specific claim of sexual harassment ..., when aggravated over time, the continuous nature of the conduct may make it sufficiently outrageous that a jury could reasonably find in plaintiff's favor on the emotional distress allegation (Id)."**

In our case at hand, plaintiff was subjected to harassment on an almost daily basis;  suffered at the hands of Defendants. Moreover, it was not merely the content of the words or the conduct that was so extreme, but the fact that plaintiff's protests against such conduct went unheeded. (see  *McIntyre v Manhattan Ford, Lincoln-Mercury, Inc.,* 175 Misc.2d 795 [1997], *lv dismissed* 256 A.D.2d 269 [1998], *lv denied* 94 N.Y.2d 753 [1999] ).

The above cases permit such Infliction of Emotional Distress cases to brought against the employer notwithstanding any claim that they are barred by the Workers Compensation laws.

Plaintiff Has Set Forth A Viable Cause Of Action Against The Individual Defendants
Under Executive Law 296(1)(A)

Executive Law § 296 provides that it shall be illegal  "For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

New York applies the same analysis to State and City discrimination claims as it does to Federal claims. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714- 15 [2d Cir. 1996] [stating that "in the sex discrimination context, 'New York courts require the same standard of proof for claims brought under the [Human Rights Law] as those brought under Title VII.' "] [quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1304 n.4 [2d Cir. 1995]].

A strong line of cases has emerged from New York's federal courts, springing from the Second Circuit's decision in Tomka v. Seiler Corporation, 66 F3d 1295, 1317 [2d Cir 1995], which carves out an exception so that **a defendant who actually participates in the conduct that gives rise to a discrimination claim may be personally liable under the [state's Human Rights Law], regardless of the defendant's status in the corporation"** (Harrison v. Indosuez, 6 F Supp 2d 224, 234

[SDNY 1998], citing *Persaud v. S. Axelrod Company*, n.o.r., 1996 WL 11197 [SDNY 1996]).

With respect to the State Statute, there is also a line of cases that adhere to the Court of Appeals' holding in Patrowich v. Chemical Bank, 63 NY2d 541 [1984]) stating that those employees with "an ownership interest in the company" or "the power to do more than carry out personnel decisions made by others" may be held personally liable for sexual harassment (see Monsanto v. Electronic Data Systems Corporation, 141 AD2d 514, 515 [2d Dept 1988]; Bridges v. Eastman Kodak Company, supra, 822 F Supp at 1029; cf Sier v. Jacobs Persinger & Parker, 236 AD2d 309 [1st Dept 1997]).

While Tomka refers to actual participation and Patrowich refers to ownership interest, the 2 cases have been found to be consistent. Cases which have followed Tomka on the question of personal liability of other corporate employees are all consistent with the *Patrowich* line of cases (see, e.g., Ponticelli v. Zurich American Insurance Group, 16 F Supp 2d 414, 427 [SDNY 1998]; Mitchell v. FAB Industries Inc., 990 F Supp 285, 290-291 [SDNY 1998]). The Court of Appeals has not revisited the issue since Tomka was decided. Other courts that have had occasion to do so have had no problem reconciling Tomka with Patrowich (see, e.g., Stordeur v. Computer Associates International, Inc., 995 F Supp 94, 103-105 [EDNY 1998]; Bush v. Raymond Corporation, Inc., 954 F Supp 490, 496-497 [NDNY 1997]). Indeed, it is totally consistent with the body of tort law in New York to allow personal liability against the active malfeasor regardless of his rank in the company vis-à-vis the sexually harassed employee while absolving from personal liability a supervisor without ownership interest

who has had no participation in the harassment. See *Nemer v. Brown*, Justice Cohen, S/NY 5/24/99 NYLJ 29, (col. 4)

In our case at hand, the individual Defendants actually participated in the discrimination and thus under the above cases, it is irrelevant whether he had an ownership interest since he is liable for her actual participation.

Additionally, since no discovery has taken place, it is unknown whether the individual Defendants were part owners, through stock ownership, even if they did not personally participate in the discrimination, which they did did.

Additionally, with respect to aiding and abetting liability, Section 296(6) of the NYSHRL makes it an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). According to the Second Circuit, this language imposes individual liability on "a defendant who actually participates in the conduct giving rise to a discrimination claim," irrespective of whether the individual possesses power to do more than carry out personnel decisions made by others. *Tomka,* 66 F.3d at 1317.

In *Tomka,* the Second Circuit interpreted Section 296(6) as holding individually liable those within the employment relationship who primarily and directly perpetrated the harassment. *Tomka,* 66 F.3d at 1317; *Dawson v. County of Westchester,* 351 F.Supp.2d 176, 199 (S.D.N.Y.2004).

*Prince v. Madison Square Garden* L 906136, *10 -11  (S.D.N.Y.,2006)

Accordingly, under the NY State Statute, the individual Defendants may be personally liable to Plaintiff for actively participating in the discrimination and on another ground if they are found to have been a stockholder in the company (which is yet to be determined as no discovery has been exchanged). Nonetheless, as stated above, since he actively participated in the harassment, aided and abetted, it is not even necessary that he be a stockholder.

**Plaintiff Has Set Forth A Viable Cause Of Action Against The Individual Defendants under Executive law 296(7)**

New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

For the reasons set forth above, the individual Defendants can be held personally liable under Executive Law Section 296 because they personally participated in the harassment. When Plaintiff opposed this conduct, he was retaliated against which is exactly what is prohibited under Executive Law 296(7). A look at the statute also makes clear that it applies to "any Person."

**Plaintiff Has Set Forth A Viable Cause Of Action Against The Individual Defendants Under NYC Administrative Code 8-107(1)(A)**

The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice:  "(a) For an employer **or an employee** or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."  (emphasis added)

What is notable in the Administrative Code is the fact that it is unlawful for "an employer or an **employee"** to unlawfully discriminate. Individual liability under both the first and second causes of action is based on sections of the Administrative Code that clearly and unambiguously provide for it. Had the City Council not wanted to impose personal liability, it would not have used the word "employee" in §  8-107(1)(a) or "person" in §§ 8- 107(15)(a), 8-107(6) and 8-107(19).

The First Department Appellate Division has explicitly found personal liability under this section. *Minichiello v. Supper Club*, 251 A.D.2d 182 (1st Dept. 1998). Moreover, "In contrast to Executive Law @ 296(1)(a), which in defining those who may be held liable for unlawful discriminatory practices speaks of an 'employer' without mention of employees or agents, Administrative Code of the City of New York @ 8-107(1)(a) expressly provides that it is unlawful for 'an employer or an employee or an agent thereof' to engage in discriminatory employment practices" (Murphy v. ERA United Realty, 251 AD2d 469 [2d Dept 1998]; see also Harrison v. Indosuez, supra, 6 F Supp 2d at 233-234).

**Plaintiff has set forth a viable cause of action Against The Individual Defendants under NYC Administrative Code 8-107[1](e)**

The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice:

> "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

For the reasons set forth above, the individual Defendants can be held personally liable under Administrative Code of the City of New York @ 8-107(1)(a) and when Plaintiff opposed this conduct, he was retaliated against which is exactly what is prohibited under Administrative Code 8-107(1)(e).

**Plaintiff has set forth viable causes of action for Negligence and Negligent and Intentional Infliction of Emotional Distress**

An intentional infliction of emotional distress claim must rest upon allegations that a defendant's behavior was "extreme and outrageous" to such extent that the action was "atrocious and intolerable in a civilized society" [Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143 [1985]; Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303 [1983]; Howell v. New York Post Co., 81 N.Y.2d 115 [1993]].

The same legal standard is generally applicable to **negligent infliction of emotional distress** [Longo v. Armor Elevator Co., Inc., 307 A.D.2d 848, 850 [1st Dept. 2003], plaintiffs must "establish the element of extreme and outrageous conduct for a

**negligent infliction of emotional distress** claim [by] ... evidence that the ... defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency"].

Under the common law of New York, "one who by extreme or outrageous conduct intentionally or recklessly causes severe emotions distress to another is subject to liability for such severe emotional distress" (Freihofer v. Hearst Corp., 65 NY2d 135 [1985]; see also, Fisher v. Maloney, 43 NY2d 533 [1978]; Restatement [Second] of Torts §46). In order to make out a prima facie case of intentional or reckless infliction of emotional distress a plaintiff must show that (1) defendant's conduct was extreme and outrageous; (2) defendant acted with an intent to cause severe emotional distress or with reckless disregard that such conduct would cause severe emotional distress; (3) her injury was caused by defendant's conduct; and (4) she suffered severe emotional distress (Howell v. New York Post Company, 81 NY2d 115 [1993]; see also, Zaffino v. Surles, 1995 U.S. Dist. LEXIS 4225 [S.D.N.Y.]).

The burden on the plaintiff is not an easy one because it must be shown that the conduct was "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (Murphy v. American Home Products Corp., 58 NY2d 293 [1983]; see also, Howell, supra). A claim of sexual harassment, such as the one before this court, based on a pattern of abusive conduct has been held to give rise to a claim of intentional infliction of emotional distress where the alleged conduct goes far beyond the bounds of decency (see, Polley v. FRB of New York, 1994 U.S. LEXIS 11813 [S.D.N.Y.], citing, *Collins v. Wilcox, Inc.*, 158 Misc2d 54 [Sup. Ct. 1992]; see also, *O'Reilly v. Executone of*

*Albany*, Inc., 121 AD2d 772 [3rd Dept. 1986]; *Bonner v. Guccione*, 916 FSupp 271 [S.D.N.Y. 1996]). In *Collins v. Wilcox Incorporate*, supra, plaintiff brought claims for sexual harassment and intentional infliction of emotional distress based on allegations that she was subjected to repeated sexual advances by her boss, defendant's Chairman of the Board, despite her continued refusal to participate in anything but a professional relationship. In denying defendant's motion for summary judgment dismissal of plaintiff's intentional infliction claim, the court noted that her boss' advances were not isolated instances but rather exhibited a pattern of behavior that continually put plaintiff in embarrassing, humiliating and demeaning positions despite her protests. The court stated that;

"Although each individual act allegedly attributable to [her boss] is probably not actionable, except as to a specific claim of sexual harassment ..., when aggravated over time, the continuous nature of the conduct may make it sufficiently outrageous that a jury could reasonably find in plaintiff's favor on the emotional distress allegation (Id)."

In our case at hand, plaintiff was subjected to verbal harassment on an almost daily basis. suffered at the hands of Defendants. Moreover, it was not merely the content of the words or the conduct that was so extreme, but the fact that plaintiff's protests against such conduct went unheeded and even retaliated against. (see McIntyre, 9/11/97 NYLJ 25, (col. 3))

**<u>CONCLUSION</u>**

In light of the fact that Plaintiff has set forth numerous allegations of discrimination and retaliation, Defendants' motion should be dismissed in its entirety, along with such other and further relief as to this Court seem just and proper.

Dated:     New York, NY
           September 4, 2007

                              AKIN & SMITH, LLC

                        By: _____

                              Derek T. Smith (DS 1747)

                              Attorneys for Plaintiff
                              305 Broadway
                              Suite 1101
                              New York, NY 10007
                              (212) 587-0760