UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCESCO GALLO,

               Plaintiff,

    -against-


ALITALIA – LINEE AEREE ITALIANE –
SOCIETA PER AZIONI, PIERANDREA GALLI,
and GIULIO LIBUTTI,

              Defendants.

Case No.  07 CV 06418 (CM) (RLE)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALITALIA'S MOTION
FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL
<u>PROCEDURE 56(b)</u>**

# TABLE OF CONTENTS

**Page**

PROCEDURAL HISTORY ........................................................................................... 1

RELEVANT TIME PERIODS ..................................................................................... 2

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT ............................................................................................................... 5

STANDARDS FOR GRANTING SUMMARY JUDGMENT ...................................... 5

POINT I    PLAINTIFF CANNOT ESTABLISH A CLAIM FOR
           DISCRIMINATORY TERMINATION ................................................... 6

    A.    Plaintiff's Citizenship Discrimination Claim is Not Cognizable Under the
           NYSHRL or NYCHRL .......................................................................... 6

    B.    Plaintiff Cannot Establish a Prima Facie Case Of Discriminatory
           Termination ........................................................................................... 7

        1.    Plaintiff Was Not Qualified For His Position After May 28, 2006
                 Due To His Permanent And Total Disability ...................................... 7

        2.    Plaintiff Suffered No Adverse Employment Action ............................ 8

        3.    Plaintiff Cannot Show That The Termination Of His Consulting
                 Services Took Place Under Circumstances Giving Rise To
                 Discriminatory Intent ...................................................................... 9

    C.    Plaintiff's Consulting Services Were Terminated for Legitimate Non-
           Discriminatory Reasons ........................................................................ 10

POINT II   PLAINTIFF'S EVIDENCE OF HARASSMENT IS INSUFFICIENT TO
           SUPPORT ANY HOSTILE ENVIRONMENT CLAIMS ....................... 11

    A.    Plaintiff Fails the Subjective and Objective Tests of a Hostile Work
           Environment ......................................................................................... 12

        1.    Plaintiff fails to meet the objective test to establish harassment on
                 any of the bases upon which his claims are based ............................ 12

        2.    Plaintiff also cannot satisfy the subjective element of a hostile
                 work environment claim .................................................................. 13

POINT III  PLAINTIFF HAS NO EVIDENCE TO ALLOW A JURY TO FIND
           RETALIATION ................................................................................... 14

    A.    Plaintiff Cannot Establish That He Was Subjected To Any Employment
           Action That Disadvantaged Him .......................................................... 15

    B.    Plaintiff Cannot Establish That he Engaged in Protected Activity ......... 15

    C.    Plaintiff Can Establish No Connection Between Any Protected Activity
           and The Termination of His Consulting Services .................................. 17

**TABLE OF CONTENTS**
(continued)

**Page**

|   |   |   |
|---|---|---|
| D. | Alitalia Has Set Forth a Legitimate Non-Discriminatory Reason For Terminating Plaintiff's Consulting Services | 17 |
| E. | Alleged Plot to Terminate Plaintiff and to Terminate Other Employees for Impermissible Reasons | 18 |
| POINT IV | PLAINTIFF'S CLAIMS FOR AIDING AND ABETTING MUST BE DISMISSED AGAINST ALITALIA BECAUSE THEY APPLY ONLY TO THE INDIVIDUAL DEFENDANTS | 19 |
| POINT V | PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR COERCION AND INTIMIDATION MUST BE DISMISSED BECAUSE IT IS NOT A RECOGNIZED CAUSE OF ACTION | 19 |
| POINT VI | PLAINTIFF'S EIGHTH CAUSE OF ACTION FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MUST BE DISMISSED BECAUSE THERE IS NO SHOWING OF EXTREME AND OUTRAGEOUS CONDUCT | 20 |
| A. | Plaintiff's Intentional Infliction of Emotional Distress Claims Must Be Dismissed Because He Cannot Establish Sufficiently Outrageous Conduct By Defendants | 20 |
| B. | Plaintiff's Claim For Negligent Infliction Of Emotional Distress Is Pre-empted By New York's Workers' Compensation Law | 22 |
| POINT VII | PLAINTIFF'S NINTH CAUSE OF ACTION FOR DEFAMATION MUST BE DISMISSED BECAUSE PLAINTIFF CAN PROVIDE NO EVIDENCE SUFFICIENT TO SUPPORT HIS CLAIM | 22 |
| POINT VIII | PLAINTIFF'S TENTH CAUSE OF ACTION FOR BREACH OF CONTRACT MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT ESTABLISH ANY BREACH | 23 |
| CONCLUSION | | 29 |

# TABLE OF CONTENTS

**Page**

## CASES

*AETNA Life Ins. Co. V. Borges*, 869 F.2d 142 (2d Cir. 1989) ........................................ 24

*Alfano V. Costello*, 294 F.3d 365 (2d Cir. 2002) .................................................... 11, 12

*Bampoe V. Coach Stores, Inc., 93 F.Supp. 2d 360 (S.D.N.Y. 1999)* ............................ 16

*Brennan V. Metropolitan Opera Assoc.*, 192 F.3d 310 (2d Cir. 1999) .................................. 11, 14

*Burlew V. American Mutual Ins. Co.*, 63 N.Y.2d 412 (1984) ..................................... 22

*Burlington Northern And Santa Fe Railway Co. V. White*,
    548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) ..................................... 15

*Bush V. Fordham University*, 452 F.Supp.2d 394 (S.D.N.Y. 2006) .............................. 15

*Celotex Corp. V. Catrett*, 477 U.S. 317 (1986) .................................................. 5

*Cifarelli V. Village Of Babylon*, 93 F.3d 47 (2nd Cir. 1996) ................................... 5

*Citroner V. Progressive Casualty Ins. Co.*, 208 F.Supp.2d 328 (E.D.N.Y. 2002) .................... 12

*D'Amico V. City Of New York*, 132 F.3d 145 (2d Cir. 1998) ..................................... 5

*D'Angelo-Fenton V. Town Of Carmel Police Dep't.*, 470 F. Supp. 2d 387 (S.D.N.Y. 2007) ....... 23

*Dawson V. Bumble & Bumble*, 246 F.Supp.2d 301 (S.D.N.Y. 2003) ............................ 12

*Dewitt V. Lieberman,* 48 F.Supp.2d 280 (S.D.N.Y. 1999) ........................................ 19

*Faragher V. City Of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998) ....................... 13

*Feingold V. State Of New York*, 366 F.3d 138 (2d Cir. 2004) ........................................ 7

*Fierro V. Saks Fifth Avenue*, 13 F.Supp.2d 481 (S.D.N.Y. 1998) ............................... 12

*Fischer V. Maloney*, 43 N.Y.2d 553, 373 N.E.2d 1215, 402 N.Y.S.2d 991 (1978) ............... 20

*Forrest V. Jewish Guild For The Blind*, 3 N.Y.3d 295, 310, 819 N.E.2d 998,
    786 N.Y.S.2d 382, (2004) ......................................................... 11, 12, 13

## TABLE OF AUTHORITIES
(continued)

**Page**

*Freihofer V. Hearst Corp.*, 65 N.Y.2d 135, 480 N.E.2d 349, 490 N.Y.S.2d 735 (1985) ............. 20

*Gallo V. Prudential Residential Servs., Ltd.*, 22 F.3d 1219 (2d Cir. 1994) .................................... 5

*Gerson V. Giorgio Sant'Angelo Collectibles, Inc.*, 671 N.Y.S.2d 958
(Sup.Ct. N.Y.Co 1998) ........................................................................................................ 22

*Gourdine V. Cabrini Medical Center*, 307 F.Supp.2d 587 (S.D.N.Y. 2004) ................................. 8

*Green V. Harris Publications*, 331 F.Supp.2d 180 (S.D.N.Y. 2004) ...................................... 12, 21

*Harris V. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ......... 11, 13

*Howell V. New York Post Co.*, 81 N.Y.2d 115, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993) ....... 21

*Int'l Healthcare Exch., Inc. V. Global Healthcare Exch., LLC*,
470 F. Supp.2d 345 (S.D.N.Y. 2007) .................................................................................. 16

*Karaduman V. Newsday, Inc.*, 51 N.Y.2d 531, 416 N.E.2d 557,
435 N.Y.S.2d 556 (N.Y. 1980) ........................................................................................... 23

*Khrapunskiy, V. Doar*, 49 A.D.3d 201, 852 N.Y.S.2d 40 (1st Dept. 2008) .................................. 7

*Kotcher V. Rosa & Sullivan Appliance Center*, 957 F.2d 59 (2d Cir. 1992) ............................... 12

*Liebowitz V. Cornell University*, 2007 WL 3019233, *7 (S.D.N.Y. 2007) ................................... 8

*Liebowitz V. Cornell University*, 445 F.3d 586 (2d Cir. 2006) ............................................... 8, 21

*Mcdonnell Douglas Corp. V. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817,
36 L.Ed.2d 668 (1973) .................................................................................................. 10, 17

*Mcintyre V. Manhattan Ford, Lincoln-Mercury,Inc.*, 256 A.D.2d 269, 682 N.Y.S.2d 167 (1st
Dep't 1998) ......................................................................................................................... 21

*Mcpherson V. New York City Dep't Of Educ.*, 457 F.3d 211 (2d Cir. 2006) .............................. 10

*Metropolitan Life Ins. Co. V. Taylor*, 481 U.S. 58, 107 S. Ct. 1542 (1987) ............................... 24

*Murphy V. American Home Products Corp*, 58 N.Y.2d 293, 448 N.E.2d 86,
461 N.Y.S.2d 232 (1983) .................................................................................................... 19

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Murphy V. ERA United Reality*, 674 N.Y.S.2d 415, (2d Dept 1998) ........................................... 19

*Oncale V. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998,
  140 L.Ed.2d 201 (1998) ................................................................................................ 12

*Patane V. Clark*, 508 F.3d 106 (2d Cir. 2007) ........................................................................ 15

*Perry V. Ethan Allen, Inc.*, 115 F.3d 143 (2d Cir. 1997) ........................................................ 12

*Persaud V. S. Axelrod Co.*, No. 95-Civ-7849, 1996 WL 11197 (S.D.N.Y. 1996) ...................... 22

*Pilot Life Ins. V. Dedeaux*, 481 U.S. 41, 107 S. Ct. 1549 (1987) ............................................ 24

*Ponticelli V. Zurich American Insurance Group*, 16 F.Supp.2d 414 (S.D.N.Y. 1998) ............... 15

*Pugni V. Reader's Digest Assoc., Inc.*, 2007 U.S. Dist. LEXIS 26284 (S.D.N.Y. 2007) ............. 15

*Rexnord Holdings,Inc. V. Biderman*, 21 F.3d 522 (2d Cir. 1994) ............................................ 23

*Seltzer V. Bayer*, 272 A.D.2d 263, 709 N.Y.S.2d 21 (1st Dep't 2000) ..................................... 21

*Sheikh V. Habib Bank Ltd.*, 270 A.D.2d 107, 704 N.Y.S.2d 75 (1st Dept. 2000) ........................ 6

*Smith V. American Express Co.*, 853 F.2d 151 (2nd Cir. 1988) ................................................. 5

*Sowemimo V. D.A.O.R. Security, Inc.*, 43 F.Supp.2d 477 (S.D.N.Y. 1999) ................................ 15

*Springle V. Metropolitan Transit Auth.*, 2008 U.S. Dist. LEXIS 7875,
  2008 WL 331362 (S.D.N.Y. 2008) ................................................................................... 7

*Yerndon V. Henry*, 91 F.3d 370 (2nd Cir. 1996) ....................................................................... 5

## STATUTES

*N.Y.C. Admin. Code* .............................................................................................................. 6
NYCHRL ................................................................................................................... passim
NYSHRL ................................................................................................................... passim

Defendant Alitalia Linee Aeree Italiane, S.p.A. ("Alitalia"), by its attorneys, Vedder Price P.C., hereby submits this memorandum of law pursuant to Federal Rule of Civil Procedure ("FRCP") 56(b) in support of its Motion for Summary Judgment on all of the causes of action set forth in the Amended Complaint of plaintiff Francesco Gallo ("Gallo" or "Plaintiff"). Alitalia's motion is based on Plaintiff's inability to produce evidence sufficient to raise an issue of material fact with respect to his claims of discrimination on retaliation under State or City law, defamation; of negligent and intentional infliction of emotional distress and breach of contract. A copy of the Amended Complaint is attached to the accompanying Notice of Motion as Exhibit 1. The Defendants' Answer is attached as Exhibit 2.

## **PROCEDURAL HISTORY**

On or about June 20, 2007, Plaintiff filed a complaint in the Supreme Court of the State of New York, New York County, containing eleven causes of action. The complaint was served on Alitalia, via the Secretary of State, on or about June 25, 2007, and on defendants Galli and Libutti on or about July 18, 2007, in Italy. On July 13, 2007, Alitalia removed the litigation to this Court. On August 17, 2007, Defendants filed a motion to dismiss the complaint. Rather than oppose the motion, Plaintiff filed the instant Amended Complaint ("Am. Cplt.") alleging ten causes of action, on September 4, 2007. Copies of the Amended Complaint and Defendants' Answer to it are attached to the Notice of Motion.

Plaintiff's first seven causes of action are pleaded under the New York State Human Rights Law ("NYSHRL"), Executive Law § 296 and the New York City Human Rights Law ("NYCHRL"), City Administrative Code, § 8-107, alleging discrimination based on age, disability, citizenship and perceived sexual orientation (First and Fourth Causes); retaliation (Second and Fifth Causes); aiding and abetting the alleged discrimination and retaliation. (Third and Sixth Causes), and coercion and intimidation (Seventh Cause NYCHRL only).

1

Plaintiff's Eighth Cause of Action is for intentional infliction of emotional distress, the Ninth Cause is for defamation and slander against Alitalia and Libutti only and the Tenth Cause is for breach of contract.

## RELEVANT TIME PERIODS

Plaintiff sues only for events that occurred after September 15, 2005 (Am. Cplt., ¶¶ 18, 20, 91). It is undisputed, therefore, that the relevant time periods are as follows:

- for the first seven Causes of Action, normally subject to a three year statute of limitations, only alleged events that occurred after September 15, 2005 ("relevant HRL time period") are actionable.

- for the Eighth and Ninth Causes, subject to a one year statute of limitations, only alleged events that occurred after June 20, 2006 ("relevant Tort time period") are actionable.

- for the Tenth Cause, normally subject to a six year limitations period, only alleged events that occurred after September 15, 2005 ("relevant Contract time period') are actionable.

## STATEMENT OF FACTS

Plaintiff, a naturalized American citizen, was born in 1947 (Defendants' Joint Statement of Uncontested Material Facts, hereinafter "Facts," ¶ 2). He began his employment with Alitalia as an accountant in 1968. He rose in rank and eventually became the General Manager for the Americas, a position he held until 2002, when he became Senior Vice President of Corporate Affairs for North America, reporting directly to Rome (Facts, ¶ 3). In that capacity, Plaintiff oversaw regulatory affairs, public relations, human resources and all legal matters (_Id_).

In or about July of 2003, Plaintiff began reporting to defendant Pierandrea Galli ("Galli"), Alitalia's Head of Sales for North and South America, based in New York (Facts, ¶ 4). In or about July of 2004, Galli was promoted to Senior Vice President, Worldwide Sales and was

2

transferred to Rome (*Id*).  Throughout this period, Alitalia was in a financial crisis.  Worldwide cutbacks were implemented (Facts, ¶ 5).  During 2005, Alitalia's New York office decreased from 111 employees (down from 130 in 2003) to 75 employees.  By the end of 2006, it was down to 58 employees, and by the end of 2007, 48 (Facts, ¶ 6).

In March of 2004, Plaintiff arranged for Alitalia to offer a voluntary early retirement program ("ERP") to New York Sales Division employees who were 55 or over and had at least 15 years of service with Alitalia.  In August of 2004, Alitalia expanded the ERP to other departments in New York.  In July of 2005, Alitalia again offered an ERP, this time to employees 50 or older with 15 years of service (Facts, ¶ 32).

On September 15, 2005, Plaintiff and Alitalia signed an agreement ("Severance Agreement"), whereby, *inter alia*, Plaintiff ceased to be an employee and became a consultant; and whereby Plaintiff released all claims against Alitalia and its employees, among others (Facts, ¶ 8).  Plaintiff's claims in this case are based on events that occurred after September 15, 2005 (*Id*).

Pursuant to the Severance Agreement, Plaintiff was also to receive a separation payment of $300,000; a $54,000 contribution to his pension plan; and three $200,000 payments (one every six months) for consulting services to be performed over the ensuing eighteen months period—until March 15, 2007 (Facts, ¶ 9).  "In his role as a consultant," Plaintiff was to receive a continuation of all benefits that he had been receiving as an employee (*Id*).  After becoming a consultant, Plaintiff reported to defendant Libutti, Alitalia's VP of Sales for North America and Mexico (Facts, ¶ 13).

3

Plaintiff has received all payments pursuant to his Severance Agreement, including all three $200,000 payments for his consulting services (Facts, ¶ 10). Plaintiff also continues to be covered by Alitalia's health insurance, life insurance, accidental death insurance, short-term disability insurance policies and its dental plan, and he received an additional $47,000 lump sum payment to cover other miscellaneous benefits he had been receiving before he signed the Severance Agreement (_Id_).

In early 2006, Alitalia's internal audit department conducted an audit of Alitalia's North American operations. That audit revealed significant and severe procedural irregularities with respect to record keeping and other issues at Alitalia's New York office and several of its North American stations (Facts, ¶ 14). Based on the results of that audit, Alitalia's CEO issued a brief memo addressing the "deplorable and risky degradation" of Alitalia's North American operations and demanding a meeting with Alitalia's CFO and its Executive VP for Human Resources to discuss the problems and the responsible personnel (Facts, ¶ 15).

The CFO and head of Human Resources decided to terminate Plaintiff's consulting services, and to terminate Alitalia's North American 43 year-old CFO along with several North American station managers (Facts, ¶ 16). On May 8, 2006, defendants Galli and Libutti had a brief meeting with Plaintiff and informed him that Alitalia would dispense with his consulting services and that his consulting arrangement would not be renewed when it expired in March of 2007 (Facts, ¶ 19).

Shortly after his consulting services were terminated, and while he was still being paid as a consultant, Plaintiff applied for long term disability payments from Alitalia's provider. He submitted a doctor's statement declaring that he had a "permanent disability" and was "totally

4

restricted" from working,  and Plaintiff himself attested that he became disabled on May 28, 2006 (Facts, ¶ 21).  Plaintiff testified that for at least a year, his doctor had wanted him to cease working and go on disability. (*Id*).

## ARGUMENT

## STANDARDS FOR GRANTING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  To defeat this motion for summary judgment, Plaintiff bears the burden of producing competent evidence on each element of his claims, evidence sufficient to create a genuine issue with respect to any material fact. *Id*. at 324.

Plaintiff cannot create a genuine issue of material fact through mere speculation. *Yerndon v. Henry*, 91 F.3d 370, 374 (2nd Cir. 1996); *Smith v. American Express Co.,* 853 F.2d 151, 155 (2nd Cir. 1988).  "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" to show that there is a genuine issue for the trier of fact to resolve. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).  Thus, "mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Cifarelli v. Village of Babylon,* 93 F.3d 47, 51 (2nd Cir. 1996).  Where it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight," summary judgment should be granted. *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir. 1994).

5

## POINT I

## PLAINTIFF CANNOT ESTABLISH A CLAIM FOR DISCRIMINATORY TERMINATION

### (FIRST and FOURTH CAUSES)

Apart from an alleged hostile environment (discussed in POINT II, herein), the Amended Complaint's claims of discrimination appear to be based entirely on Plaintiff's supposed "firing" in May, 2006. For the reasons shown below, Plaintiff cannot show that there is a material issue of fact which would permit a reasonable jury to find discriminatory "termination."[1] Plaintiff neither was fired nor suffered any adverse employment action. Moreover, Plaintiff has no hard evidence that his age, his perceived sexual orientation, his disability or his American citizenship was a factor in any decision affecting him. Furthermore, when he left Alitalia, Plaintiff became totally disabled and thereby ceased to be qualified for his job. Finally, Alitalia has set forth a legitimate non-discriminatory reason for dispensing with Plaintiff's consulting services which he cannot show was a pretext for discrimination.

### A.    Plaintiff's Citizenship Discrimination Claim is Not Cognizable Under the NYSHRL or NYCHRL

As an initial matter, Plaintiff's claims for discrimination based on his American citizenship must be dismissed on a purely legal basis. Under Section 296 of the New York State Executive Law, "[t]here is no legally cognizable discrimination cause of action based on citizenship." *Sheikh v. Habib Bank Ltd.*, 270 A.D.2d 107, 108, 704 N.Y.S.2d 75, 76 (1st Dept. 2000). New York City's Administrative Code prohibits discrimination based upon "alienage or citizenship *status*," not upon citizenship itself. *N.Y.C. Admin. Code*, § 8-107(1)(a)(emphasis added). The NYCHRL's legislative history says: "It is the intent of the Council to prevent *aliens*

---

[1] As Plaintiff contends that he was really an employee while serving as a consultant, Alitalia does not assert in this Motion that he is not protected by the State and City Human Rights Laws.

from being treated unfairly in housing, employment and other areas of life. This law prohibits discrimination against *aliens* unless such prohibition is contrary to Federal, State or City law." LL 52/1989 § 1 (emphasis added). A survey of recent case law indicates that employers have been found liable for a violation of Section 8-107 only when the aggrieved employees were discriminated against on the basis of alienage or citizenship status. *See, e.g., Khrapunskiy, v. Doar*, 49 A.D.3d 201, 852 N.Y.S.2d 40 (1st Dept. 2008).

## B.    Plaintiff Cannot Establish a *Prima Facie* Case Of Discriminatory Termination

To establish a *prima facie* case of discriminatory termination, Plaintiff must show "1) that he belonged to a protected class; 2) that he was qualified for the position he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Feingold v. State of New York*, 366 F.3d 138, 152 (2d Cir. 2004); *Springle v. Metropolitan Transit Auth.*, 2008 U.S. Dist. LEXIS 7875, *37, 2008 WL 331362, *12 (S.D.N.Y. 2008) (Exhibit A hereto). Plaintiff can establish only the first criterion (with respect to his age, disability and perceived sexual orientation).

### 1.    Plaintiff Was Not Qualified For His Position After May 28, 2006 Due To His Permanent And Total Disability

While he was still being paid pursuant to his consulting arrangement with Alitalia, Plaintiff applied for long term disability ("LTD") benefits based on his own doctor's signed statement that, as of May 30, 2006, he was "totally restricted" and unable to work in any capacity due to his "permanent disability" (Facts, ¶ 21). A second doctor concurred shortly thereafter (*Id*). Plaintiff submitted his own sworn statement to the same effect (*Id*), and testified that because of his disability he had been unable to pursue a planned business venture (Facts, ¶ 24). Plaintiff also receives Social Security Disability benefits (Facts, ¶ 27). The undisputed fact that

7

Plaintiff was medically entirely unable to work many months before his consulting contract could have been renewed undermines any discriminatory termination claim because he was not qualified for his job. Moreover, Alitalia continued to pay Plaintiff until the end of the term of his consultancy pursuant to the Severance Agreement—or March 15, 2007—in spite of the fact that Plaintiff and his doctors attested to his total inability to work (Facts, ¶ 10).

### 2.    Plaintiff Suffered No Adverse Employment Action

On May 8, 2006, Plaintiff was informed that his consultancy would not be renewed on March 15, 2007 when the 18 month consulting period was to expire, and that it no longer required his consulting services (Facts, ¶ 19). On May 23, 2006, Alitalia sent a letter to Plaintiff formalizing that decision (Facts, ¶ 20). These actions were expressly contemplated in the Severance Agreement (Facts, ¶ 8).

Non-renewal of an employment contract is not, by itself, an adverse employment action. *Liebowitz v. Cornell University*, 445 F.3d 586, 591 (2d Cir. 2006). The *Liebowitz* plaintiff had alleged that the defendant had an unofficial policy of recognizing five-year employment terms as the "equivalent of tenured professorships," *Id.* at 592, but upon remand, this Court concluded that the she could show no credible evidence of this unofficial policy. "Because plaintiff fails on this point, she is unable to demonstrate that she suffered an adverse employment action. . . Defendants are, thus, entitled to summary judgment, on this basis alone, dismissing plaintiff's discrimination claims." *Liebowitz v. Cornell University*, 2007 WL 3019233, *7 (S.D.N.Y. 2007) *on remand* (Exhibit B hereto); *see also Gourdine v. Cabrini Medical Center*, 307 F.Supp.2d 587, 595 (S.D.N.Y. 2004) *vacated and remanded on other grounds* (no adverse employment action where unambiguous term of employment agreement with no guarantee of renewal was not renewed by employer). Informing Plaintiff that his consulting agreement would not be renewed more than ten months prior to its expiration, and relieving him of the responsibility to perform

8

any services during that period, is not an adverse employment action, especially as Alitalia paid Plaintiff the full $600,000 consulting fee.

**3.  Plaintiff Cannot Show That The Termination Of His Consulting Services Took Place Under Circumstances Giving Rise To Discriminatory Intent**

Plaintiff also fails to establish a *prima facie* case because he cannot show a connection between any discriminatory conduct and the decision to terminate his consulting services. Plaintiff attempts to support his discriminatory termination claims with allegations that Libutti and Galli at times insulted him based on his age, his (perceived) homosexuality or his disability. However, these unsupported allegations are of no import to the issue of the termination of his consulting services.  Neither Libutti nor Galli was involved in—or even consulted about—the decision to terminate Plaintiff's consulting services (Facts, ¶ 18), and Plaintiff has no evidence that those responsible for the decision were aware of, let alone motivated by, his age, his (perceived) sexual orientation or his disability.

The decision to terminate Plaintiff's consulting services was made by Gabriele Spazzadeschi (Alitalia's CFO) and Massimo Cestaro (Alitalia's Executive V.P. for Human Resources)(Facts, ¶ 16).  Messrs. Spazzadeschi and Cestaro made this decision based upon a memo from the CEO, Mr. Cimoli, to address the deplorable and risky conditions in North America that had been revealed by an internal audit report in early 2006 (Facts, ¶ 15).  Messrs. Spazzadeschi and Cestaro are both based in Rome and Plaintiff never met or spoke with either of them (Facts, ¶ 17).  Accordingly, Plaintiff cannot establish any connection between the alleged comments by Galli and Libutti and the decision to terminate his consulting services.

As during the relevant HRL time period, Plaintiff was not qualified for his job due to his total disability, he suffered no adverse employment action, and he cannot show any circumstances that would give rise to an inference of discriminatory intent by Alitalia, there is

9

simply no basis upon which a jury could find a *prima facie* case of discriminatory termination, and Plaintiff's claims for discriminatory termination must be dismissed.

**C.    Plaintiff's Consulting Services Were Terminated for Legitimate Non-Discriminatory Reasons**

Even if Plaintiff could establish a *prima facie* case, he cannot overcome the fact that Alitalia has provided a legitimate and undisputed non-discriminatory reason for terminating his consulting services. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006).

Messrs. Spazzadeschi and Cestaro decided to terminate Plaintiff's consulting services based upon the results of an internal audit in early 2006 that revealed the "deplorable and risky degradation" at Alitalia's North American operations, in the words of Alitalia's then CEO, Giancarlo Cimoli (Facts, ¶¶ 15, 16). Terminated along with Plaintiff's consulting services was Marco Marchese, the CFO for North America, age 43 (Facts, ¶ 16). Marchese's age alone refutes Plaintiff's unsupported claim that decisions affecting him were part of a long-term systematic plan to get rid of older workers. Moreover, there is no evidence that Mr. Marchese was perceived to be homosexual or had any disabilities. In addition, Plaintiff was not replaced— his duties were distributed among other employees (Facts, ¶ 20).

As contemporaneous records show, the termination of Plaintiff's consulting services was part of a restructuring effected by Messrs. Spazzadeschi and Cestaro in response to the problematic state of affairs in North America revealed by the audit. Defendants have thus established a legitimate non-discriminatory reason for terminating Plaintiff's consulting services. There is simply no issue of material fact with respect to any basis upon which a jury could infer

10

that the termination of Plaintiff's consulting services was effected for discriminatory reasons and that the restructuring of Alitalia's North American operations was a pretext for discrimination.

**POINT II**

**PLAINTIFF'S EVIDENCE OF HARASSMENT IS INSUFFICIENT TO SUPPORT ANY HOSTILE ENVIRONMENT CLAIMS**

In order to establish a claim of unlawful hostile work environment under the NYSHRL and NYCHRL, Plaintiff must show that he was subjected to harassment that permeated the workplace "with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to 'alter the conditions of [his] employment . . .'" *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310, 819 N.E.2d 998, 786 N.Y.S.2d 382, 394 (2004)(quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Brennan v. Metropolitan Opera Assoc.*, 192 F.3d 310, 318 (2d Cir. 1999); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). Determining whether a workplace is sufficiently hostile to support a claim "has objective and subjective elements." *Alfano, supra*, 294 F.3d at 374. "A work environment will be considered hostile if a reasonable person would have found it to be so *and if the plaintiff subjectively so perceived it.*" *Brennan, supra*, 192 F.3d at 318 (emphasis added). Whether a work environment is sufficiently hostile to be actionable depends on considerations which include "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." *Brennan*, 192 F.3d at 319 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)); *Forrest*, 3 N.Y.3d at 311-312; *Alfano*, 294 F.3d at 374.

11

A.    **Plaintiff Fails the Subjective and Objective Tests of a Hostile Work Environment**

    1.    **Plaintiff fails to meet the objective test to establish harassment on any of the bases upon which his claims are based.**

With respect to a hostile environment claim, "isolated acts or occasional episodes will not merit relief." *Kotcher v. Rosa & Sullivan Appliance Center*, 957 F.2d 59, 62 (2d Cir. 1992); *Dawson v. Bumble & Bumble*, 246 F.Supp.2d 301, 326 (S.D.N.Y. 2003)(same).  Incidents "must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano, supra*, 294 F.3d at 374; *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997); *see also Forrest*, 3 N.Y.3d at 311.  Anti-discrimination laws are not "a general civility code," and they do "not prohibit all verbal or physical harassment in the workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998)).  *See Fierro v. Saks Fifth Avenue*, 13 F.Supp.2d 481 (S.D.N.Y. 1998); *Green v. Harris Publications*, 331 F.Supp.2d 180, 194 (S.D.N.Y. 2004); *Citroner v. Progressive Casualty Ins. Co.*, 208 F.Supp.2d 328, 340 (E.D.N.Y. 2002).

In this case, Plaintiff testified that Libutti made "negative" comments about his age—such as being called "old man" or no "young chicken"—just "several times" during the relevant HRL time period (Facts, ¶ 34).  Plaintiff further testified that Libutti made negative comments about his (perceived) homosexuality just "two or three times" (Facts, ¶ 35).  Plaintiff further testified that, during the relevant HRL time period, Libutti made comments about Plaintiff's psychological disability—such as that Plaintiff could have been treated along side another employee who, like Plaintiff, had been institutionalized—between ten and twenty times (Facts, ¶ 37).

As for Galli, Plaintiff testified that he only saw him "three or four times" during the relevant HRL time period (Facts, ¶ 38).  On one or two occasions, Plaintiff alleges that Galli

12

made disparaging comments about how Alitalia's New York office is "a bunch of frocci,[2] bunch of lesbian" (*Id*); Galli also allegedly made Plaintiff feel that he "was old enough to leave and that was (sic) a good thing for [Plaintiff] to leave Alitalia" (Facts, ¶ 39); Galli made perhaps two comments to the effect that Plaintiff's problems with Libutti were imagined because he had been a psychiatric patient (Facts, ¶ 40)(there is no evidence that Plaintiff was ever subjected to negative comments about his physical disabilities).

These comments—even added to two alleged physical confrontations with Libutti (Facts, ¶ 43)—are neither severe nor pervasive, which defeats Plaintiff's ability to establish acclaim for discriminatory harassment. They are merely scattered remarks and isolated incidents that do not rise to a level that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, *supra*, 510 U.S. at 21; *Forrest*, *supra*, 3 N.Y.3d at 310. "[S]imple teasing, offhand comments, and isolated incidents (unless *extremely* serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283 (1998)(emphasis added). Indeed, despite vigorous questioning, Plaintiff has not elicited a single instance of any other employee having ever heard such comments from either Galli or Libutti (Facts, ¶ 42), and they have denied ever making such comments (Facts, ¶ 41)(Libutti never even believed that Plaintiff was homosexual. Facts, ¶ 36).

### 2. **Plaintiff also cannot satisfy the subjective element of a hostile work environment claim**

Plaintiff concedes that he himself has used, and would use the very same sort of inappropriate language in the workplace upon which he bases his hostile environment claim.

---

[2] "Frocio" is an Italian word used to denote homosexuals. "Froci" is its plural form.

Plaintiff conceded that he asked at least one coworker, Marco D'Ilario, whether a particular manager had "[stuck] it up your ass as usual." (Facts, ¶ 44). Indeed, Plaintiff's testimony reveals that he used such language so casually, and with sufficient frequency, that he cannot recall specifically when he did so or to whom he may have done so (other than Mr. D'Ilario)—although he concedes that he "probably" used such language (*Id*). Plaintiff cannot seriously claim that these types of crude comments, when made by others, created a hostile working environment while he himself made substantively the same comments in the workplace. Furthermore, Plaintiff alleges that his job performance remained "superior" throughout his consultancy (Am. Cplt., ¶ 81), thereby conceding that the alleged hostile environment did not unreasonably interfere with his work performance. *Brennan, supra*, at 319.

Accordingly, to the extent that they allege discrimination based on a hostile work environment relating to Plaintiff's age, disability or sexual orientation, Plaintiff's First and Third Causes of Action must be dismissed.

## POINT III

## PLAINTIFF HAS NO EVIDENCE TO ALLOW A JURY TO FIND RETALIATION
### (SECOND and FIFTH CAUSES)

In order to establish a *prima facie* case of retaliation, Plaintiff must show that he engaged in a protected activity that resulted in some materially adverse action and that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415, 165

L.Ed.2d 345, 359 (2006).[3]  In practical terms, to state a claim for retaliation, a plaintiff must

show that "(1) she participated in a protected activity known to the defendant; (2) the defendant

took an employment action disadvantaging her; and (3) there exists a causal connection between

the protected activity and the adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007);

*see also Bush v. Fordham University*, 452 F.Supp.2d 394, 415 (S.D.N.Y. 2006)(same); *Pugni v.

Reader's Digest Assoc., Inc.*, 2007 U.S. Dist. LEXIS 26284, *64-65 (S.D.N.Y. 2007)

*unpublished*—Exhibit C hererto) (same, citing *Burlington Northern*), McMahon, J.

**A.**     **Plaintiff Cannot Establish That He Was Subjected To Any Employment Action
          That Disadvantaged Him**

As a threshold matter, Plaintiff's retaliation claims must be dismissed because he cannot

provide any evidence that Alitalia took any employment action that disadvantaged him (*see

POINT I, B.[2], supra*), let alone one that would dissuade a reasonable employee from engaging

in protected activity.  It is difficult to detect a disadvantage in the prospect of nearly ten months

of freedom from work while being paid at the rate of $400,000 per year (nearly twice Plaintiff's

annual salary prior to the Severance Agreement) with full benefits, a $300,000 severance and

other payments.

**B.**     **Plaintiff Cannot Establish That he Engaged in Protected Activity**

Second, Plaintiff cannot show that he engaged in any protected activity within or

proximate to the relevant HRL time period.  Plaintiff concedes that he did not complain to

anyone about Galli's alleged remarks during the relevant HRL time period (Facts, ¶ 45).  With

respect to Libutti's remarks, Plaintiff testified that he complained to Galli on just two occasions

---

[3] Retaliation claims under the NYSHRL and the NYCHRL "are analytically identical to those
under Title VII." *Sowemimo v. D.A.O.R. Security, Inc.*, 43 F.Supp.2d 477, 487, fn3 (S.D.N.Y.
1999); *Ponticelli v. Zurich American Insurance Group*, 16 F.Supp.2d 414, 435, fn3 (S.D.N.Y.
1998).

during the relevant HRL time period (Facts, ¶ 46). Galli acknowledges that Plaintiff complained to him just once, in 2003, that he had heard rumors that Libutti had problems with him. Libutti assured Galli that he had no problem with Plaintiff, which Galli reported to Plaintiff (Facts, ¶ 47). This general workplace complaint is not protected activity. Plaintiff also testified that he "probably" complained once about Libutti's alleged remarks to Alitalia's General Counsel, Leopoldo Conforti in late 2005 or early 2006 (Facts, ¶ 48). "Probably" having complained to Conforti, with no specification as to what he complained about is hardly sufficient to establish that Plaintiff engaged in protected activity for purposes of stating a retaliation claim. What's more, Plaintiff testified that he never told Mr. Conforti that Libutti made any comments about his perceived homosexuality (Facts, ¶ 48). Moreover, Conforti denied that he ever had any knowledge that either Galli or Libutti ever made derogatory comments based on age or (perceived) sexual orientation (Facts, ¶ 49).

None of these complaints specifically addresses any of Libutti's alleged disparaging comments about Plaintiff's age, perceived homosexuality or disability. Therefore, these complaints by Plaintiff are not protected activity. "[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity" under the NYSHRL or the NYCHRL. *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007); *see also Bampoe v. Coach Stores, Inc.*, 93 F.Supp. 2d 360, 372 (S.D.N.Y. 1999).

As for any complaints about discrimination against other employees (Facts, ¶ 50), Plaintiff cannot have *reasonably* believed that these other employees were in fact being discriminated against, as required to qualify as protected activity. Almost none of the employees whom Plaintiff asserts were to be fired because of their ages or for other impermissible reasons

16

was ever actually fired (*see* POINT III, E., *infra*), and that one or two may have been let go involuntarily hardly establishes a case for the wholesale age discrimination about which Plaintiff supposedly protested, given the overall shrinkage of the New York office from 130 employees to 48 employees between 2003 and 2007 (Facts, ¶ 6).

**C.    Plaintiff Can Establish No Connection Between Any Protected Activity and The Termination of His Consulting Services**

Finally, even if Plaintiff has sufficient evidence that he engaged in protected activity, no retaliatory conduct causally connected to such activity can be shown. There is no connection between the alleged protected activity and the termination of Plaintiff's consulting services, as neither Libutti nor Galli made the decision to terminate Plaintiff's consulting services and there is no evidence that Messrs. Spazzadeschi and Cestaro (or the internal auditors) were ever aware that Plaintiff had complaints about anybody at Alitalia or had protested what he thought was illegal conduct. Indeed, Plaintiff never met or spoke with either of them (Facts, ¶ 17). Accordingly, Plaintiff can establish no connection between his alleged complaints and the decision to terminate his consulting services.

**D.    Alitalia Has Set Forth a Legitimate Non-Discriminatory Reason For Terminating Plaintiff's Consulting Services**

The *McDonnell Douglas* burden-shifting analysis used in claims of discrimination . . . also applies to retaliation claims . . ." *Bush*, *supra*, at 415. Alitalia has set forth a legitimate non-discriminatory reason for terminating Plaintiff's consulting services—it was part of a restructuring that was ordered after an internal audit revealed severe management problems (*see* POINT I, C., *supra*). Plaintiff has produced no evidence that would show that this reason is pretextual, let alone a pretext for retaliation. Accordingly, Plaintiff's retaliation claims must be dismissed.

17

**E.     Alleged Plot to Terminate Plaintiff and to Terminate Other Employees for Impermissible Reasons**

Plaintiff testified that Alitalia's termination of his consulting services was the culmination of a grand nefarious scheme to fire him (for undisclosed reasons) dating back to 2000 (Facts, ¶ 28)—and to fire other employees for impermissible reasons.

As for the former, Plaintiff has no evidence that this "plot" of many years standing was related to his age, his perceived sexual orientation or any of his disabilities. As for the latter, Plaintiff testified that, on several occasions, Libutti either gave him or showed him a list of employees based on their ages, sexual orientation and disabilities and that Libutti instructed Plaintiff to fire those employees (Facts, ¶ 30). Yet when asked which employees were fired because they were (or were perceived to be) homosexual, Plaintiff could not recall the name of even one (*Id*).

Among the many employees that Plaintiff alleges were to be fired for impermissible reasons, Plaintiff knew of just two who were actually terminated, but whom he could not name (Facts, ¶ 31). When specifics were addressed, Libutti allegedly wanted to terminate these employees not because of their ages or other impermissible reasons, but for other reasons. E.g., Libutti allegedly wanted to terminate one employee because she was a "Miniata" ("whore" in Italian)(Facts, ¶ 31) and another was allegedly terminated because she refused to do personal work for her superiors (*Id*).

There was also an allegedly ongoing plan to fire all "old" employees and replace them with younger employees dating as far back as 2002 (Facts, ¶ 29). Plaintiff alleges that, in December of 2005, he was instructed to fire Angela Ross, Ester Lorusso, Betty Santella, Gabriele Mariotti, Concetta Corso and Marilyn Abbott because they refused to accept an offer to participate in the ERP (Facts, ¶ 29). Alitalia fired none of those people, and all those who were

18

eligible for an ERP remain employed. Indeed, there were at least 17 employees who refused an ERP and were not subsequently fired (Facts, ¶ 33). Moreover, only three employees were hired in 2004, three in 2005 and nine in 2006 (including two in their late forties) despite the many older employees who left under the ERP (Facts, ¶ 7). Thus, if Plaintiff did protest a scheme to fire older employees and replace them with younger ones, his protest was not reasonable as no such plan existed. Indeed, it is striking that Plaintiff is unable to recall the names of almost anyone who was fired impermissibly under this allegedly long-standing scheme while expressly conceding that "quite a few" employees were *not* fired after rejecting an ERP (Facts, ¶ 33).

For these reasons the Second and Fifth Causes must be dismissed.

## POINT IV

### PLAINTIFF'S CLAIMS FOR AIDING AND ABETTING MUST BE DISMISSED AGAINST ALITALIA BECAUSE THEY APPLY ONLY TO THE INDIVIDUAL DEFENDANTS

### (THIRD and SIXTH CAUSES)

It is axiomatic that Alitalia cannot aid and abet its own alleged violations of discrimination laws. *See*, e.g., *DeWitt v. Lieberman*, 48 F.Supp.2d 280, 293 (S.D.N.Y. 1999)(quoting *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 417 (2d Dept 1998))("It is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability *on others* for aiding and abetting")(emphasis added). Therefore, Plaintiff's claims for aiding and abetting must be dismissed as to Alitalia.

## POINT V

### PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR COERCION AND INTIMIDATION MUST BE DISMISSED BECAUSE IT IS NOT A RECOGNIZED CAUSE OF ACTION

Diligent research has failed to identify a single case recognizing a separate cause of action pursuant to NYCHRL, § 8-107 (19), pursuant to which Plaintiff brings a claim against the

19

Individual Defendants (and Alitalia), for coercing, intimidating, threatening and/or interfering with Plaintiff's exercise of the enjoyment of his rights as an employee. The pronounced absence of any such case suggests that § 8-107 (19) will not, standing alone, independently support a cause of action. In any event, Plaintiff has not shown any significant conduct that could be construed as coercive, intimidating, threatening or interfering with Plaintiff's rights as an employee. Libutti's alleged conduct, although clearly unpleasant and uncouth if it occurred, is not alleged to have interfered in a coercive, intimidating or threatening way with Gallo's statutory rights—including his right to sue Alitalia—and could not sustain a Cause of Action under this section of the City law (even if such a Cause actually existed). Accordingly, Plaintiff's cause of action pursuant to the NYCHRL, § 8-107 (19) must be dismissed for failure to state a cause of action.

## POINT VI

### PLAINTIFF'S EIGHTH CAUSE OF ACTION FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MUST BE DISMISSED BECAUSE THERE IS NO SHOWING OF EXTREME AND OUTRAGEOUS CONDUCT

#### A.   Plaintiff's Intentional Infliction of Emotional Distress Claims Must Be Dismissed Because He Cannot Establish Sufficiently Outrageous Conduct By Defendants

"The tort of intentional infliction of emotional distress predicates liability on the basis of extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143, 480 N.E.2d 349, 490 N.Y.S.2d 735 (1985); *Murphy v. American Home Products Corp*, 58 N.Y.2d 293, 302, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983); *Fischer v. Maloney*, 43 N.Y.2d 553, 557, 373 N.E.2d 1215, 402 N.Y.S.2d 991 (1978). Indeed, this "threshold of outrageousness is so difficult to reach that, of the intentional infliction of emotional distress claims considered by the Court of Appeals, 'every one has failed because the alleged conduct was not sufficiently

20

outrageous'." *Seltzer v. Bayer*, 272 A.D.2d 263, 264, 709 N.Y.S.2d 21, 23 (1st Dep't 2000)(quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993)).   *See Liebowitz, supra*, 152 A.D.2d at 171 (intentional infliction of emotional distress "must consist of more than mere insults, indignities, and annoyances . . . to meet the threshold requirements for the tort"); *Seltzer*, 709 N.Y.S.2d at 23 (allegations that neighbor dumped a pile of cement on plaintiff's sidewalk, tossed lit cigarettes into plaintiff's yard, threw eggs on plaintiff's front steps and threatened to paint a swastika on plaintiff's house not sufficient to support claim); *Green, supra*, 331 F.Supp.2d at 196 (repeated use of "niggers" and other racially derogatory language insufficient).

In this case, Plaintiff cannot establish that any of the Defendants engaged in extreme or outrageous conduct that went beyond all possible bounds of decency.   The disparaging comments that Plaintiff was allegedly subjected to with respect to his age, his disability or his perceived sexual orientation fail to rise to the level that could support an intentional infliction claim.   Moreover, "the intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort . . . there is no reason to apply the theory where an applicable statute expressly provides for the recovery of damages for emotional distress." *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 270, 682 N,Y,S,2d 167, 169 (1st Dep't 1998).

Moreover, the causes for any emotional distress from which Plaintiff may have suffered are multitudinous.   He had very recently been diagnosed with Corticobasal Degeneration—a progressive degenerative neurological disease (Facts, ¶ 21).   For several years, Plaintiff had also had a very troubled marriage, which he described as "purely an arrangement" since 2002 (Facts, ¶ 61).   He sought a separation (*Id*).   In August of 2005, he even physically assaulted his wife, for

21

which she obtained a protective order that required him to move away from home and not to speak to his children (*Id*).    Finally, and immediately subsequent to the termination of his consulting services and his subsequent admission to the Payne Whitney Psychiatric Clinic, Plaintiff had personally been accused of sexual harassment by a young male employee whom he had helped and had considered a friend (Facts, ¶¶ 51 - 53).    These other aspects of Plaintiff's life, alone or in combination, are the likely causes of any emotional distress he may have experienced.

**B.    Plaintiff's Claim For Negligent Infliction Of Emotional Distress Is Pre-empted By New York's Workers' Compensation Law**

Under New York law, "workers' compensation is intended to be the exclusive remedy for work-related injuries." *Burlew v. American Mutual Ins. Co.*, 63 N.Y.2d 412, 416 (1984); see also *Persaud v. S. Axelrod Co.*, No. 95-Civ-7849, 1996 WL 11197 at *5 (S.D.N.Y. 1996)(Exhibit D hereto).  This rule applies to negligent infliction of emotional distress claims, as the Workers' Compensation Law covers "psychological or nervous injury . . . to the same extent as physical injury." *Id*.  "Since negligence is exclusively covered by the Workers' Compensation Law, the claim for negligent infliction of emotional distress must therefore be barred." *Gerson v. Giorgio Sant'Angelo Collectibles, Inc.*, 671 N.Y.S.2d 958, 961 (Sup.Ct. N.Y.Co 1998).

## POINT VII

## PLAINTIFF'S NINTH CAUSE OF ACTION FOR DEFAMATION MUST BE DISMISSED BECAUSE PLAINTIFF CAN PROVIDE NO EVIDENCE SUFFICIENT TO SUPPORT HIS CLAIM

Plaintiff alleges defamation against Alitalia and Libutti only (Amended Complaint, ¶¶ 152-157).  This claim is based entirely upon a single allegation concerning a communication Libutti allegedly made to Plaintiff's wife.  Alitalia's liability for this Cause hinges on *respondeat superior*.    Because Plaintiff cannot establish any defamation by Libutti (*see* Individual

22

Defendants MOL, POINT VII), and because "there can be no vicarious liability on the part of the employer if the employee himself is not liable," Alitalia cannot be liable under the doctrine of *respondeat superior* or on any other basis. *D'Angelo-Fenton v. Town of Carmel Police Dep't.*, 470 F. Supp. 2d 387, 399 n.13 (S.D.N.Y. 2007)(quoting *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 545-46, 416 N.E.2d 557, 435 N.Y.S.2d 556 (N.Y. 1980)).

## POINT VIII

## PLAINTIFF'S TENTH CAUSE OF ACTION FOR BREACH OF CONTRACT MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT ESTABLISH ANY BREACH

"Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Biderman*, 21 F.3d 522, 525 (2d Cir. 1994). Plaintiff cannot establish that Defendants breached the Severance Agreement in any manner. The Severance Agreement contemplated that Plaintiff would receive a $300,000 lump sum severance payment; that he would receive a $54,000 contribution to his pension; that he would receive three $200,000 payments as a consulting fee; and that, "[i]n his role as a consultant", he would continue to receive all employee benefits he had been receiving at the time he signed the Severance Agreement (Facts, ¶ 9). As Plaintiff ceased to be a consultant on March15, 2007, the benefits he seeks going past that date are not recoverable.

There is no dispute that Plaintiff received the $300,000 lump sum severance payment, a $54,000 pension contribution and the three $200,000 payments for his consulting services (Facts, ¶ 10). With respect to his breach of contract claim, Plaintiff has asserted that Alitalia did not provide certain miscellaneous benefits that were promised him (Am. Cplt., ¶ 161). Yet, although reserving its claim that nothing is payable under the Severance Agreement past March 15, 2007, Plaintiff was paid an additional $47,000 for car and cell phone and other expenses to age 65 ,

23

which he concedes (Facts, ¶ 10).  Plaintiff testified that he believes that this amount was not

sufficient to cover the costs involved.  Plaintiff's only basis for this contention is that, when he

was informed that he would be paid for these expenses, he did his own calculation—which he

never wrote down and cannot even recall! (Facts, ¶ 11).  Alitalia also continues to pay Plaintiff's

car insurance because Plaintiff refused to take title to the company car that he uses (Facts, ¶ 10).

Plaintiff also concedes that he continues to be covered by Alitalia's group health

insurance, life insurance, accidental death insurance, short-term disability insurance policies and

its dental plan (Facts, ¶ 10).

The single benefits issue Plaintiff asserts concerns his long term disability ("LTD")

coverage.  Plaintiff was refused payments by Alitalia's LTD insurance provider, UNUM

Provident ("UNUM"), even though Alitalia has continued to pay premiums on Plaintiff's behalf.

This benefit is provided under an ERISA plan.  Therefore, the claim cannot stand because it is

preempted by ERISA. 29 U.S.C. § 1144(a)(the provisions of ERISA "shall supersede any and all

State laws insofar as they may now or hereafter relate to any employee benefit plan . . .").  The

"express pre-emption provisions of ERISA are deliberately expansive" and "are to be interpreted

broadly." *AETNA Life Ins. Co. v. Borges*, 869 F.2d 142, 144 (2d Cir. 1989); *Pilot Life Ins. Co. v.*

*Dedeaux*, 481 U.S. 41, 107 S. Ct. 1549 (1987)(common law claim for breach of contract

preempted by ERISA); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S. Ct. 1542

(1987)(ERISA preempts state contract and tort claims).  Dismissal is warranted on this basis

alone.

In any event, even if Plaintiff could bring a breach of contract claim with respect to LTD

payments, Alitalia fulfilled its contractual obligation by paying premiums to UNUM on

24

Plaintiff's behalf, just as it did on behalf of all of its employees and just as it had done for Plaintiff prior to the Severance Agreement. UNUM did not reject Plaintiff's application because Alitalia failed to pay premiums (Facts, ¶ 25). Alitalia provided LTD insurance coverage to Plaintiff on the same basis as it had before Plaintiff signed the Severance Agreement (Facts, ¶ 26). To the extent that there is a dispute with respect to Plaintiff's LTD insurance, it is between Plaintiff and UNUM—not between Plaintiff and Alitalia—and Plaintiff is planning to bring suit against UNUM and is considering appealing UNUM's rejection of his claim (Facts, ¶ 25). Finally, because UNUM may reconsider its rejection upon appeal, this issue is not yet ripe for adjudication.

## CONCLUSION

For the foregoing reasons, defendant Alitalia Linee Aeree Italiane, S.p.A. respectfully requests that this Court grant an Order of summary judgment in its favor on the grounds that Plaintiff fails to state a claim against Alitalia, and for such further relief as the Court may deem just and proper.

Dated: New York, New York       VEDDER PRICE, P.C.
      April 28, 2008

By: /s/  Alan M. Koral
     Alan M. Koral (AK 1503)
     Charles S. Caranicas (CC 9244)

Attorneys for Defendants
*Alitalia Linee Aeree Italiane S.p.A.*

1633 Broadway – 47th Floor
New York, New York 10019
(212) 407-7700

25