LEXSEE


Analysis
As of: Apr 28, 2008

MARGARET SIPSER LEIBOWITZ, Plaintiff, -against- CORNELL UNIVERSITY, NEW YORK STATE SCHOOL OF INDUSTRIAL AND LABOR RELATIONS, EDWARD J. LAWLER, RONALD SEEBER, ANN W. MARTIN, ESTA R. BIGLER, and NICHOLAS SALVATORE Defendants.

03 CV 9976 (GBD)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2007 U.S. Dist. LEXIS 76663

October 12, 2007, Decided
October 12, 2007, Filed

**PRIOR HISTORY:** *Leibowitz v. Cornell Univ.,* 445 F.3d 586, 2006 U.S. App. LEXIS 10182 (2d Cir. N.Y., 2006)

**COUNSEL:** [*1] For Margaret Sipser Leibowitz, Plaintiff: David M. Marek, LEAD ATTORNEY, Jeffrey Lew Liddle, LEAD ATTORNEY, Liddle and Robinson, LLP, New York, NY.

For Cornell University, New York State School of Industrial and Labor Relations, Edward J. Lawler, Ronald Seeber, Ann W. Martin, Esta R. Bigler, Nick Salvatore, Defendants: Nelson E. Roth, LEAD ATTORNEY, Valerie L. Cross, LEAD ATTORNEY, Wendy E. Tarlow, LEAD ATTORNEY, Office of University Counsel, Cornell University, Ithaca, NY.

**JUDGES:** GEORGE B. DANIELS, United States District Judge.

**OPINION BY:** GEORGE B. DANIELS

**OPINION**

MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge

Plaintiff Margaret Sipser Leibowitz brought suit against the above-named defendants alleging gender and age discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), respectively, as well as in violation of both the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). Additionally, plaintiff asserted claims for violation of the Equal Pay Act, breach of contract, breach of an implied-in-fact contract, quantum meruit, and unjust enrichment.

Defendants are moving for summary [*2] judgment pursuant to *Fed. R. Civ. P. 56.* The motion is granted.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c); June v. Town of Westfield,* 370 F.3d 255, 257 (2d Cir. 2004). In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, this Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. See, e.g., *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

FACTUAL BACKGROUND

Plaintiff Margaret Sipser Leibowitz, a fifty year old female, was employed by Cornell University ("Cornell")

from 1984 until her retirement in December 30, 2002. Plaintiff began her appointment as a Senior Extension Associate for a three-year period in the New York City office of the New York State School of Industrial and Labor Relations ("ILR School").

In 1987, plaintiff received [*3] a favorable peer review and was appointed to Senior Extension Associate II.[1] Her original appointment was for a stated five-year term. Following her initial appointment in 1987, plaintiff received successive five-year term reappointments in 1992 and 1997. Plaintiff contends that her original promotion to Senior Extension Associate II automatically conferred lifetime tenure that could only be disturbed by termination for cause or budgetary exigency on the part of Cornell.

> 1 According to the Cornell Faculty Handbook: "A senior extension associate has significant professional qualifications. Appointment as a senior extension associate in the Cornell Cooperative Extension requires the Ph.D., and the Ph.D. is preferred for other appointments as senior extension associate; otherwise a master's degree in a pertinent discipline or an advance professorial degree is required. Responsibilities involve primarily, if not entirely, extension programming or administration. Senior extension associates are not members of the University Faculty. They are nonvoting members of their college of school faculties unless given a right to vote by the particular faculty. Senior extension associates are appointed [*4] for terms of up to five years and may be reappointed on the basis of recommendations by the department and the appropriate extension director and deans(s)." (Statement of Material Facts Pursuant to Local Civil Rule 56.1 "DSMF" Ex. 5).

In 1996, the Associate Dean, defendant Ronald Seeber, offered plaintiff the position of director of the labor relations program. However, when plaintiff conditioned her acceptance of the post on a change in reporting structure, the negotiations to give the position to plaintiff collapsed. During that time, plaintiff engaged in frequent arguments with her superior, defendant Esta Bigler. These arguments and the increasing tension between plaintiff and others in the New York City office, in part, combined with the fact that plaintiff's five-year contract was set to expire in October 1997, caused Dean Seeber to decide not to reappoint plaintiff to a subsequent five-year post. (Affidavit of Ronald Seeber "Seeber Aff" [*5] P 10). Following this decision, the Department of Human Resources at Cornell granted plaintiff a three month extension to complete her job duties. (DSMF Ex. 26). Plaintiff's contract was not scheduled for renewal after the temporary extension.

During plaintiff's temporary extension, two developments occurred that caused the ILR School staff to renew plaintiff's contract for another five-year term: plaintiff secured a project away from the New York City office; and the ILR School's Resident Division in Ithaca needed to staff particular courses for which plaintiff was well suited to teach. (Seeber Aff. P12). As a result of these developments, on January 5, 1998, Dean Seeber sent plaintiff a letter notifying her "of the continuation of her appointment as Senior Extension Associate II...for the period of February 1, 1998 to October 31, 2002." The letter also stated, "As you know, all appointments are contingent upon funding." (DSMF Ex. 27).

Commencing in 1998, plaintiff primarily began teaching resident classes at Cornell's Ithaca campus. (Plaintiff's EEOC Charge P12). While she was teaching the classes in the Resident Division, plaintiff never had any research obligations or summer duties, [*6] unlike tenured faculty. (Lawler Aff. P17).

While all of her job duties were located in Ithaca, plaintiff still maintained her primary residence in New York City. (Lawler Aff. P27). The ILR School reimbursed plaintiff's travel expenses between New York City and Ithaca. (Lawler Aff. P24). Plaintiff's travel expenditures were substantially higher than those of her colleagues because her travel was consistent and long-term. Plaintiff's hefty reimbursement totals came to the attention of Cornell's tax compliance office. (Lawler Aff. P29, DSMF Ex. 30, 31). The tax compliance office advised that if the ILR School wished to continue reimbursing plaintiff for her travel expenses, it would need to be in the form of taxable income and would have to be "grossed up" to adequately compensate her for her true expenditures. Id.

Dean Edward Lawler, also a defendant in this case, made the decision to pay plaintiff an additional $ 20,000 per year to partially offset plaintiff's travel expenses from New York City to Ithaca. (DSMF Ex. 31). In December 2001, plaintiff wrote to Dean Lawler explaining that the $ 20,000 was not adequately covering her travel expenses. Plaintiff acknowledged the school's budgetary [*7] constraints, and wrote, "I apologize for raising this at a difficult economic time." (DSMF Ex. 32). After further discussion, Dean Lawler agreed to increase the travel stipend to $ 29,000. (DSMF Ex. 34). Plaintiff again asserted that this amount was insufficient. (DSMF Ex. 34). Dean Lawler then agreed to increase the amount to $ 30,000. (DSMF Ex. 34). In June 2002, plaintiff once again contacted the ILR School requesting another stipend increase. (Lawler Aff. P35). It was after Dean Lawler received plaintiff's June 2002 request that he de-

Case 1:07-cv-06418-CM-RLE    Document 24-3    Filed 04/28/2008    Page 3 of 9

Page 3
2007 U.S. Dist. LEXIS 76663, *

Case 1:07-cv-06418-CM-RLE    Document 24-3    Filed 04/28/2008    Page 3 of 9

Page 3
2007 U.S. Dist. LEXIS 76663, *

cided that the arrangement with plaintiff had become too expensive to continue, given the school's budget constraints. (Lawler Aff. P22, 23, 24, 25, 26, 27, 28, 29, 30, 35, 36, 37).

Still, Dean Lawler made strides to otherwise accommodate plaintiff. Dean Lawler asked Associate Dean Martin, also a defendant here, whether she would consider having plaintiff reassigned to work in the Extension Division. Associate Dean Martin informed Dean Lawler that she would not. Shortly after, on July 1, 2002, Dean Lawler sent plaintiff a letter, stating:

> After considering and consulting about your response to our conversation on Thursday June 27, I am writing to affirm [*8] what I discussed with you then, letting you know in advance that we are not in a position to renew your current employment contract, which expires on October 31, 2002 [] We appreciate your teaching skills, but with budgetary exigencies this year - and with the expectations of more budgetary pressures in the future - we cannot afford to continue your current terms of employment with the School [] We will extend your employment with the school until May 31, 2003. We expect that you will teach the four courses, as planned, in Ithaca during academic year 2002-03. Until May 31, 2003, your pay will continue at its current annualized level, and we will continue the $ 30,000 add-on to offset your travel to and from New York City. After May 31, 2003, the School is not making any representation about future employment, nor are we encouraging you to move from New York to Ithaca with the expectation of future employment.

(DSMF Ex. 35)

Plaintiff asked Dean Lawler to reconsider his decision. (DSMF Ex. 36). Dean Lawler then asked Esta Bigler if she wanted plaintiff to return to the New York office; Ms. Bigler did not. (Deposition of Esta Bigler "Bigler Tr." 15). In a letter dated December 9, 2002, [*9] plaintiff wrote: "Because Cornell has refused to guarantee my employment after May 31, 2003, I will take early retirement effective December 30, 2002 to preserve my benefits." (DSMF Ex. 38).

On December 20, 2002, plaintiff contacted Dean Lawler, requesting assignment to the Long Island office. Dean Lawler responded that there were no openings. (DSMF Ex. 40). Unbeknownst to Dean Lawler, the director of Cornell's Long Island Extension Office had already offered plaintiff a position at the Long Island location. (DSMF Ex. 41). Dean Lawler informed plaintiff that the director did not have the authority to make such an offer. Dean Lawler terminated the director on January 13, 2003 for making such an offer. (DSMF Ex. 42, Lawler Aff. P 44). Plaintiff did not receive an appointment to the Long Island office. In accordance with her December 9 letter, on December 30, 2002, plaintiff retired from the ILR School.

Without the consent of, or direction by, Cornell or the ILR School, plaintiff continued advising two students after she retired from her position. Plaintiff informed no one at Cornell that she expected to be paid for these services, and no one at Cornell promised any payment. (Leibowitz [*10] Tr 228-229). Despite any agreement for further payment, on May 8, 2003, plaintiff wrote to Dean Lawler demanding $ 25,000 as payment for services rendered (DSMF Ex. 43).

**PROCEDURAL HISTORY**

On December 16, 2003, plaintiff filed this action for employment discrimination and various contract claims. On March 3, 2004, defendants moved to dismiss plaintiff's claims pursuant to *Fed. R. Civ. P. 12(b)(1) and (6)* for failure to state a claim upon which relief could be granted. On January 31, 2005, this Court granted defendant's motion to dismiss for failure to state a claim. This Court determined at the time of its ruling that each of plaintiff's conclusory pleadings lacked the factual support necessary to withstand a motion to dismiss. *Leibowitz v. Cornell Univ., No. 03-9976, 2005 U.S. Dist. LEXIS 1529, 2005 WL 267560 (S.D.N.Y. 2005).*

Thereafter, plaintiff appealed the District Court's decision to the United States Court of Appeals for the Second Circuit. On April 21, 2006, the Second Circuit vacated in part, holding that plaintiff had sufficiently plead her employment discrimination and Equal Pay Act claims to withstand defendants' motion to dismiss. *Leibowitz v Cornell Univ., 445 F.3d 586, 591-93 (2d Cir. 2006).* The Court [*11] of Appeals took no position on the strength or eventual outcome of plaintiff's case. The Second Circuit held:

> She alleges that although Senior Extension Associate II appointments are officially for five-year terms, unofficially they are considered to be the equivalent of tenured professorships and thus entitled to the same job security. She further alleges that documentation supporting this allegation will likely materialize during discovery. If such documentation bears out the

assertion, Leibowitz may be entitled to relief for being discharged without justification from a 'tenured' position. The mere allegation that such evidence does exist is sufficient to support the inferences to be drawn therefrom and thus overcome a motion to dismiss for failure to state a claim on which relief can be granted. Whether Leibowitz can ultimately prevail on that claim is a question to be answered at a later date.

*Id. at 592.*

The Court of Appeals agreed with the District Court's dismissal of plaintiff's claims for beach of implied-in-fact contract and *quantum meruit*, but permitted plaintiff leave to amend her complaint with facts that could form the basis of a sufficient claim. *Id. at 593*. The Second [*12] Circuit remanded the case to this Court with instructions to allow discovery and to allow plaintiff to amend her original complaint. Id. Plaintiff has since amended her complaint and discovery has been completed. While the Second Circuit Court of Appeals determined that plaintiff's allegations of employment discrimination and Equal Pay Act violations were sufficient to withstand a motion to dismiss, plaintiff's subsequent failure to produce any evidence on these claims warrants granting defendant's motion for summary judgment. Plaintiff has also failed to raise any material issue of fact with regard to her renewed contract claims. There are no genuine issues of material fact. Defendants are entitled to summary judgment as a matter of law pursuant to *Fed. R. Civ. P. 56(c)*.

## EMPLOYMENT DISCRIMINATION

Plaintiff alleges that defendants illegally discriminated against her on the basis of gender and age, in violation of Title VII, ADEA, and the New York Human Rights Law ("NYSHRL"). Plaintiff's Title VII, ADEA, and NYSHRL claims are all analyzed pursuant to the three-part test set out in *McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d. Cir. 2001)*. [*13] First, a plaintiff must prove by a preponderance of the evidence, a *prima facie* case of discrimination. *Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000)*. The burden here is *de minimus. Abdu-Brisson, 239 F.3d at 467*. Second, if a plaintiff makes such a showing, the burden then shifts to defendants to articulate a legitimate, non-discriminatory business rational for the adverse action about which plaintiff is complaining. *Id. at 466* (citing *McDonnell Douglas, 411 U.S. at 802-04*). "If the employer articulates such a reason, the presumption of [] discrimination dissolves, and the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that [] discrimination was the true reason for the adverse employment action." Id.

Plaintiff claims that Cornell discriminated against her on the basis of age and gender when it refused to guarantee her lifetime employment, a benefit to which she claims she was entitled because of her promotion to the Senior Extension Associate II position. However, plaintiff's claim for discrimination must fail because, after discovery, she is unable to produce any evidence that she had or held any right to a tenured [*14] position, that any Senior Extension Associate II had tenure, or that Senior Extension Associates who were male or younger than plaintiff were unofficially given tenure. Moreover, defendants proffered a non-discriminatory business rational for declining to renew plaintiff's employment contract, and plaintiff is unable to point to any evidence of discrimination or that defendant's stated reason was pretextual.

### Adverse Employment Action

Plaintiff claimed that the ILR School has an unofficial policy of granting Senior Extension Associate II employees a tenure-like status, which entitles them to lifetime employment. Plaintiff contends that defendants took a materially adverse employment action against her when, because of plaintiff's sex and age, defendants refused to apply the unofficial policy to her when they declined to continue her contract renewal indefinitely. The Court of Appeals' remand specifically provided plaintiff the opportunity to discover and produce documentation to bear out her assertion that although Senior Extension Associate II appointments are officially for five-year terms and not for life, unofficially they are considered tenured professorships and recipient Associates [*15] are thus entitled to the same job security. Since then, plaintiff has conducted discovery and cannot point to any evidence that Cornell had an unofficial tenure policy in place for the position of Senior Extension Associate II. Thus, she is unable to prove that she suffered an adverse employment action when she decided to retire because Cornell indicated that it did not intend to renew her employment contract when it was due to expire.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 1999)*. "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique

Case 1:07-cv-06418-CM-RLE    Document 24-3    Filed 04/28/2008    Page 5 of 9

Page 5
2007 U.S. Dist. LEXIS 76663, *

to a particular situation." Id. (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

Plaintiff argues that she suffered an adverse employment action when Cornell took away her lifetime tenure. In discovery, she sought evidence that [*16] the position of Senior Extension Associate II is granted implicit tenure by Cornell. She argues that although she was officially a five-year contract employee, that such an implicit grant guaranteed her job security beyond that of a term or at-will employee. Plaintiff argues that she "successfully underwent the ILR School Extension's formal 'peer review process' and was subsequently promoted to Senior Extension Associate II, which is the ILR School Extension's version of tenure." [2] (Pl. Amend. Comp. P 19). She also contends that "Cornell and the ILR School have treated nearly all other Senior Extension Associate II who successfully underwent the 'peer review process' as if they had tenure." Id. at P 23.

> 2 Plaintiff claims that the Senior Extension Associate II position is "the ILR School Extension's version of tenure." However, there is no school-specific tenure policy in any department or division of Cornell. The ILR School Extension program does not have a tenure program that deviates from that established in the Cornell Faculty Handbook. Further, the school is headed by a tenured professor and has two tenured professors on staff. These individuals successfully completed the tenure [*17] review process and have the only form of tenure available to Cornell employees, that which is specifically designated by the provost and the Trustees of the University.

Notwithstanding these allegations, plaintiff fails to produce any evidence that Cornell made any explicit or implicit offer of tenure to her, or had an unofficial tenure policy in place for any person holding the position of Senior Extension Associate II. Plaintiff merely relies on two colleagues who testified that they believed that they had some form of job security. There are a total of twenty-nine Senior Extension Associate II employees. There is no evidence that any of these employees were guaranteed lifetime tenure.

One of plaintiff's Senior Extension Associate II colleagues testified that unnamed Cornell representatives made representations to him that he held a more secure status than an at-will employee. (PSMF Ex. 10, pp 25-6). He testified that, "[w]hen most of the current extension faculty were hired, we were told that we were not on a tenured track but that we had something similar." Id. However, when asked "'[w]hat's your understanding of what your employment status was when you were hired as a senior extension [*18] associate?", the associate replied, "[m]y understanding was that barring some serious financial problem, I was guaranteed employment for the length of my contracts." (PSMF Ex. 10, pp. 27-8). The associate then reiterated that his job security only lasted the duration of a contract cycle, saying that upon the end of a contract "[t]here's a peer review and I would get another contract if I was renewed."

Plaintiff also relies on statements made by the fired director of Cornell's Long Island Extension Office. In his affidavit, he claims that he was told by Cornell representatives, including defendant Dean Seeber, that after the successful completion of his last peer review and his promotion to Senior Extension Associate, he would have, "job security on par with tenured faculty members on the Resident side." However, like plaintiff, the fired director, who has filed his own discrimination suit against Cornell, cannot point to any records, documentation, university policy, or other evidence that Cornell treated Senior Extension Associates as tenured professors of the University.

Plaintiff argues that this Court should focus on these two employee statements to imply a unofficial tenure policy [*19] because the ILR School did not abide by the reappointment process set forth in the ILR Faculty Personnel Policies Guidelines and Practices. Plaintiff thus attempts to undermine any reliance on Cornell's "official policy" of not offering any tenure-like job security to Senior Extension Associates. Both parties stipulated that Cornell did not always follow exact reappointment procedures and that reappointments were often performed "pro forma" (PSMF Ex. 6; Seeber Tr. 34). However, there is no evidence to support the conclusion that while Cornell officially offered five year contracts, in reality, the University guaranteed term employees tenured positions. The lack of strict compliance within the context of the reappointment process does not imply that Cornell deviated so greatly from their official protocol as to effectively give lifetime guarantees of employment to non-tenured, term employees.

Finally, plaintiff has produced no evidence in her personal occupational dealings with Cornell officials that would support her claim that the ILR School had an unofficial tenure policy in place for its Senior Extension Associates. After plaintiff's first peer review, she was informed of her favorable [*20] ratings and then explicitly told via letter that she was "being renewed for another five years", and additionally that "all appointments with the School were subject to the continued availability of funds." (DSMF Ex 14). In a subsequent letter reappointing her to her new term from 1992 to 1997, she was again explicitly told via letter that her "appointment is being continued for five years," and again that "all appointments are contingent upon available funding." (DSMF Ex 16).

Case 1:07-cv-06418-CM-RLE    Document 24-3    Filed 04/28/2008    Page 6 of 9

Page 6
2007 U.S. Dist. LEXIS 76663, *

Plaintiff cannot point to a single document or statement by any Cornell official that indicated that she was a tenured employee, or that Cornell had an unofficial tenure policy for its Senior Extension Associates. (DSMF Ex. 46, pp. 91, 95). When asked if she had ever received "a letter from anyone at Cornell that anyone [] had approved your election to indefinite tenure," and if she had ever received "an appointment letter that appointed you to a term of employment for any more than five years," plaintiff answered, "no." Id. Any correspondence regarding plaintiff's employment has always explicitly noted that she was a term-not tenured-employee. Plaintiff had even asked unsuccessfully to be placed in the tenure [*21] track in May 1990 and again in April 1993. (DSMF Ex. 15, 17). Finally, plaintiff's own statements to her friend, United States Court of Appeals Judge Harry Edwards, in 2000, belie any belief in the strength of her and her colleague's job security: "I'm just a lowly, untenured Extension person." (DSMF Ex. 8). Plaintiff's employment status did not change between 2000 and her retirement in 2003, nor was she promoted to a tenure track position during that time. Plaintiff has not advanced any evidence that could prove that she was considered a tenured employee of the ILR school, that Cornell had implicitly granted tenure to her or any other similarly employed person, or that Cornell had an unofficial policy of giving tenure to Senior Extension Associates.

Despite having been given the opportunity, plaintiff is unable to make the requisite showing that Cornell had an unofficial policy of granting tenure to its contract Senior Extension Associate II employees or did so for any male or younger Senior Associate II employees. Because plaintiff fails on this point, she is unable to demonstrate that she suffered an adverse employment action. Plaintiff did not have a guarantee of lifetime employment, [*22] and therefore suffered no material adverse change in the terms of her employment when she was advised that she would not be rehired in the future when her five-year contract expired. Plaintiff was not terminated; her unrenewed contract would have simply expired by its terms. Plaintiff was not demoted. Her salary did not decrease. She remained in the position that her employment contract specified until her retirement prior to its expiration. Defendants are, thus, entitled to summary judgment, on this basis alone, dismissing plaintiff's discrimination claims.

**Sex and Age Discrimination**

Notwithstanding the fact that plaintiff has failed to carry her burden of proof to show that Cornell had an unofficial tenure policy, plaintiff still attempts to argue that some of the new hires create an inference of age and gender discrimination. However, plaintiff is unable to produce any evidence to support a reasonable inference of age or gender discrimination. Plaintiff claims that defendants "replaced" her with three less qualified, younger male employees. (PSMF P 13). The employees that plaintiff names, however, all had vastly different job responsibilities and qualifications than plaintiff, and [*23] could not possibly be considered her replacement. One employee, a Ph.D. candidate who taught yearly from 1999-2001, was appointed to a three year term in 2002 as an adjunct professor. (PSMF P 15, pp. 54-55). Another employee was hired at a rate of $ 23,700 to work as an administrative assistant in the copy center. (PSMF P 13, p. 42). Finally, the third claimed replacement, the only person hired as a Senior Extension Associate II, was hired to lead the Equal Employment Opportunity Program and develop and run diversity programming. (Lawler Tr. 132).

None of these individuals were hired to replace plaintiff or to fill her position. Plaintiff asks, in the alternative, for this Court to find an inference of discrimination because either Cornell should have considered plaintiff for these positions or that Cornell should have forgone the costs of hiring a copy center employee to maintain her employment. However, no inference of discrimination can be drawn as plaintiff is entirely unable to show that these three individuals replaced her in any capacity. Moreover, plaintiff has failed to show that any of these individuals were granted unofficial tenure.

Plaintiff's discrimination claim unravels [*24] further when this Court examines the total record of the ILR School's hiring pattern is examined. Plaintiff has singled out these three individuals who were hired around the same time that her contract was not renewed. She bases her gender and age discrimination claims only on the facts that the individuals hired were male, younger, or both. Plaintiff, however, neglects to mention that there were other individuals who were hired at the same time who were either female or older than her. For example, plaintiff omits the hiring of a female to the position of Extension Support Specialist in September 2002 and the hiring of another female to the position of Senior Extension Associate in February 2003. (PSMF Ex. 77, 87). While a showing that plaintiff was replaced by a person outside of her protected class is not a requirement for a prima facie case of Title VII discrimination, these circumstances do serve to undermine plaintiff's gender discrimination claim. *Meiri v. Dacon, 759 F.2d 989, 996 (2d Cir. 1985)*.

Defendants have provided a non-discriminatory reason for the non-renewal of plaintiff's employment contract. Defendants have continuously and consistently maintained that plaintiff's [*25] contract was not renewed, not because of her age or gender, but rather due to budgetary exigencies. (DSMF 23).

Case 1:07-cv-06418-CM-RLE    Document 24-3    Filed 04/28/2008    Page 7 of 9

Page 7
2007 U.S. Dist. LEXIS 76663, *

Plaintiff fails to show any evidence that the employer's proffered reason is a pretext for discrimination. Plaintiff claims that the Extension School did not have a budget crisis. She relies on the fact that the Extension School fired six individuals and hired twelve, for a net gain of six during the period of the alleged budgetary exigency. (PSMF 63). The hires filled various positions ranging from Administrative Assistant to Senior Extension Associate. Many of the positions paid in the range of $ 15 per hour. (PSMF Ex. 68, 71, and 72). The highest paid position newly hired was a Senior Extension Associate who was to be paid $ 67,000. (PSMF Ex. 70). All of the hires during this period earned substantially less than plaintiff's base salary, not including the additional compensation she received for travel expenses. In total, plaintiff earned approximately $ 110,000, more than $ 40,000 more than the highest paid new hire. (PSMF Ex. 95). Plaintiff's base salary alone was still more than $ 10,000 above the highest paid new hire salary. The mere fact that there was a net gain of [*26] six staffers does not serve to negate the existence of a budgetary exigency, especially given the fact that each new hire earned substantially less than plaintiff and most performed different job duties.

Not only is plaintiff unable to rebut defendants' legitimate explanation for the non-renewal of her contract, but she personally knew that the ILR School was facing financial difficulties. Dean Ann Martin told plaintiff, via email dated September 19, 2002, that (1) the ILR School was $ 700,000 "in the red" in the previous year [FY 2001-02] and (2) that long term state funding levels were expected to decrease in the FY 03-04. Plaintiff in her correspondence specifically acknowledged the budget constraint and apologized for seeking an increase stipend "at a difficult economic time." (DSMF Ex. 32).

Plaintiff has not produced any evidence that Cornell had an unofficial tenure policy or that the University discriminated against her on the basis of age or gender by failing to guarantee plaintiff's employment in contravention of that policy. Plaintiff fails to produce evidence that would raise an inference of discrimination. On the contrary, defendants have produced proof that plaintiff's employment [*27] contract was not renewed primarily because Cornell could not afford to pay her salary demands. Thus, defendants are entitled to summary judgment on all of plaintiff's discrimination claims.

**EQUAL PAY ACT**

Plaintiff also claims defendants violated the Equal Pay Act, by paying male employees higher wages than plaintiff, although she performed equal, or superior work. (Pl. Am. Comp. P 91). The Second Circuit held that plaintiff's assertion that male employees were paid more than plaintiff for similar work was sufficient at the pleadings stage. *Leibowitz, 445 F.3d at 593*. However, since that stage, plaintiff has failed to support that assertion with any evidence male employees were paid higher wages than female employees. Thus, defendants are entitled to summary judgment on this claim.

"To prove a violation of the EPA, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform *equal* work on jobs requiring *equal* skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999)* (emphasis [*28] added) (internal citations omitted). Additionally, it is actual job content and not merely job title that is the determinative factor in establishing what is substantially equal. *Marshall v. Bldg. Maint. Corp., 587 F.2d 567, 571 (2d Cir. 1978)*. In order to make out a prima facie case, a plaintiff must prove that her job was more than "merely comparable" to the jobs of the men that she claimed earned more than her. *Tomka v. Seiler Corp., 66 F.3d 1295, 1310 (2d Cir. 1995)*. Once it is clear that a plaintiff has proven that her job was more than merely comparable, the question of whether her job duties were substantially equal to the men she identifies is a question of fact, not law. *Id. at 1312*.

Plaintiff alleges that several male extension associates were paid higher salaries than plaintiff despite her performing equal or superior work. (Pl. Am. Comp. 19). Plaintiff cannot merely rely on her sharing a job title with the men that she identifies; she must prove that those men had similar job duties. When plaintiff was asked if any of the males she identified held the same job duties, she answered in the negative to all employees, except for one. (Leibowitz Trans. 233-236). However, although [*29] plaintiff initially asserted that her duties and the one male employee's duties were comparable, she admitted that her duties consisted of teaching four courses a year while the male employee administered the management programs. (Leibowitz Trans. 234-235). Thus, their duties were not at all comparable.

Plaintiff fails to provide any evidence that Cornell pays disparate wages to employees of the opposite sex. Ten male Senior Extension Associate II earned higher salaries than plaintiff (base salary only, not including her travel add-on); four men earned less. Eight women earned higher salaries than plaintiff; six women earned less. Based on these figures, there is no evidence that Cornell paid male Senior Associate II more than females in the same job category. Plaintiff merely earned at the low to mid salary range paid to both men and women for the position.

Plaintiff also identifies several tenured male professors, who earned substantially more than her base salary. (PSMF Ex. 95). While plaintiff asserts that at all times she performed the level (or higher), quality, amount, and type of work as tenured and tenure-track faculty members (PSMF P7), it has already been established that [*30] plaintiff was not a tenured employee of the University. It is also clear that tenure-track faculty have significant research responsibilities that plaintiff does not have. (Lawler Aff P 17; DSMF Ex. 46, 202). Moreover, tenured professors, regardless of sex, are generally paid more than male and female senior extension associates. Thus, the fact that plaintiff was paid less than tenured professors is not surprising. Plaintiff does not meet the more than "merely comparable" threshold with respect to any male employee she identifies, and puts forth no other evidence that males performing equal work were paid more than her. Defendants are, thus, entitled to summary judgment on plaintiff's Equal Pay Act claim.

**BREACH OF CONTRACT**

Plaintiff renews a number of contract claims in her amended complaint, including breach of employment contract, implied-in-fact contract, quantum meruit, and unjust enrichment. The amended allegations made in support the contract and quasi-contract claims have not significantly changed and suffer from similar deficiencies that originally warranted dismissal of those claims, and the Second Circuit's affirmation of that dismissal. However, having allowed plaintiff to [*31] amend the complaint, a summary judgment analysis clearly demonstrates that there is no evidence to support any of plaintiff's contract claims as realleged.

First, plaintiff brings a claim for breach of an employment contract, on the theory that Cornell's "termination" of her was a breach of the lifetime employment contract afforded to her by tenure status. As outlined above, plaintiff has not made a showing that an explicit or implicit tenure policy existed for her or any other Senior Extension Associate. Just as there was no basis for plaintiff's employment discrimination claims, there is also no basis for her breach of an employment contract claim.

Second, plaintiff sues for breach of implied-in-fact contract, claiming she is owed compensation for work that she performed after she officially ended her employment with Cornell. Between January and May 2003, plaintiff continued on as Senior Honors Theses advisor to two students. (Pl. Am. Comp. 13). Additionally, plaintiff graded and administered a make-up exam for five students, and assigned and graded papers of students who had received incomplete marks in her class. Id.

The Second Circuit held that the original complaint was properly [*32] dismissed by this Court because plaintiff failed to allege mutual assent to the implied-in-fact contract. *Leibowitz, 445 F.3d at 593*. The Court of Appeals granted plaintiff leave to amend and she subsequently alleged that she performed this work at the request of Cornell. (Pl. Amend Comp. P 60). However, plaintiff points to no evidence of mutual assent that Cornell agreed to pay her for her services after her retirement.[3] In fact, plaintiff was required, under the terms of her previous employment contract, to grade all of the papers and exams and to clear all incomplete grades. Under New York law, an implied-in-fact contract requires all of the elements required of any valid contract, including consideration and mutual assent. *Maas v. Cornell Univ., 94 N.Y.2d 87, 93-94, 721 N.E.2d 966, 699 N.Y.S.2d 716 (1999)*. A promise to perform a pre-existing legal obligation does not amount to consideration. *Goncalves v. Regent Int'l Hotels, Ltd., 58 N.Y.2d 206, 220, 447 N.E.2d 693, 460 N.Y.S.2d 750 (1983)*. Defendants did not consent to paying plaintiff additional compensation after she retired; plaintiff already had a pre-existing duty to perform and complete the terms of her contract.

> 3  While plaintiff alleges that she received permission from Cornell administration [*33] to advise her honors students and communicated with the school regarding completing her job duties after her retirement, she has never alleged that Cornell, the ILR School, or any University representative agreed to pay plaintiff for these services. (Pl. Amend. Comp. P 54, 55, 57, 58).

Third, plaintiff also claims that she is due compensation from defendant on a theory of quantum meruit in connection with advising two students in the completion of their Senior Honors Theses. In affirming the District Court's dismissal of plaintiff's quantum meruit claim, the Second Circuit held, "Leibowitz also inadequately pled a cause of action in quantum meruit in that she failed to allege any basis for a finding that, in the absence of a contract, Cornell should be required to pay her for her work as a matter of equity." *Leibowitz, 445 F.3d at 593*. Plaintiff is not entitled to compensation as a matter of equity. To succeed on a claim of quantum meruit, the plaintiff "must establish (1) that the performance of the services was in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the [*34] services." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 66 (2d Cir. 1999)* (quoting *Martin H. Bauman Assoc., Inc. v. H & M Int'l Transp., Inc., 171 A.D.2d 479, 567 N.Y.S.2d 404, 408 (N.Y. App. Div. 1991)*); see also *Lehrer McGovern Bovis, Inc. v. New York Yankees, 207 A.D.2d*

*256, 615 N.Y.S.2d 31, 34 (N.Y. App. Div. 1994)*. Plaintiff's expectation to be compensated must also be reasonable. *Linden v. Moskowitz, 294 A.D.2d 114, 743 N.Y.S.2d 65, 67 (N.Y. App. Div. 2002)*.

Plaintiff has failed to establish that any expectation of compensation was reasonable, nor has she specified a reasonable value of her services. Defendants did not ask that the services be performed, plaintiff volunteered her services. (Lawler Aff. P45). Moreover, the ILR School was clear that teachers who left the employment of the University, but continued to advise students, did so on a voluntary basis. (DSMF Ex. 44). The ILR School had a policy of only reimbursing advisors for travel to attend a student's defense of his or her thesis. Id. Plaintiff's $ 25,000 bill for her advising services was not only out of line with the ILR School's policy, it was grossly disproportionate to any actual value of the services rendered.

Plaintiff's contract was not [*35] renewed because her salary had ballooned to $ 110,000 per year, a figure that the ILR School could no longer afford to pay. She could not have reasonably expected that Cornell would pay her $ 2,000 per day (annualized to a rate of $ 500,000 per year), in the absence of contract to that effect, after she left the University's employ. She did not enter into a new contract with defendants, express or implied, for compensation for services rendered after she retired. Thus, defendants are entitled to summary judgment on plaintiff's quantum meruit claim.

Under New York Law, quantum meruit and unjust enrichment are not separate causes of unjust enrichment claim and defendants are entitled to summary judgment on this claim as well.

## CONCLUSION

Defendant's motion for summary judgment on all claims is GRANTED.

Dated: New York, New York

October 12, 2007

SO ORDERED:

George B. Daniels

GEORGE B. DANIELS

United States District Judge