1 of 1 DOCUMENT


Caution
As of: Apr 28, 2008

**DEBBIE PERSAUD, Plaintiff, -v- S. AXELROD COMPANY, and DOUGLAS PARKS, Defendants.**

**95 Civ. 7849(RPP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1996 U.S. Dist. LEXIS 160; 69 Fair Empl. Prac. Cas. (BNA) 1371; 67 Empl. Prac. Dec. (CCH) P43,856*

**January 4, 1996, Dated
January 10, 1996, FILED**

**COUNSEL:** [*1] APPEARANCES:

For Plaintiff: Law Office of Allegra L. Fishel, New York, New York, By: Allegra L. Fishel, Esq.

For S. Axelrod Company, Defendant: Davis & Gilbert, New York, New York, By: Howard J. Rubin, Esq., Jeffrey D. Pollack, Esq.

For Douglas Parks, Defendant: Newman Tannenbaum Helpern Syracuse & Hirschtritt, New York, New York, By: Yolanda Kanes, Esq.

**JUDGES:** Robert P. Patterson, Jr., U.S.D.J.

**OPINION BY:** Robert P. Patterson, Jr.

**OPINION**

OPINION AND ORDER

ROBERT P. PATTERSON, JR., U.S.D.J.

Defendants, Douglas Parks ("Parks") and S. Axelrod Company ("Axelrod") move to dismiss certain causes of action in a complaint filed by plaintiff, Debbie Persaud ("Persaud") on September 13, 1995. The complaint consists of eight claims: (1) hostile work environment; (2) retaliatory discharge; (3) retaliation; (4) sex discrimination; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) negligent retention; and (8) negligent supervision.

Defendant Parks moves to dismiss plaintiff's complaint pursuant to *Rules 12(b)(1), 12(b)(6)* and *12(f) of the Federal Rules of Civil Procedure*. Defendant Axelrod moves pursuant to *Rules 12(b)(1), 12(b)(6)* [*2] and *12(f) of the Federal Rules of Civil Procedure* to dismiss plaintiff's fifth, sixth, seventh, and eighth causes of action against it. [1]

    1  In defendants' reply papers and at oral argument Axelrod and Parks argued that plaintiff's first, second, third and fourth causes of action should be dismissed to the extent that they claim violations of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (NYCHRL) on the ground that plaintiff violated § 8-502(c) of the New York City Administrative Code by failing to serve both the City Commission on Human Rights ("City Commission") and the New York City Corporation Counsel ("Corporation Counsel") with a copy of the complaint prior to initiating this action. At the oral argument, the Court denied defendants' motion to dismiss plaintiff's NYCHRL claims. *See Bernstein, M.D. v. 1995 Associates, 630 N.Y.S.2d 68, 72 (App. Div. 1st Dept. 1995)* (the language of § 8-502(c) was designed not to create a condition precedent, but to serve as a device by which the [City Commission] and the [Corporation Coun-

Case 1:07-cv-06418-CM-RLE   Document 24-5   Filed 04/28/2008   Page 2 of 5

Page 2

1996 U.S. Dist. LEXIS 160, *; 69 Fair Empl. Prac. Cas. (BNA) 1371;
67 Empl. Prac. Dec. (CCH) P43,856

sel] would be apprised of any actions commenced under Title 8).

[*3] For the following reasons, Parks' motion is granted in part and denied in part and Axelrod's motion is granted.

## BACKGROUND

From August 8, 1989 to September 15, 1992, Debbie Persaud was employed as an administrative assistant by Axelrod, a family-run company doing business in New York. (Complaint filed September 13, 1995 ("Complaint") PP 9-13.) Throughout Persaud's employment, Harvey Axelrod was president of the company, Ida Axelrod was vice-president, and Michael Axelrod was treasurer. (Id. PP 11-13.)

During Persaud's employment, Parks worked in Axelrod's shipping department, which consisted of approximately fifteen to twenty male employees. Parks' work station was located on the same hallway as the sales and administrative office in which Persaud worked.[2] (Id. PP 15, 17.) In order to use the ladies room or the water cooler, Persaud had to pass Parks' work station. (Id. P 20.)

> 2   Ida Axelrod, and Michael Axelrod also worked in the sales and administrative office located on the second floor at 7 West 30th Street in New York City. Harvey Axelrod's office was entered through the sales and administrative office. (Complaint P 15.)

[*4] Persaud alleges that from the summer of 1990 until September, 1992 Parks continually asked her out on dates and made comments about her physical appearance. On numerous occasions Parks touched her hair and clothes, and grabbed her waist. (Id. PP 22-24.) Persaud consistently discouraged Parks' advances by refusing to date him, ignoring his comments or asking him not to make them, pulling away from him, and telling him not to touch her. (Id.) Plaintiff contends that other employees in the shipping department made comments about her appearance and implied that Parks and Persaud were involved in a sexual relationship. (Id. P 26.)

Persaud alleges that her direct supervisor, Stephen Taylor ("Taylor"), and the director of the shipping department, Tyrone Gaynor ("Gaynor"), knew about Parks' actions toward her (Id. P 28) and about the comments of the men in the shipping department (Id. P 26), but did not make an effort to stop this behavior. Plaintiff further asserts that Harvey, Ida, and Michael Axelrod were aware of Parks' actions (Id. P 29), but made no attempt to curtail his behavior (Id. P 46).

Persaud alleges that after a time Parks became angry with her and acted in a "hostile and [*5] aggressive manner" when she refused to date him or to submit to his sexual overtures. (Id. P 31.) Plaintiff's complaint describes two specific incidents in which Parks' actions became "violent and threatening." (Id. P 32.) First, Persaud alleges that in or about October 1991, as she was leaving the ladies room, Parks confronted her with a knife in his hand. (Id. P 33.) Parks waved his knife back and forth close to Persaud's face and neck while trying to push Persaud into the ladies room. He screamed at her for refusing to go out with him and accused her of sleeping with other men in the office. (Id.) During this encounter Persaud was afraid that Parks would push her into the bathroom and either sexually assault her or kill her. (Id. P 34.)

On the same day, Persaud complained to Michael Axelrod and discussed the incident with Ida Axelrod. (Id. PP 36-38.) The next day, Michael and Harvey Axelrod allegedly told Persaud that Parks was a "good worker and had a problem with alcohol" and said that they felt "sorry for him." (Id. P 40.) Parks was not dismissed from Axelrod following this incident. (Id. P 41.) After this incident, Persaud was "frightened and distraught" at work every day. [*6] [3] (Id. P 42.)

> 3   Persaud alleges that after this incident, she was "terrified to leave work on any occasion when Parks might be leaving the office at the same time she did" and that on several occasion Parks followed her on the street and into department stores. (Id. P 44.)

The second incident allegedly took place in approximately February 1992. According to the complaint, Parks pushed Persaud against the wall near the water cooler and yelled obscenities at her. (Id. P 49.) Persaud maintains that Harvey Axelrod knew about the incident and suggested that she avoid Parks (Id. P 52); Michael Axelrod told her that Parks was "harmless" and that "it was probably just love" (Id. P 54); and Ida Axelrod called her a "troublemaker" (Id. P 55). After this incident, "Persaud dreaded going to work and felt degraded, fearful, anxious and helpless on a daily basis." (Id. P 60.)

At a September 10, 1992 staff meeting Persaud learned that two Axelrod employees were fired because of their alleged involvement in the theft of [*7] company property. (Id. P 61.) On September 11, 1992, Parks approached Persaud, asked her if she knew "what was going on in the back," and then asked her to go out with him. (Id. P 62.) When Persaud demanded that Parks leave her alone, Parks yelled an obscenity at her and told her that she would "regret this." (Id. PP 63-64.)

Case 1:07-cv-06418-CM-RLE    Document 24-5    Filed 04/28/2008    Page 3 of 5

Page 3

1996 U.S. Dist. LEXIS 160, *; 69 Fair Empl. Prac. Cas. (BNA) 1371;
67 Empl. Prac. Dec. (CCH) P43,856

On September 15, 1992, plaintiff was terminated by Axelrod. (*Id. P 68.*) Harvey Axelrod told Persaud that she was terminated because someone had told him that Persaud had failed to report information about the alleged theft. (Id. PP 66, 68.)

DISCUSSION

*I. Plaintiffs' First, Second, Third, and Fourth Cause of Action*

Plaintiff's first four causes of action allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (Title VII), the New York State Human Rights Law, N.Y. Exec. Law, Art. 15, *§ 290 et seq.* (NYHRL), and the NYCHRL. Plaintiff claims: 1) both defendants discriminated against her "through the creation and perpetuation of a sexually charged hostile work environment" (*Id. P 75*); 2) Axelrod terminated plaintiff in retaliation for complaining about sexual harassment perpetrated by Parks (*Id. P 79*); 3) [*8] Axelrod terminated her on the basis of unsubstantiated representations in retaliation for plaintiff's complaints about ongoing sexual harassment (*Id. P 82*); and 4) Axelrod terminated Persaud on the basis of sex (*Id. P 87*). [4] [5]

> 4   Defendant Axelrod has not moved to dismiss plaintiff's claims under Title VII or the NYHRL.
>
> Plaintiff does not oppose the dismissal of her Title VII claims against Parks individually in recognition of the lack of individual liability under Title VII. *See Tomka v. Seiler Corporation, 66 F.3d 1295, 1313 (2d Cir. 1995).* (Plaintiff's Memorandum of Law in Opposition to Parks' Motion to Dismiss ("Pl.'s Mem. Oppn. Parks") p.4.)
>
> 5   Plaintiff alleges that she complied with the administrative prerequisites of Title VII by filing a charge of discrimination on the basis of sex with the Equal Employment Opportunity Commission ("EEOC") in a timely manner. (Complaint P 8.) On August 8, 1995, she received a Determination/Right to Sue Letter with respect to the sexual harassment claim, and on August 9, 1995 she received a Determination/Right to Sue Letter with respect to her termination/retaliation claim. (Id.)

[*9] Defendant Parks moves to dismiss plaintiff's first four causes of action which allege violations of the NYHRL on the grounds that there is no individual liability under the NYHRL. [6] Section 296 of the NYHRL states in pertinent part:

> It shall be an unlawful discriminatory practice: for an employer...because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual...to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

*N.Y. Exec. Law § 296(1)(a).*

> 6   The second, third, and fourth causes of action do not seek relief against Parks.

This language does not provide that employees are individually liable for acts of discrimination. Indeed an employer is defined under *§ 292(5)* of the NYHRL as having four or more employees in his employ. *N.Y. Exec. Law § 292(5).*

In a per curiam opinion the New York Court of Appeals has held that an employee is "not [*10] individually subject to suit with respect to discrimination based on...sex under New York's Human Rights Law...if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank, 63 N.Y.2d 541, 543, 473 N.E.2d 11, 12, 483 N.Y.S.2d 659, 660 (N.Y. 1984).* Parks did not have any ownership interest in Axelrod and did not exercise any supervisory power over Persaud. (Affidavit of Douglas Parks dated November 7, 1995 ("Parks Aff.") PP 3-4.)

Plaintiff's claims against Parks, however, are based on his actual participation in the conduct giving rise to the discrimination claims under the NYHRL, and therefore it is not necessary to show that he had any supervisory control over her or that he had any ownership interest in Axelrod. Section 296(6) of the NYHRL states "it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYHRL], or attempt to do so." [7]

> 7   Section 292(1) of the NYHRL defines "person" as "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers." *N.Y. Exec. Law § 292(1).*

[*11] In *Tomka v. Seiler Corporation, 66 F.3d 1295 (2d Cir. 1995),* the Second Circuit held that *§ 296(6)* of the NYHRL permitted the plaintiff to maintain claims against an individual defendant for violations of the NYHRL if the individual defendant participated in the conduct giving rise to the discrimination claim. *Tomka, 66 F.3d at 1317. See also Poulsen v. City of*

Case 1:07-cv-06418-CM-RLE    Document 24-5    Filed 04/28/2008    Page 4 of 5

Page 4

1996 U.S. Dist. LEXIS 160, *; 69 Fair Empl. Prac. Cas. (BNA) 1371;
67 Empl. Prac. Dec. (CCH) P43,856

*North Tonawanda, N.Y., 811 F. Supp. 884, 900 (W.D.N.Y. 1993)* (defendant who held a "quasi-supervisory" position within Police Department, had higher rank than plaintiff, and was actual perpetrator of the hostile work environment could be held liable under NYHRL); *Bridges v. Eastman Kodak Company, 800 F. Supp. 1172, 1181 (S.D.N.Y. 1992)* (motion to dismiss NYHRL claims against individual employee denied since the relationship between defendants and plaintiff was unclear); *Wanamaker v. Columbian Rope Co., 740 F. Supp. 127 (N.D.N.Y. 1990)* (summary judgment on NYHRL claims denied to defendants who allegedly had power and authority to terminate plaintiff). Accordingly, Parks' motion to dismiss the first cause of action in so far as it claims violations of the NYHRL is denied.

*II. Plaintiff's Fifth Cause* [*12] *of Action*

Plaintiff's fifth cause of action alleges that Parks and Axelrod intentionally caused Persaud extreme emotional distress (Complaint, PP 90, 96). The tort of intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Company, Inc., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350, 353 (N.Y. 1993)*.

In order to survive a motion to dismiss, plaintiff's allegations against both Axelrod and Parks must satisfy the rule set out in the Restatement (Second) of Torts and adopted by the New York Court of Appeals which states that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Murphy v. American Home Products Corporation, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232, 236 (N.Y. 1983) quoting Fischer v. Maloney, 43 N.Y.2d 553, 557, 373 N.E.2d 1215, 1217, 402 N.Y.S.2d 991,* [*13] *992-993 (N.Y. 1978)*. This standard is strict, and liability will result only from conduct which is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Murphy, 461 N.Y.S.2d at 236*.

Persaud's allegations against Axelrod do not show that Axelrod engaged in conduct so outrageous in character and extreme in degree as to go beyond all possible bounds of decency to intentionally inflict severe emotional distress on plaintiff. Therefore, her claim against Axelrod for the intentional infliction of emotional distress is dismissed.

With regards to Parks, Persaud's complaint does allege each of the four elements of the tort. Persaud's allegations describe conduct which is both outrageous and extreme. *(See e.g.* Complaint PP 33, 49.) Although the complaint does not allege directly that Parks' conduct was motivated by an intent to cause Persaud emotional distress, the actions alleged, particularly the assaults, give rise to a clear inference the they were intended to cause severe emotional distress. Allegations of facts giving rise to a strong inference of [*14] bad intent are sufficient to survive a motion to dismiss. *Ouaknine v. MacFarlane, 897 F.2d 75, 79-80 (2nd Cir. 1990)* (citations omitted). [8] Therefore, Parks' motion to dismiss plaintiff's fifth cause of action is denied.

> 8   Of course whether Parks in fact intended to cause plaintiff severe emotional distress is a question of fact for the jury.

*III. Plaintiff's Sixth Cause of Action*

Plaintiff's sixth cause of action alleges that Axelrod's failure to take any action to prevent Parks' ongoing sexual harassment constituted negligent infliction of emotional distress. (Complaint PP 98-100.) "A cause of action for negligent infliction of emotional distress arises only in unique circumstances, when a defendant owes a special duty only to plaintiff...or where there is proof of a traumatic event that caused the plaintiff to fear for her own safety." *Cucchi v. New York City Off-Track Betting Corp., 818 F. Supp. 647, 656 (S.D.N.Y. 1993)* (citations omitted).

Although it is not alleged that Parks owed [*15] a special duty only to plaintiff, the complaint does allege at least one traumatic event, the encounter with Parks outside the ladies room in October 1991 (Complaint P 33), which caused her to fear for her physical safety (*Id.* P 34). *See Ford v. Village Imports, Ltd., 92 A.D.2d 717, 461 N.Y.S.2d 108 (App. Div. 4th Dept. 1983)*. For this reason, Parks' motion to dismiss plaintiff's sixth cause of action is denied.

Axelrod asserts that Persaud's claim for negligent infliction of emotional distress against it must take into account that "in New York recovery for accidental injuries arising out of and in the course of employment, including injuries caused by an employer's negligence, is governed by the Workers' Compensation Law." *O'Brien v. King World Productions, Inc., 669 F. Supp. 639, 641 (S.D.N.Y. 1987)*. [9] If recovery is available under the Workers' Compensation Law, this recovery will be plaintiff's exclusive remedy against her employer and she will not be able to bring other common law tort claims against employer. *N.Y. Work. Comp. Law § 11*. The bar against other remedies does not apply however, if the tort alleged was committed by the employer intentionally or "perpetrated [*16] at the employer's direction or instigation." *Thompson v. Maimonides Medical Center, 86*

Case 1:07-cv-06418-CM-RLE   Document 24-5   Filed 04/28/2008   Page 5 of 5

Page 5

1996 U.S. Dist. LEXIS 160, *; 69 Fair Empl. Prac. Cas. (BNA) 1371;
67 Empl. Prac. Dec. (CCH) P43,856

*A.D.2d 867, 868, 447 N.Y.S.2d 308, 310 (App. Div. 2d Dept. 1982).*

> 9   Under New York's Worker's Compensation scheme, "psychological or nervous injury precipitated by psychic trauma is compensable to the same extent as physical injury." *Wolfe v. Sibley, Lindsay & Curr Co.,* 36 N.Y.2d 505, 510, 330 N.E.2d 603, 606, 369 N.Y.S.2d 637, 641 (N.Y. 1975). Plaintiff's allegations include psychological injuries. *See e.g.* Complaint PP 27, 42, 44, 48, 60.

Although Persaud alleges that her direct supervisor, along with Michael, Harvey, and Ida Axelrod, failed to stop Parks' conduct (Complaint P 59), she does not allege that Axelrod directed or instigated Parks' actions. Accordingly, the emotional distress allegedly caused by her employer's negligence is covered by the Workers' Compensation Law which provides her exclusive remedy. Axelrod's motion to dismiss Persaud's sixth cause of action is granted.

*IV. Plaintiff's Seventh* [*17]  *and Eighth Cause of Action*

Plaintiff's seventh cause of action alleges that Axelrod's continued retention of Parks after it was on notice of Parks' "pervasive pattern of sexual harassment" constituted the tort of negligent retention. (Complaint P 104.) Her eighth cause of action alleges that Axelrod's "failure to reasonably supervise Parks" constitutes the tort of negligent supervision *(Id. PP 109-110).* [10]

> 10   Plaintiff's claims for negligent retention and negligent supervision pertain only to defendant Axelrod. Plaintiff does not object to the dismissal of the seventh and eighth causes of action against defendant Parks. (Pl.'s Mem. Oppn. Parks p. 8.)

For the reasons articulated in the discussion of Persaud's sixth cause of action against Axelrod, plaintiff's exclusive remedy for her claims of negligence is provided by New York's Workers' Compensation Law. Accordingly, her sixth and seventh causes of action against Axelrod are dismissed.

*CONCLUSION*

Defendant Axelrod's motion to dismiss plaintiff's [*18] fifth, sixth, seventh and eighth causes of action is granted. Defendant Parks' motion to dismiss is granted as to plaintiff's first four causes of action in so far as they are based on violations of Title VII and as to plaintiff's seventh and eighth causes of action. Parks' motion to dismiss plaintiff's first, fifth, and sixth causes of action is denied.

IT IS SO ORDERED.

Dated: New York, New York

January 4, 1996

Robert P. Patterson, Jr.

U.S.D.J.