LEXSEE 2004 US DIST LEXIS 9467


Cited
As of: Apr 28, 2008

**Michael Lewittes, Plaintiff, -against- Jamie Cohen, Joshua Blume, and Marilyn Blume, Defendants.**

**03 Civ. 189 (CSH)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2004 U.S. Dist. LEXIS 9467*

**May 24, 2004, Decided
May 26, 2004, Filed**

**DISPOSITION:** [*1] Plaintiff's motion to file third amended complaint granted. Defendants' motion to dismiss granted in part and denied in part.

**COUNSEL:** For Michael Lewittes, Plaintiff: Christopher Louis Deininger, LEAD ATTORNEY, Michael S. Bunn, Esq., P.C., Morristown, NJ.

For Michael Lewittes, Plaintiff: Robert L. Tucker, LEAD ATTORNEY, Tucker & Latifi, L.L.P., New York, NY.

For Jamie Cohen, Joshua Blume, Marilyn Blume, Defendants: Hilary B. Miller, LEAD ATTORNEY, Law Office of Hilary B. Miller, Greenwich, CT.

**JUDGES:** CHARLES S. HAIGHT, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CHARLES S. HAIGHT, JR.

**OPINION**

MEMORANDUM OPINION AND ORDER

Haight, Senior United States District Judge:

Defendants bring this motion seeking dismissal of the complaint for failure to state a claim upon which relief can be granted, pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. For the purposes of a *Rule 12(b)(6)* motion, all well-pleaded factual allegations contained in the complaint must be treated as true by the Court, *Cohen v. Koenig, 25 F.3d 1168, 1172* [*2] *(2d Cir, 1994)*, and all reasonable inferences must be made in the plaintiff's favor. *Gant v. Wallingford Board of Education, 69 F.3d 669, 673 (2d Cir. 1995)*. The Court must not dismiss the action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conely v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); Frasier v. G.E. Co., 930 F.2d 1004, 1007 (2d Cir. 1991)*. However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss," 2 *Moore's Federal Practice* § 12.34[1][b] (3d ed. 2001); *Electronics Communications Corp. v. Toshiba America Consumer Products, Inc., 129 F.3d 240, 243 (2d Cir. 1997)*.

In accordance with this well-established legal standard, the Court will accept as true, for the purposes of this motion, the account of the facts presented in plaintiff's Third Amended Complaint.

For reasons set forth below, defendants' motion is granted in-part and denied in-part.

BACKGROUND

According to the Third Amended Complaint (the "Complaint"), plaintiff, Michael Lewittes, [*3] is a journalist and editor who specializes in celebrity reporting, a screenwriter, and a commentator who frequently appears on national television programs. Defendant Marilyn Blume, formerly known as Marilyn Lewittes, was once married to plaintiff's brother, David Lewittes. Defendant Joshua Blume, also known as Jamie Cohen, is Marilyn

Case 1:07-cv-06418-CM-RLE   Document 26-2   Filed 04/28/2008   Page 2 of 7

Page 2
2004 U.S. Dist. LEXIS 9467, *

Blume's brother. In March 2000, Marilyn Blume was in the midst of divorce proceedings against David Lewittes, who is not a party to the present action.

On or about March 30, 2000, Marilyn Blume, with the aid and support of Joshua Blume, registered the domain named "www.lewittes.com" and created a website lodged at that location.[1] When accessed, one incarnation[2] of this website promised to provide details, including documents and subjective accounts, relating to the divorce proceedings involving Marilyn Blume and David Lewittes. While the website was, apparently, never completed, one page that was available at the site featured a title in bold and large font text reading "the story will be told," accompanied by a statement in smaller font reading "ask the doorman ... and that closeted editor of a certain paper" (ellipsis in original). In addition, [*4] this same page displayed a statement reading "soon to be a major motion picture ..." (ellipsis in original). The page also contained links labeled "women," "jewish," and "and one more," none if which, it seems, was active. A later version of the site,[3] created on or about June 24, 2002, claimed, simply, that the site was "currently under development," invited "comments," and incorporated links labeled "cnn," "nyl," and "post."

> 1  This opinion assumes a basic familiarity with the workings of the internet. Judge Calabresi provides a lucid and succinct lesson on internet parlance and function in *Sporty's Farm v. Sportsman's Market*, 202 F.3d 489, 492-493 (2d Cir., 2000) that has become a serviceable standard in this Circuit.
> 2  This version of the website is documented in Exhibit 1 attached to the Third Amended Complaint.
> 3  This version of the website is documented in Exhibit 2 attached to the Third Amended Complaint. According to the Third Amended Complaint, this version of the website was activated by "mid-June, 2002." Complaint at para. 21.

[*5] In mid-June 2002, plaintiff made inquiries at Register.com, a registrar of domain names, to ascertain who had registered the domain "www.lewittes.com." At that time, the registration information on-file with Register.com did not contain accurate or reliable contact information for either Joshua Blume or Marilyn Blume.[4]

> 4  This omission was corrected on or about February 7, 2003 when "Marilyn Lewittes" was named as the registering party for www.Lewittes.com.

The original complaint in this case, making claims for unfair competition, dilution, and trademark infringement, was filed against John Doe and Jane Doe on January 9, 2003. A First Amended Complaint, making identical claims, was filed on January 27, 2003, naming Jamie Cohen as the sole defendant. A Second Amended Complaint, based on the same claims, was filed and served on February 6, 2003, naming Jamie Cohen and Joshua Blume as defendants.

After the Second Amended Complaint was filed, plaintiff's counsel interviewed Joshua Blume and confirmed that Jamie [*6] Cohen is a pseudonym used by Joshua Blume, a fact that defendants acknowledge. Counsel was also informed by Joshua Blume that he constructed the website at the request and direction of Marilyn Blume. Based on this information, plaintiff filed and served a Third Amended Complaint on October 2, 2003, adding counts for defamation and naming Jamie Cohen, Joshua Blume, and Marilyn Blume as defendants.

DISCUSSION

Leave to file Amended Complaint

The Court will address first plaintiff's application to file his Third Amended Complaint *nunc pro tunc*. *Federal Rule of Civil Procedure 15(a)* provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." As is indicated by the title "Third Amended Complaint," Plaintiff exercised his one free amendment prior to the present proposed amendment. Therefore, despite the fact that the Third Amended Complaint was filed and served before defendants filed their Answer, the amendments therein can be made only "by leave of court or by written consent of the adverse party." *Fed. R. Civ. P. 15(a)* [*7] .

Defendants oppose the motion to amend. Consistent with this position, no written consent to the amendment has been provided to the Court. It falls, then, on plaintiff to move the Court for permission to amend. Plaintiff has so moved. The Court is directed that leave to file amendments "shall be freely given when justice so requires." *Fed. R. Civ. P. 15(a)*.

The Court takes note of four critical facts in evaluating the motion to *amend*. *First*, the proposed amendments serve, primarily, to add Joshua Blume and Marilyn Blume as named defendants, as final replacements of the originally named John and Jane Doe, and to add a claim for defamation. Second, defendants acknowledge that the additions made by the Third Amended Complaint "relate back" to the original complaint. Defendants' Reply Memorandum (the "Reply") at 6, note 4. Third, and consistent with this position, defendants' Answer, filed on December 1, 2003, responds directly to the Third Amended Complaint. Fourth, defendants' current motion is to dismiss the Third Amended Complaint.

From these facts it is clear that the Third Amended Complaint provides the most complete and current account [*8] of the factual allegations, claims, and parties involved in this case. Also significant, given the premium put on efficiency and justice in this context, the Third Amended Complaint provides the entire stage-setting for all present activity of the parties. In these circumstances, plaintiff's motion for leave to file the Third Amended Complaint *nunc pro tunc* is appropriate and is granted in the interests of clarity, consistency, and justice.

Defamation

Plaintiff's first and second causes of action in the Complaint are for defamation and for punitive damages arising from the alleged defamation, respectively. Defendant's contend that these claims should be dismissed as time-barred. The Court agrees.

"There are three critical elements to any statute of limitations analysis: the duration of the limitation, the date on which time begins to run, and the date, if any, on which the clock was stopped." *Zoll v. Ruder Finn, Inc.*, 2004 U.S. Dist. LEXIS 144, No. 02 Civ. 3652, 2004 WL 42260 (S.D.N.Y., Jan. 7, 2004). The statute of limitations for defamation claims in New York is one year. *N.Y. CPLR § 215(3)*. According to the Complaint, the offending website was created on March 30, 2000. Complaint [*9] at para. 13. Therefore, the statutory deadline for all defamation claims based on materials originally published on the website was March 30, 2001. All claims filed on March 31, 2001 or later would be time-barred.

Plaintiff's claims for defamation were first added to his cause of action by the Third Amended Complaint, filed on October 2, 2003. Plaintiff contends, and defendants accept, that these amendments relate back to the original complaint, which was filed on January 9, 2003. Both dates are well past the March 30, 2001 deadline for plaintiff's defamation claims. Thus, they appear to be time-barred.

In his Response, plaintiff argues that the defamatory statements alleged in the Complaint may have been added or altered within the year counting back from January 9, 2003. Response at 6. While this may be the case, the Complaint does not so allege and, pursuant to the rules of engagement on a motion to dismiss, the Court will not speculate about facts not well-pleaded in the Complaint.

Plaintiff also argues that defendants are estopped from raising a statute of limitations defense because they did not maintain accurate identifying information with Register.com, the organization [*10] through which defendants registered "Lewittes.com." While fraud, misrepresentation, and deception on the part of a defendant that prevent a plaintiff from commencing a timely action can provide a basis for estopping a statute of limitations defense, there is no evidence that defendants' omissions in this case delayed commencement of the present action. Plaintiff stopped the clock with his first complaint, which identified as defendants John and Jane Doe. While defendants may be to blame for the original complaint being directed against the Does, plaintiff is solely responsible for when it was filed and consequently when the clock was stopped. Plaintiff's first and second causes of action are, for these reasons, [5] dismissed without prejudice. [6]

   5   The sole basis for plaintiff's defamation claim is that defendants allegedly implied that plaintiff "is a homosexual, which he is not." Complaint at paras. 19, 28. While the ultimate finding of defamation is solely within the purview of the finder of fact, it is up to a court to make a threshold finding that the alleged statement "is reasonably susceptible to the defamatory meaning imputed to it." *Levin v. McPhee*, 119 F.3d 189, 195 (2d. Cir., 1997). Plaintiff's alleged reference to "that closeted editor of a certain paper" certainly passes this threshold test insofar as it may reasonably be found to imply that plaintiff is gay. It does not necessarily follow from this, however, that an implication of homosexuality is defamatory.

   Courts in this District and in this State have held that an imputation of homosexuality is defamatory *per se*. See e.g. *Murphy v. Pizarrio*, 1995 U.S. Dist. LEXIS 13920, No. 94 Civ. 0471, WL 565990 at *3 (S.D.N.Y., Sept. 22, 1995) (citing *Dally v. Orange County Publications*, 117 A.D.2d 577, 578, 497 N.Y.S.2d 947 (2d Dep't 1986)); *Nacinovich v. Tullet & Tokyo Forex, Inc.*, 257 A.D.2d 523, 524, 685 N.Y.S.2d 17 (1st Dep't 1999). Given welcome shifts in social perceptions of homosexuality, however, there is good reason to question the reliability of these precedents. See e.g. Eric K.M. Yatar, *Defamation, Privacy, and the Changing Social Status of Homosexuality: Re-Thinking Supreme Court Gay Rights Jurisprudence*, 12 LAW & SEX. 119 (2003); Rachel M. Wrightson, Notes and Comments: *Gray Cloud Obscures the Rainbow: Why Homosexuality as Defamation Contradicts New Jersey Public Policy to Combat Homphobia and Promote Equal Protection*, 10 J.L. & POL'Y 635 (2002); Patrice S. Arend, *Defamation in an Age of Political Correctness: Should a False Public Statement that a Person is Gay be Defamatory?*, 18 N. ILL. U. L. REV. 99 (1997).

While these are intriguing issues, the Court need not engage them today. Plaintiff's defamation claims are time-barred. The Court raises these additional issues in passing solely because the dismissal is without prejudice, leaving open the possibility that these claims may surface again in this case.

[*11]

6 In dismissing this cause of action, the Court recognizes that "it is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 91 (2d. Cir, 2003). In the present case, further investigation may allow plaintiff to make good faith allegations of fact that will bring his cause of action for defamation within the one-year statute of limitations and, based upon these facts, seek to reassert this cause of action. Dismissal without prejudice avoids premature foreclosure of such an action.

Lanham Act Claim

Plaintiff's third cause of action is for unfair competition under *15 U.S.C. § 1125*. To prevail on this Lanham Act claim, plaintiff must show that he has a mark entitled to protection, that defendants used the mark, and that the defendants' use of the mark is likely to cause confusion. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir., 2000); *15 U.S.C. § 1125* [*12] *(a)(1)(A)*. In addition, Plaintiff must show that the alleged use of his mark was "in connection with any goods or services" and in the course of "commerce." *15 U.S.C. § 1125(a)(1)*. Any "noncommercial use of a mark" is not actionable under the Lanham Act. *15 U.S.C. § 1125(c)(4)(B)*.

Plaintiff has applied for trademark protection of "Michael Lewittes." Complaint at para. 4. Plaintiff has not reported either success or failure of this application, but registration of a trademark is not critical to a Lanham Act claim. *See L.& J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258, 262 (2d Cir. 1996). What is critical is a demonstration that the mark is sufficiently strong to be entitled to protection and that there is a likelihood of confusion between uses of the mark made by plaintiff and defendants. *Id.* Both analyses are highly factual in nature. *See Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir., 1961) (setting forth the now familiar, non-exclusive factors to be considered in determining likelihood of confusion: (1) strength of the plaintiff's mark; (2) the degree of [*13] similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; (6) the defendants' good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers).

Defendants claim that there is no likelihood of confusion and that plaintiff's claims are self-defeating. Specifically, defendants contend that plaintiff's allegations of defamation and confusion logically contradict themselves, since no reasonable person would conclude that plaintiff defamed himself by use of his own website. Motion at 13, 14. Defendants further claim that "www.lewittes.com" was not used in the course of commerce or in connection with any goods or services. Motion at 9-12.

In response, plaintiff, alleges that "Michael Lewittes" is a unique mark that, in addition to being plaintiff's name, has gained a distinctive secondary commercial meaning through his work as a celebrity journalist, editor, and screenwriter, Complaint at paras. 4-7, and has come to be "clearly identified in public mind with plaintiff." *Id.* at para. 16.

Plaintiff also alleges that the website lodged at [*14] "www.lewittes.com" contains promises to tell an entertaining story and references to a forthcoming "major motion picture." Complaint at paras. 14-16. From these facts, Plaintiff argues that one could reasonably conclude that defendants use of "www.lewittes.com" was, in part, driven by a commercial intent to "entertain" and to promote a "major motion picture." Response at 18. Plaintiff also claims that the proximity of these promises to his professional and commercial life is likely to cause confusion in the form of false attribution of "www.lewittes.com" and its content to plaintiff. Complaint at paras. 33-35. In addition, plaintiff claims that screen writing and production and promotion of screenplays and movies on "www.lewittes.com" is in direct competition with his own commercial enterprises in these fields. Trading on such a confusion and use of plaintiff's commercial reputation as a screenwriter to market defendants' proposed movie project would, plaintiff claims, violate his rights under the Lanham Act.

Defendants assert that the phrase "soon to be a major motion picture" found on www.lewittes.com is merely a literary device, and that it does not connect their use of "www.lewittes. [*15] com" with the sale of any goods or services. Reply at 7.

These exchanges present the Court with a number of critical factual disputes. In the present context and without the benefit of any record of discovery, these disputes must be resolved in favor of plaintiff. Giving plaintiff the benefits he is owed at this stage says nothing of his ability to develop any actual evidence sufficient to create a genuine issue of fact or to prove his case at later stages.

Case 1:07-cv-06418-CM-RLE   Document 26-2   Filed 04/28/2008   Page 5 of 7

Page 5
2004 U.S. Dist. LEXIS 9467, *

It simply reflects placement of burdens and presumptions on motions to dismiss.

With the full benefit accorded to him at this stage of litigation, facts alleged by plaintiff in the complaint construct a picture of events in which defendants created their website, at least in part, to sell or otherwise market the story of a divorce and to use a confused association with plaintiff's name and fame to advance that purpose. Plaintiff has, on this basis, met his burden to plead facts sufficient to make out an unfair competition claim under the Lanham Act. *See e.g. Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 215 (2d Cir. 2003)* (denying a motion for summary judgment where a factual dispute existed with respect [*16] to one of the Polaroid factors).

The motion to dismiss plaintiff's third claim is denied.[7]

[7] Defendants rely heavily on *Bihari v. Gross, 119 F. Supp. 2d 309 (S.D.N.Y., 2000)* in their papers. While Judge Scheindlin's decision in that case provides a useful guide for understanding the law in this area, it is importantly distinguishable on the basis of procedural posture. The motion before Judge Scheindlin was for a preliminary injunction. The standard applied on a motion for injunctive relief, which is likelihood of success on the merits, allows for far more analytical engagement on the facts than is appropriate in a motion for dismissal under *Rule 12(b)(6)*.

Claim for Dilution

Plaintiff's fourth cause of action is for dilution of "Michael Lewittes" in violation of *15 U.S.C. § 1125(c)*. In their Motion, defendants rightly cite *Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208 (2d Cir., 1999)*, pointing out that plaintiff must meet five burdens on [*17] his dilution claim. Specifically, plaintiff must show that his mark, "Michael Lewittes," is famous, that it is distinctive, that defendants' use of "www.lewittes.com" is a commercial use, that this use commenced after "Michael Lewittes" became famous, and that this use diluted the distinctive qualities of "Michael Lewittes." In moving for dismissal, defendants contend that, the surname "Lewittes" is not sufficiently distinctive to sustain a claim for dilution. Motion at 15. Defendants also contend that, though plaintiff may be famous, "Michael Lewittes," as a trademark, is not sufficiently famous to meet the legal requirements for a dilution claim. Motion at 15. Finally, defendants assert that "lewittes," as used in "www.lewittes.com," is not a commercial use.

*15 U.S.C. § 1125(c)* provides only equitable relief and only for owners of famous marks. *See 15 U.S.C. § 1125(c)(1) and(2)*. According to the Second Circuit, a "mark[] would qualify as 'famous' only if [it] carried a substantial degree of fame," *TCPIP Holding Co. v. Haar Communs., Inc., 244 F.3d 88, 99 (2d Cir., 2001)*. In that case, the principal considerations [*18] relevant to determining "substantial" fame were duration, geography, and demography. *Id.* ("It seems most unlikely that Congress intended to confer on marks that have enjoyed only brief fame in a small part of the country, or among a small segment of the population, the power to enjoin all other users throughout the nation in all realms of commerce.").

In the Complaint, plaintiff alleges that he has used "Michael Lewittes" as his service mark since 1989, that he has "achieved nationwide recognition and respect," aided, in part, by numerous television appearances on widely broadcast television programs, and that his success is bound to "his good name." Complaint at paras. 2, 6-8. These allegations are sufficient to constitute a pleading that plaintiff's service mark is "famous" within the meaning of the statute. It remains to be seen whether plaintiff can muster sufficient evidence to create a genuine issue of fact as to whether his mark is "truly prominent and renowned," *I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 46 (1st Cir. 1998)* (citations omitted), and in the same class as "DuPont, Buick, or Kodak." *191 F.3d at 214.* [*19]

The facts set forth in the complaint that address duration, geography, and demography are equally pertinent to an analysis of "distinctiveness." *See 15 U.S.C. § 1125(c)(1)(C),(D), and(F)*. Also relevant is "the nature and extent of use of the same or similar marks by third parties." *15 U.S.C. § 1125(c)(1)(G)*. In the Complaint, plaintiff asserts that he is the only person with the name "Lewittes" practicing as an "editor, writer, journalist, or media correspondent in the United States." *Id.* at para. 3. This fact, if true, taken with claims of duration, geographic coverage, and demographic impact, could support a reasonable inference that "Michael Lewittes" is both famous and a distinct mark that uniquely identifies plaintiff's professional and commercial services.

I have already held that Plaintiff has pleaded sufficient facts to support his claim that defendants used "www.Lewittes.com" for commercial purposes.

The motion to dismiss plaintiff's forth cause of action is denied.

Common Law Unfair Competition and Trademark Infringement

Defendants seek dismissal of plaintiff's cause of action for common law unfair competition [*20] and trademark infringement for two reasons. First, defendants claim that plaintiff has not alleged facts sufficient

to fulfill his burden of showing commercial competition. I have already held here that plaintiff has met his pleading burden in this regard.

Second, defendants seek protection from the *First Amendment of the United States Constitution* for what, they claim, is speech exercised to advance public discourse. This defense turns on whether or not defendants' use of "www.lewittes.com" was for commercial purposes and intentionally created confusion as to source and attribution of the stories and screenplay referred to on the site. These are, of course, critical issues that must be developed and resolved through this litigation. At this stage, it would not be appropriate for the Court to decide contested issues of fact, particularly in the absence of any record of substance. Defendants' motion to dismiss plaintiff's fifth cause of action is denied.

Cybersquatting

Plaintiff's sixth cause of action is for violations of the Anticybersquatting Consumer Protection Act (the "ACPA"), *15 U.S.C. § 1125(d)*. The ACPA was passed "to protect consumers and [*21] American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks -- a practice commonly referred to as 'cybersquatting'." *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 495 (U.S. App., 2000)* (citing S. Rep. No. 106-140, at 4.).

To establish a claim under the ACPA plaintiff must show that defendants' use of "www.lewittes.com" either dilutes a famous mark or is identical or confusingly similar to a distinctive mark, and that defendants had a bad faith intent to profit from their use of "www.lewittes.com." *15 U.S.C. § 1125(d)(1)*. Since the Court has already denied defendants's motion to dismiss claims for dilution and trademark infringement, defendants may only seek dismissal on the "bad faith" element.

The ACPA provides that bad faith intent to profit "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name [*22] was a fair use or otherwise lawful." *15 U.S.C. § 1125(d)(1)(B)(ii)*. The statute further sets forth a nonexhaustive list of factors a district court should consider in determinating whether the registrant had such an intent. These include: "(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign [*23] the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of section 43 [subsec. (c)(1) of this section]."

*15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX)*.

[*24] The ACPA, including these useful criteria, should be read in view of the legislative purpose of the Act itself, which was to respond "to concerns over the proliferation of cybersquatting - the Internet version of a land grab." *Virtual Works, Inc. v. Volkswagen of America, Inc., 238 F.3d 264, 267 (4th Cir. 2001)*. Specifically, the ACPA was designed to cover gaps in current legislation and to focus on individuals who "register well-known brand names as Internet domain names in order to extract payment from the rightful owners of the marks, register well-known marks as domain names and warehouse those marks with the hope of selling them to the highest bidder; register well-known marks to prey on

consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site; and target distinctive marks to defraud consumers, including to engage in counterfeiting activities." *Lucas Nursery v. Grosse, 359 F.3d 806, 809 (6th Cir., 2004)* (quoting S. Rep. No. 106-104 at 5-6). In short it is, as titled, a law designed to combat cybersquatting.

At the time that she registered "www.lewittes.com," defendant Barbara [*25] Blume's last name was "Lewittes." Motion at 2. There are no facts in the Complaint that support an allegation that plaintiff has his own website. Given this, it is no surprise that there are no facts to support any allegation that defendants intended to divert business from any site the plaintiff might maintain. There is no allegation in the Complaint that defendants offered to sell or transfer "www. Lewittes.com" for financial gain. There are no assertions in the Complaint that defendants "warehoused" domain names. It is alleged in the Complaint that defendants did not maintain accurate contact information on the website and with Register.com and that plaintiff has made sufficient pleadings to maintain his assertion that his mark is distinctive, but, on the whole, the allegations set forth in the Complaint do not even remotely suggest that defendants perpetrated the core activities that threaten to result in the "paradigmatic harm that the ACPA was enacted to eradicate." *Lucas Nursery v. Grosse, 359 F.3d at 810* (citations omitted).

Accordingly Plaintiff's sixth cause of action is dismissed, without prejudice to repleading if plaintiff can develop sufficient facts [*26] to support the claim.

CONCLUSION

For the foregoing reasons, the Court makes the following Order:

1. Plaintiff's motion to file his Third Amended Complaint is granted *nunc pro tunc.* Its allegations relate back to the filing of the first complaint on January 9, 2003.

2. Plaintiff's first, second, and sixth causes of action are dismissed without prejudice.

3. Defendants' motions to dismiss plaintiff's third, fourth, and fifth causes of action are denied.

4. The stay on discovery in this case imposed by this Court's Order dated March 9, 2004 is lifted. The parties are ordered to proceed with discovery in accordance with the Civil Case Management Plan stipulated to by the parties and endorsed by the Court on March 22, 2004.

Dated: May 24, 2004

CHARLES S. HAIGHT, JR

UNITED STATES DISTRICT JUDGE