Exhibit 11

# Alitalia

*Il Presidente e Amministratore Delegato*

Roma 06 marzo 2006
Prot. PRD-103/06P

Ing. Massimo Cestaro

Ing. Roberto Renon

Dr. Giancarlo Schisano

Dr. Gabriele Spazzadeschi

p.c.     Dr. Luigi Travaglione

Vi trasmetto copia delle sintesi, preparate per me dal Dr. Travaglione, delle relazioni di Audit sugli scali di Boston, New York – JFK, Newark, Washington, Chicago, Budapest e per il Processo "Facility Management con IBM".

Mi sembra che tutto denunci lo stato di degrado inqualificabile e rischioso dei suddetti scali ed il completo abbandono di nostre aree all'estero.

E' quindi opportuno un incontro con Voi per capire cosa si deve fare, sia in merito ai Processi, sia in merito alle persone, al fine di pervenire ad un grado ottimale di efficienza e di corretta gestione, come prassi in ogni azienda ben condotta.

Giancarlo Cimoli



Direzione Auditing e Sicurezza

**Comunicazione Interna**

Rif. N. A54/2006

Del ___27 febbraio 2006___

Da   L. Travaglione (DMD)

A:   Presidente

Oggetto : Relazione di Audit n. 1/2006

Trasmetto copia della Relazione di Audit n. 1/2006 – Centro Contabile di Budapest.

Il Direttore
L. Travaglione

POSTA IN ARRIVO
PRESIDENTE AMM. DELEGATO

2 8 FEB. 2006

Prot. N° ......346.........

A 00004

*Alitalia*

Direzione Auditing e Sicurezza

Scheda di Sintesi per il Presidente:

Obiettivo dell'attività di audit è stata la verifica del sistema di controllo interno a disciplina delle attività amministrativo contabili svolte, per conto di Alitalia Servizi, dalla società GSK Computer Kft. con sede in Budapest.

Riportiamo di seguito le criticità rilevate:

1. Non esiste una procedura a disciplina delle modalità e delle tempistiche di invio della documentazione di riepilogo degli incassi e dei pagamenti da parte delle periferie al Centro Contabile. Tale circostanza determina difficoltà e ritardi nell'acquisizione dei dati per le registrazioni contabili.

2. Il Centro Contabile provvede a gestire i mancati abbinamenti tra biglietti venduti e volati. Una rilevante quantità di scarti è determinata dalla mancata assegnazione a sistema delle dotazioni di biglietti da parte dei Responsabili Amministrativi (UA).

3. L'attività di predisposizione della documentazione per l'incasso delle vendite effettuate con carte di credito prevede un duplice inserimento manuale di dati con conseguente spreco di tempo e rischi di errore.

4. Una rilevante quantità di scarti generata dal sistema di Alitalia Cargo che gestisce gli stocks delle lettere di vettura, dei dati del venduto ed elabora i rendiconti per la fatturazione (C.RE.A.M.), è determinata dalla mancata assegnazione a sistema delle dotazioni da parte dei Responsabili Amministrativi (UA) e dal mancato inserimento a sistema da parte degli Addetti Commerciali Cargo (UX) delle tariffe per iniziative promozionali e/o accordi commerciali locali.

5. L'attività di contabilizzazione dei dati relativi alla promozione Alicorporate è effettuata in parte manualmente con susseguente spreco di tempo e il rischio di errori di digitazione.

6. Non esiste una procedura a disciplina delle modalità e delle tempistiche di invio dagli scali dei modelli riepilogativi del livello di utilizzo dell'accordo commerciale che vengono inseriti manualmente nel sistema per la fatturazione (MAGIC).

7. Relativamente alle attività svolte presso il Centro Contabile alla data della verifica, non è stata fornita evidenza documentale della richiesta di attività da parte di Alitalia né del relativo studio di fattibilità e conseguente offerta del fornitore. Secondo quanto a noi riferito, generalmente gli accordi per la fornitura di nuovi servizi sono stati presi verbalmente.

8. Il contratto stipulato con GSK Computer contiene delle clausole che potrebbero configurare l'esercizio di una significativa influenza di Alitalia Servizi sulla gestione del fornitore, con potenziali effetti giuridici, economici e finanziari.

9. Le attività della GSK Computer Kft. sono svolte in locali affittati dalla stessa GSK ed il cui costo annuo di affitto risulta essere per Alitalia Servizi di circa euro 160.000,00. Nel corso della nostra visita abbiamo rilevato che molti spazi sono inutilizzati e gli uffici appaiono sovradimensionati rispetto al numero delle persone che vi lavorano.

10. Non è stata fornita evidenza di un'analisi dei carichi di lavoro a cui sono sottoposti i dipendenti della GSK Computer Kft. al fine di determinare il giusto livello di organico da impiegare nei servizi resi alla Alitalia Servizi. Per contratto Alitalia remunera GSK Computer Kft. prevalentemente in base alla quantità di personale impiegato, pertanto si rende indispensabile avere una migliore visibilità sulle performance operative del fornitore.



Direzione Auditing e Sicurezza

**Comunicazione Interna**

Rif. N. A55/2006

Del __27 febbraio 2006__

Da  L. Travaglione (DMD)

A:  Presidente

Oggetto : Relazione di Audit n. 18/2005

Trasmetto copia della Relazione di Audit n. 18/2005 – Processo Facility Management con Ibm.

Il Direttore
L. Travaglione

```
POSTA IN ARRIVO
PRESIDENTE AMM. DELEGATO

    2 8 FEB. 2006

Prot. N°....347....
```

A  00006

 *Alitalia*

Direzione Auditing e Sicurezza

**Scheda di Sintesi per il Presidente:**

Obiettivo dell'audit è stato la verifica del Sistema di Controllo Interno esistente relativamente alla selezione e gestione del contratto di Facility Management con IBM di cui al contratto base del 2000 (Novazione del precedente accordo). Tale contratto è stato volturato in data 26 aprile 2005 a favore di Alitalia Servizi.

Riportiamo di seguito le criticità rilevate:

1. Relativamente a quanto previsto dalla procedura di gara vigente nel 1998, per una fornitura di elaboratori elettronici, le offerte di gara non sono state conservate.

2. I contenuti del contratto non sono di agevole comprensione perché in seguito alle attività di novazione ed estensione intervenute dal 2000 ad oggi non si è provveduto a redigere un unico documento contrattuale organico.

3. Gli Allegati al contratto non sono aggiornati. In particolare:
   - l'Allegato "C" riporta alcuni dispositivi hardware non presenti nel CED o non ubicati dove indicato;
   - l'Allegato "D" riporta l'elenco di macchine di proprietà Alitalia incluse nel canone di manutenzione, alcune delle quali risultano dismesse o non più utilizzate;
   - l'Allegato "I" contiene l'indicazione delle società destinatarie dei servizi. L'estensione dei servizi di cui al contratto ad altri partner commerciali, ulteriori a quelli di cui al citato Allegato, richiede che questo sia aggiornato, previa approvazione scritta della controparte IBM (come previsto dall'art.15.7 della vigente novazione delle "Condizioni contrattuali per la fornitura di servizi" del 2000).

4. L'accordo contrattuale così come definito non contempla l'applicazione di penali collegate al mancato rispetto dei livelli del servizio previsti nell'Allegato F, privando la Compagnia dello strumento di indirizzo e controllo del service provider.

5. Il contratto presenta sovente un riferimento al <u>Manuale delle operazioni</u> per la disciplina di alcune tipologie di relazioni contrattuali ma la documentazione citata non risulta disponibile. Anche il <u>Manuale servizi IBM per Alitalia</u> che disciplina le modalità operative di svolgimento di altri non risulta disponibile.

6. Il contratto, pur presentando livelli di servizio, non prevede adeguati criteri di misurazione degli stessi rendendone di fatto vana la definizione.

7. La modalità di misurazione del costo di alcune licenze avviene, come previsto dal contratto, sulla base del consumo della capacità elaborativa della macchina da parte del software stesso (WLC). Tuttavia sulla stessa CPU insistono anche software già valorizzati come costi fissi che rientrano anche nel consumo della capacità elaborativa della macchina stessa: questo effetto non viene scontato

| Direttore Auditing e Sicurezza | Luigi Travaglione | |
| Responsabile Financial Audit | Andrea Palombo | |
| Lead Auditor | Vito Ruggeri | |
| Collaborazione | PricewaterhouseCoopers Advisory | |
| Data Approvazione Presidente : | | |
| Audit Opinion: | | Richiede attenzione |



Direzione Auditing e Sicurezza

Comunicazione Interna

Rif. N. A70/2006

Del _____ 01 marzo 2006

Da  L. Travaglione (DMD)

A:   Presidente

Oggetto : Relazione di Audit n. 32/2005

Trasmetto copia della Relazione di Audit n. 32/2005 – Scalo Boston.

Il Direttore
L. Travaglione

POSTA IN ARKIVO
PRESIDENTE AMM. DELEGATO

02 MAR 2006

Prot. n.     3C

A  00008

INTERNAL AUDIT

**Scheda di Sintesi per il Presidente:**

La verifica effettuata ha evidenziato dal punto di vista del sistema di controllo interno le seguenti non conformità:

1. I controlli di conformità per la certificazione del servizio ricevuto risultano inficiati dall'assenza del contratto di riferimento che ne dettagli quantità e modalità di erogazione con evidenziazione di mancanze nel riscontro tra fattura e prestazione fornita.

2. I servizi gestiti dal Responsabile dello scalo non sono supportati da una documentazione (contratti) adeguata; nello specifico tale documentazione risulta spesso assente o in ogni caso non completa negli aspetti formali (firma di autorizzazione) e sostanziali (carenza del dettaglio delle specifiche tecniche).

3. Per quanto riguarda la consuntivazione dei servizi sono state evidenziate delle carenze che potenzialmente portano ad esporre la Compagnia a riconoscere importi per beni/servizi non ricevuti.

4. Il processo relativo alla gestione centralizzata degli stock di materiale di consumo e di uso ha evidenziato carenze e problematiche operative con costi aggiuntivi per la Compagnia.

5. E' stata riscontrata l'assenza, per diverse tipologie di costo, del controllo di merito sui prezzi applicati in fattura e sull'imputazione del costo alla corretta voce di costo da parte dell'amministrazione di NYC che potenzialmente porta ad esporre la Compagnia a riconoscere importi superiori al dovuto.

6. I servizi gestiti dall'Amministrazione di NYC non sono supportati da una documentazione (contratti) adeguata; nello specifico tale documentazione risulta spesso assente o in ogni caso non completa negli aspetti formali (firma di autorizzazione) e sostanziali (carenza del dettaglio delle specifiche tecniche).

7. Il controllo a posteriori delle prestazioni per i servizi regolamentati dalla gestione di liquidazione tramite Clearing House risulta di fatto non attuato.

8. La verifica, da parte del Responsabile dello scalo, delle transazioni imputate sul centro di costo dello scalo risulta nella sostanza assente non avendo lo stesso alcuna visibilità sui sistemi contabili e non essendo di fatto supportato da alcuna reportistica prodotta dagli uffici amministrativi di NYC.

| | | |
|---|---|---|
| Direttore Auditing e Sicurezza | Luigi Travaglione | |
| Responsabile Operational Audit | Antonio Perno | |
| Lead Auditor | Flavio Monopoli | |

| | |
|---|---|
| Data Approvazione Presidente : | xx/xx/2006 |
| Audit Opinion: | INADEGUATO |



Direzione Auditing e Sicurezza

**Comunicazione Interna**

Rif. N. A71/2006

Del    01 marzo 2006

Da   L. Travaglione (DMD)

A:   Presidente

Oggetto : Relazione di Audit n. 33/2005

Trasmetto copia della Relazione di Audit n. 33/2005 – Scalo New York - JFK.

Il Direttore
L. Travaglione

POSTA IN ARRIVO
PRESIDENTE AMM. DELEGATO

0 2 MAR 2006

Prot. N° 361

A  00010

INTERNAL AUDIT

**Scheda di Sintesi per il Presidente:**

La verifica effettuata ha evidenziato dal punto di vista del sistema di controllo interno le seguenti non conformità:

1. I controlli di conformità per la certificazione del servizio ricevuto risultano inficiati dall'assenza del contratto di riferimento che ne dettagli quantità e modalità di erogazione con evidenziazione di mancanze nel riscontro tra fattura e prestazione fornita.

2. I servizi gestiti dal Responsabile dello scalo non sono supportati da una documentazione (contratti) adeguata; nello specifico tale documentazione risulta spesso assente o in ogni caso non completa negli aspetti formali (firma di autorizzazione) e sostanziali (carenza del dettaglio delle specifiche tecniche).

3. Per quanto riguarda la consuntivazione dei servizi sono state evidenziate delle carenze che potenzialmente portano ad esporre la Compagnia a riconoscere importi per beni/servizi non ricevuti.

4. Il processo relativo alla gestione centralizzata degli stock di materiale di consumo e di uso per la fornitura di catering ha evidenziato carenze e problematiche operative con costi aggiuntivi per la Compagnia.

5. La gestione delle attività in ambito sicurezza non risulta né adeguatamente supportata da un formale contratto né da un dettaglio delle specifiche tecniche del servizio fornito.

6. E' stata riscontrata l'assenza, per diverse tipologie di costo, del controllo di merito sui prezzi applicati in fattura e sull'imputazione del costo alla corretta voce di costo da parte dell'amministrazione di NYC che potenzialmente porta ad esporre la Compagnia a riconoscere importi superiori al dovuto.

7. I servizi gestiti dall'Amministrazione di NYC non sono supportati da una documentazione (contratti) adeguata; nello specifico tale documentazione risulta spesso assente o in ogni caso non completa negli aspetti formali (firma di autorizzazione) e sostanziali (carenza del dettaglio delle specifiche tecniche).

8. Il processo relativo al pagamento anticipato del carburante ha evidenziato carenze sul controllo dei consumi provocando un esborso di importi non dovuti al fornitore.

9. La verifica, da parte del Responsabile dello scalo, delle transazioni imputate sul centro di costo dello scalo risulta nella sostanza assente non avendo lo stesso alcuna visibilità sui sistemi contabili e non essendo di fatto supportato da alcuna reportistica prodotta dagli uffici amministrativi di NYC.

*Mi sembra un disastro – Provvediamo subito ove possibile*

| | | |
|---|---|---|
| Direttore Auditing e Sicurezza | Luigi Travaglione | |
| Responsabile Operational Audit | Antonio Perno | |
| Lead Auditor | Flavio Monopoli | |

| Data Approvazione Presidente : | xx/yy/2006 |
|---|---|
| Audit Opinion: | RICHIEDE ATTENZIONE |

A  00011

INTERNAL AUDIT

Scheda di Sintesi per il Presidente:

La verifica effettuata ha evidenziato dal punto di vista del sistema di controllo interno le seguenti non conformità:

1. I controlli di conformità per la certificazione del servizio ricevuto risultano inficiati dall'assenza del contratto di riferimento che ne dettagli quantità e modalità di erogazione con evidenziazione di mancanze nel riscontro tra fattura e prestazione fornita.

2. I servizi gestiti dal Responsabile dello scalo non sono supportati da una documentazione (contratti) adeguata; nello specifico tale documentazione risulta spesso assente o in ogni caso non completa negli aspetti formali (firma di autorizzazione) e sostanziali (carenza del dettaglio delle specifiche tecniche).

3. Per quanto riguarda la consuntivazione dei servizi sono state evidenziate delle carenze che potenzialmente portano ad esporre la Compagnia a riconoscere importi per beni/servizi non ricevuti.

4. Il processo relativo alla gestione centralizzata degli stock di materiale di consumo e di uso per la fornitura di catering ha evidenziato carenze e problematiche operative con costi aggiuntivi per la Compagnia.

5. La gestione delle attività in ambito sicurezza non risulta né adeguatamente supportata da un formale contratto né da un dettaglio delle specifiche tecniche del servizio fornito.

6. E' stata riscontrata l'assenza, per diverse tipologie di costo, del controllo di merito sui prezzi applicati in fattura e sull'imputazione del costo alla corretta voce di costo da parte dell'amministrazione di NYC che potenzialmente porta ad esporre la Compagnia a riconoscere importi superiori al dovuto.

7. I servizi gestiti dall'Amministrazione di NYC non sono supportati da una documentazione (contratti) adeguata; nello specifico tale documentazione risulta spesso assente o in ogni caso non completa negli aspetti formali (firma di autorizzazione) e sostanziali (carenza del dettaglio delle specifiche tecniche).

8. Il processo relativo al pagamento anticipato del carburante ha evidenziato carenze sul controllo dei consumi provocando un esborso di importi non dovuti al fornitore.

9. Il controllo a posteriori delle prestazioni per i servizi regolamentati dalla gestione di liquidazione tramite Clearing House risulta di fatto non attuato.

10. La verifica, da parte del Responsabile dello scalo, delle transazioni imputate sul centro di costo dello scalo risulta nella sostanza assente non avendo lo stesso alcuna visibilità sui sistemi contabili e non essendo di fatto supportato da alcuna reportistica prodotta dagli uffici amministrativi di NYC.

*Sembra un'allocazione di Delinquenze – Non si pone
auditore – Cambiano persone e processi  ld 6/3*

| | | |
|---|---|---|
| Direttore Auditing e Sicurezza | Luigi Travaglione | |
| Responsabile Operational Audit | Antonio Perno | |
| Lead Auditor | Flavio Monopoli | |

| | |
|---|---|
| Data Approvazione Presidente : | |
| Audit Opinion: | xx/yy/2006 |
| | INADEGUATO |



Direzione Auditing e Sicurezza

Comunicazione Interna

Rif. N. A74/2006

Del    01 marzo 2006

Da   L. Travaglione (DMD)

A:   Presidente

Oggetto : Relazione di Audit n. 36/2005

Trasmetto copia della Relazione di Audit n. 36/2005 – Scalo Washington.

Il Direttore
L. Travaglione

POSTA IN ARRIVO
PRESIDENTE AMM. DELEGATO

0 2 MAR. 2006

Prot. N°........36........

A   00014

INTERNAL AUDIT

**Scheda di Sintesi per il Presidente:**

La verifica effettuata ha evidenziato dal punto di vista del sistema di controllo interno le seguenti non conformità:

1. I controlli di conformità per la certificazione del servizio ricevuto risultano inficiati dall'assenza del contratto di riferimento che ne dettagli quantità e modalità di erogazione con evidenziazione di mancanze nel riscontro tra fattura e prestazione fornita;

2. Il controllo sui servizi ricevuti, gestiti dal Responsabile dello scalo, non è supportato da una documentazione (contratti) adeguata; nello specifico tale documentazione risulta spesso assente o in ogni caso non completa negli aspetti formali (firma di autorizzazione) e sostanziali (carenza del dettaglio delle specifiche tecniche);

3. Il processo relativo alla gestione centralizzata degli stock di materiale di consumo e di uso per la fornitura di catering ha evidenziato carenze e problematiche operative con costi aggiuntivi per la Compagnia;

4. La gestione delle attività in ambito sicurezza non risulta adeguatamente supportata da un contratto che dettagli puntualmente le specifiche tecniche del servizio fornito.

5. E' stata riscontrata l'assenza, per diverse tipologie di costo, del controllo di merito sui prezzi applicati in fattura e sull'imputazione del costo alla corretta voce di costo da parte dell'amministrazione di NYC che potenzialmente portano ad esporre la Compagnia a riconoscere importi superiori al dovuto;

6. Il controllo sui servizi ricevuti, gestiti dall'Amministrazione, non è supportato da una documentazione (contratti) adeguata; nello specifico tale documentazione risulta spesso assente o in ogni caso non completa negli aspetti formali (firma di autorizzazione) e sostanziali (carenza del dettaglio delle specifiche tecniche).

7. Il controllo a posteriori delle prestazioni fornite per i servizi regolamentati dalla gestione di liquidazione tramite Clearing House risulta di fatto non attuato.

8. la verifica, da parte del Responsabile, delle transazioni imputate sul centro di costo dello scalo risulta nella sostanza assente non avendo lo stesso alcuna visibilità sui sistemi contabili.

| | | |
|---|---|---|
| Direttore Auditing e Sicurezza | Luigi Travaglione | |
| Responsabile Operational Audit | Antonio Perno | |
| Lead Auditor | Vito Ruggeri | |

| Data Approvazione Presidente : | |
|---|---|
| Audit Opinion: | xx/yy/2006 |
| | RICHIEDE ATTENZIONE |

A  00015



Direzione Auditing e Sicurezza

**Comunicazione Interna**

Rif. N. A72/2006

Del    01 marzo 2006

Da  L. Travaglione (DMD)

A:   Presidente

Oggetto : Relazione di Audit n. 34/2005

Trasmetto copia della Relazione di Audit n. 34/2005 – Scalo Chicago.

Il Direttore
L. Travaglione

POSTA IN ARRIVO
PRESIDENTE AMM. DELEGATO

0 2 MAR 2006

Prot. N° .....362...

A  00016

INTERNAL AUDIT

**Scheda di Sintesi per il Presidente:**

La verifica effettuata ha evidenziato dal punto di vista del sistema di controllo interno le seguenti non conformità:

1. I controlli di conformità per le certificazione dei servizi ricevuti risulta inficiata dall'assenza dei contratti di riferimento che ne dettagli quantità e modalità di erogazione con evidenziazione di mancanze nel riscontro tra fattura e prestazione fornita ciò portando potenzialmente ad esporre la Compagnia a riconoscere importi per beni/servizi non ricevuti;

2. La gestione documentale dei contratti (completezza/archiviazione/classificazione) risulta non adeguata; nello specifico tale documentazione risulta spesso assente o in ogni caso non completa negli aspetti formali (firma di autorizzazione) e sostanziali (carenza del dettaglio delle specifiche tecniche);

3. Il processo relativo alla gestione centralizzata degli stock di materiale di consumo e di uso per la fornitura di catering ha evidenziato carenze e problematiche operative con costi aggiuntivi per la Compagnia;

4. La gestione delle attività in ambito sicurezza non risulta né adeguatamente supportata da un formale contratto né da un dettaglio delle specifiche tecniche del servizio fornito.

5. E' stata riscontrata l'assenza, per diverse tipologie di costo, del controllo di merito sui prezzi applicati in fattura e sull'imputazione del costo alla corretta voce di costo da parte dell'amministrazione di NYC che potenzialmente portano ad esporre la Compagnia a riconoscere importi superiori al dovuto;

6. Il processo relativo al pagamento anticipato del carburante ha evidenziato carenze sul controllo dei consumi provocando un esborso di importi non dovuti al fornitore.

7. Il controllo a posteriori delle prestazioni fornite per i servizi regolamentati dalla gestione di liquidazione tramite Clearing House risulta di fatto non attuato;

8. Il processo relativo ai servizi di handling è completamente gestito dal Responsabile di scalo. E' stata rilevata l'assenza di un coinvolgimento della funzione organizzativa ed amministrativa finalizzato al dimensionamento delle risorse del fornitore terzo da impiegare presso lo scalo, non consentendo di fatto la certificazione del corretto fabbisogno.

9. la verifica, da parte del Responsabile, delle transazioni imputate sul centro di costo dello scalo risulta nella sostanza assente non avendo lo stesso alcuna visibilità sui sistemi contabili e non essendo di fatto supportato da alcuna reportistica prodotta dagli uffici amministrativi di NYC.

| | | |
|---|---|---|
| Direttore Auditing e Sicurezza | Luigi Travaglione | |
| Responsabile Operational Audit | Antonio Perno | |
| Lead Auditor | Vito Ruggeri | |

| | | |
|---|---|---|
| Data Approvazione Presidente : | | |
| Audit Opinion: | | xx/yy/2006 |
| | | INADEGUATO |

A  00017



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
CALIFORNIA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
JAPAN
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Anne Lutz, hereby certify that the following documents are to the best of my knowledge and belief, true and accurate translations of A 00003 - A 00017 from Italian into English.

Anne Lutz

Sworn to before me this
April 18, 2008

Signature, Notary Public

**Katharine L Perekslis**
Notary Public, State of New York
No. 01PE6181423
Qualified in QUEENS County
Commission Expires Jan 28, 20�... 
Stamp, Notary Public

**Alitalia**

*The President and Managing Director*

Rome, March 6, 2006
Prot. PRD-103/06P

> Eng. Massimo Cestaro
> Eng. Roberto Renon
> Dr. Giancarlo Schisano
> Dr. Gabirele Spazzadeschi

> c.c.   Dr. Luigi Travaglione

I am sending you a copy of the summary prepared for me by Dr. Travaglione, of the Audit reports on the stations of Boston, New York, - JFK, Newark, Washington, Chicago, Budapest and for the "Facility Management with IBM" Process.

It seems to me that everything shows the condition of deplorable and risky degradation of the aforementioned stations and the complete abandonment of our areas abroad.

Consequently, I need to meet with you to understand what needs to be done, both concerning the Processes and the persons in order to reach an optimal degree of efficiency and correct management, as is usual in any well managed company.

> Giancarlo Cimoli
> [signature]

A 00003

*Alitalia* [illegible]

Audit and Safety Department

Internal Communication

Ref. No. <u>A54/2006</u>
Of <u>February 27, 2006</u>

From:  L. Travaglione (DMD)
To:    President

Re:    Audit Report No. 1/2006

I am transmitting a copy of the Audit Report No. 1/2006 – Accounting Center of Budapest.

Director

L. Travaglione
[signature]

> [stamp]
> INCOMING CORRESPONDENCE
> PRESIDENT – MANAGING DIRECTOR
> FEBRUARY 28, 2006
> Prot. No. 346

A 00004

*Alitalia* [illegible]

Audit and Safety Department

---

Synthesis Table for the President:

The objective of the audit was to verify the internal control system for the regulation of the administrative and accounting activities carried out on behalf of Alitalia Servizi, by the company GSK Computer Kft, headquartered in Budapest.

We report below the criticisms expressed:

1.  There is no procedure to regulate the modalities and time frames for sending summary documentation of collection and payments from the peripheries to the Accounting Center. This circumstance causes difficulties and delays in obtaining data for accounting entries.

2.  The Accounting Center intends to manage the missing matchings between the tickets sold and flown. A relevant number of differences are caused by the lack of entry into the system of the supply of tickets by the Administrative Managers. (UA).

3.  The activity of preparation of the documentation for collection of the sales made with credit cards indicates double manual data entry with the consequent wasting of time and risks of error.

4.  A significant quantity of differences generated by the system of Alitalia Cargo which manages the stocks of bills of lading, of sales data and provides reports for billing (C.R.E.A.M.) is caused by the lack of entry into the system of the stocks by the Administrative Managers (UA) and by the lack of entry into the system by the Cargo Commercial Employees (UX) of the rates for promotional initiatives and/or local commercial agreements.

5.  The posting to the accounts of the data concerning the Alicorporate promotion is done in part manually, with the consequent waste of time and risk of typing errors.

6.  There is no procedure to govern the modalities and timeframes for the stations to send the summary forms of the level of use of the commercial agreement, which are entered manually into the system for billing (MAGIC).

7.  Concerning the activities carried out by the Accounting Center on the date of the audit, there was no documentary evidence provided concerning the request for activity by Alitalia, or the respective feasibility study and the consequent offers from the provider. According to what we were told, in general the agreements to supply new services are made verbally.

8.  The contract executed with GSK Computer contains clauses that may cause a significant influence of Alitalia Servizi on the performance of the provider, with potential legal, economic and financial effects.

9.  The activities of GSK Computer Kfl take place in premises leased by GSK itself, whose annual rent is, for Alitalia Servizi approximately euro 180,000.00. During our visit, we found that many spaces are unused and the offices seem to be oversized as compared to the number of persons who work there.

10. No evidence was given to an analysis of the workloads of the employees of GSK Computer Kft in order to determine the correct level of the payroll to be employed in the services rendered to Alitalia Servizi. By contract, Alitalia pays GSK Computer Kft mainly based on the number of persons employed, and therefore it is indispensable to have a better visibility of the operating performance of the supplier.

A 00005

*Alitalia* [illegible]

Audit and Safety Department

Internal Communication

Ref. No. <u>A55/2006</u>
Of <u>February 27, 2006</u>

From:  L. Travaglione (DMD)
To:      President

Re:      Audit Report No. 18/2005

I am transmitting a copy of the Audit Report No. 18/2005 – Process Facility Management with IBM.

Director

L. Travaglione
[signature]

```
[stamp]
INCOMING CORRESPONDENCE
PRESIDENT – MANAGING DIRECTOR
FEBRUARY 28, 2006
Prot. No. 347
```

A 00006

*Alitalia* [illegible]

Audit and Safety Department

---

Synthesis Table for the President:

The objective of the audit was to verify the Internal Control System existing in connection with the selection and management of the Facility Management contract with IBM, as per the basic contract of 2000 (Novation of the previous agreement). This contract transferred on April 26, 2005 to Alitalia Servizi.

We report below the criticisms expressed:

1.  Concerning the provisions of the tender procedure valid in 1998, to supply electronic processors, the tender offers have not been kept.

2.  The contents of the contract are not easy to understand because following the novation and extension that took place in 2000, to date, there has not been a single organic contractual document written.

3.  The Addenda to the contract have not been updated. In particular:
    * Addendum "C" reports certain hardware devices which are not present in the CED or not found where indicated
    * Addendum "D" reports the list of machines owned by Alitalia included in the maintenance fee, some of which have been scrapped or are no longer used.
    * Addendum "I" contains the indication of the companies receiving services. The extension of the services stated in the contract to other commercial partners, additional to those listed in the Addendum, requires that the Addendum be updated, after written approval of the counterpart IBM (as indicated in article 15.7 of the current novation of the "Contractual conditions for the supply of services" of 2000).

4.  The contractual agreement, as defined, does not contemplate the application of penalties related to the failure to comply with the service levels indicated in Addendum F, depriving the Company from its instrument of instruction and control of the service provider.

5.  The contract often refers to the Operation Manual to govern certain types of contractual relations, but the documentation cited is not available. The IBM service Manual for Alitalia that governs the operating modalities for the performance of others is not available either.

6.  The contract, even though it presents levels of service, does not present suitable criteria to measure them, making the definition actually null.

7.  The modality to measure the cost of certain licenses, takes place, as indicated in the contract, based on the consumption of the processing capacity of the machine by the software itself. (WLC). However, in the same CPU, there is also software already evaluated as fixed costs, which are also included in the consumption of the processing capacity of the machine itself. This effect is not deducted.

---

| Director Auditing and Safety | Luigi Travaglione | [signature] |
|---|---|---|
| Manager Financial Audit | Andrea Palombo | [signature] |
| Lead Auditor | Vito Ruggeri | [signature] |
| Collaboration | PricewaterhouseCoopers Advisory | |

| Date President Approved: | |
|---|---|
| Audit Opinion: | Requires attention |

A 00007

*Alitalia* [illegible]

Audit and Safety Department

Internal Communication

Ref. No. A70/2006
Of March 1, 2006

From:  L. Travaglione (DMD)
To:      President

Re:      Audit Report No. 32/2005

I am transmitting a copy of the Audit Report No. 32/2005 – Boston Station.

Director

L. Travaglione
[signature]

```
┌─────────────────────────────────────────┐
│              [stamp]                      │
│      INCOMING CORRESPONDENCE              │
│    PRESIDENT – MANAGING DIRECTOR          │
│           MARCH 2, 2006                   │
│            [illegible]                    │
└─────────────────────────────────────────┘
```

A 00008

INTERNAL AUDIT

Synthesis Table for the President:

The audit carried showed, from the viewpoint of the internal control system, the following non-compliance:

1.  The conformity controls for the certification of the service received are marred by the absence of a reference contract that would detail their number and payment terms, showing shortages in the comparison between the invoice and the service provided.

2.  The services managed by the Manager of the station are not supported by suitable documentation (contracts); specifically, this documentation is often absent or in any case incomplete in formal aspects (authorization signature) and substantial aspects (lack of details of technical specifications).

3.  Concerning the accounting of the services, shortages were found which potentially might expose the company to pay amounts for goods/services not received.

4.  The process concerning the centralized management of the stocks of consumption and use materials has shown shortages and operating problems with additional costs for the Company.

5.  For various types of costs, there was no control on the prices applied in the invoice and on the allocation of the cost to the correct cost item by the NYC Administration, which potentially may expose the Company to pay amounts higher than those owed.

6.  The services managed by the NYC Administration are not supported by adequate documentation (contract); specifically, this documentation is often absent and in any case incomplete in formal aspects (authorization signature) and substantial aspects (lack of details of technical specifications).

7.  The a posteriori control of the payments for services regulated by clearance through the Clearing House is actually not done.

8.  The verification by the Manager of the station, of the transactions charged to the cost center of the station is practically absent, and has no visibility in the accounting systems and in fact is not supported by any reports produced by the NYC administrative offices.

|  | | [signature] |
|---|---|---|
| Director Auditing and Safety | Luigi Travaglione | [signature] |
| Manager Operational Audit | Antonio Perno | [signature] |
| Lead Auditor | Flavio Monopoli | [signature] |

| Date President Approved: | xx/yy/2006 |
|---|---|
| Audit Opinion: | INADEQUATE |

A 00009

*Alitalia* [illegible]

Audit and Safety Department

Internal Communication

Ref. No. <u>A71/2006</u>
Of <u>March 1, 2006</u>

From:  L. Travaglione (DMD)
To:      President

Re:      Audit Report No. 33/2005

I am transmitting a copy of the Audit Report No. 33/2005 – New York -- JFK Station.

Director

L. Travaglione
[signature]

```
+-----------------------------------------------+
|                  [stamp]                      |
|        INCOMING CORRESPONDENCE                |
|   PRESIDENT – MANAGING DIRECTOR               |
|             MARCH 2, 2006                      |
|             Prot. No. 361                      |
+-----------------------------------------------+
```

A 00010

INTERNAL AUDIT

Synthesis Table for the President:

The audit carried showed, from the viewpoint of the internal control system, the following non-compliance:

1. The conformity controls for the certification of the service received are marred by the absence of a reference contract that would detail their number and payment terms, showing shortages in the comparison between the invoice and the service provided.

2. The services managed by the Manager of the station are not supported by suitable documentation (contracts); specifically, this documentation is often absent or in any case incomplete in formal aspects (authorization signature) and substantial aspects (lack of details of technical specifications).

3. Concerning the accounting of the services, shortages were found which potentially might expose the company to pay amounts for goods/services not received.

4. The process concerning the centralized management of the stocks of consumption and use materials for the provision of catering has shown shortages and operating problems with additional costs for the Company.

5. Management of security activities is neither adequately supported by a formal contract nor by a detail of the technical specifications of the service provided.

6. For various types of costs, there was no control on the prices applied in the invoice and on the allocation of the cost to the correct cost item by the NYC Administration, which potentially may expose the Company to pay amounts higher than those owed.

7. The services managed by the NYC Administration are not supported by adequate documentation (contract); specifically, this documentation is often absent and in any case incomplete in formal aspects (authorization signature) and substantial aspects (lack of details of technical specifications).

8. The process related to the pre-payment for fuel has shown shortcomings in the control of the consumption, causing a payment of amounts not owed to the supplier.

9. The verification by the Manager of the station, of the transactions charged to the cost center of the station is practically absent, and has no visibility in the accounting systems and in fact is not supported by any reports produced by the NYC administrative offices.

[handwritten] It look disastrous to me – let's state measures immediately
[signature]

| Director Auditing and Safety | Luigi Travaglione | [signature] |
| Manager Operational Audit | Antonio Perno | [signature] |
| Lead Auditor | Flavio Monopoli | [signature] |

| Date President Approved: | xx/yy/2006 |
| Audit Opinion: | REQUIRES ATTENTION |

A 00011

*Alitalia* [illegible]

Audit and Safety Department

Internal Communication

Ref. No. <u>A73/2006</u>
Of <u>March 1, 2006</u>

From:  L. Travaglione (DMD)
To:      President

Re:      Audit Report No. 35/2005

I am transmitting a copy of the Audit Report No. 35/2005 – Newark Station.

Director

L. Travaglione
[signature]

```
+-------------------------------------------+
|              [stamp]                      |
|      INCOMING CORRESPONDENCE              |
|   PRESIDENT – MANAGING DIRECTOR           |
|           MARCH 2, 2006                    |
|            Prot. No. 363                   |
+-------------------------------------------+
```

A 00012

INTERNAL AUDIT

Synthesis Table for the President:

The audit carried showed, from the viewpoint of the internal control system, the following non-compliance:

1. The conformity controls for the certification of the service received are marred by the absence of a reference contract that would detail their number and payment terms, showing shortages in the comparison between the invoice and the service provided.

2. The services managed by the Manager of the station are not supported by suitable documentation (contracts); specifically, this documentation is often absent or in any case incomplete in formal aspects (authorization signature) and substantial aspects (lack of details of technical specifications).

3. Concerning the accounting of the services, shortages were found which potentially might expose the company to pay amounts for goods/services not received.

4. The process concerning the centralized management of the stocks of consumption and use materials for the provision of catering has shown shortages and operating problems with additional costs for the Company.

5. Management of security activities is neither adequately supported by a formal contract nor by a detail of the technical specifications of the service provided.

6. For various types of costs, there was no control on the prices applied in the invoice and on the allocation of the cost to the correct cost item by the NYC Administration, which potentially may expose the Company to pay amounts higher than those owed.

7. The services managed by the NYC Administration are not supported by adequate documentation (contract); specifically, this documentation is often absent and in any case incomplete in formal aspects (authorization signature) and substantial aspects (lack of details of technical specifications).

8. The process related to the pre-payment for fuel has shown shortcomings in the control of the consumption, causing a payment of amounts not owed to the supplier.

9. The a posteriori control of the payments for services regulated by clearance through the Clearing House is actually not done.

10. The verification by the Manager of the station, of the transactions charged to the cost center of the station is practically absent, and has no visibility in the accounting systems and in fact is not supported by any reports produced by the NYC administrative offices.

[handwritten] ??Seems like a huge [illegible] – It can't be [illegible] – Let's change the manager and processes
[signature]

| Director Auditing and Safety | Luigi Travaglione | [signature] |
| Manager Operational Audit | Antonio Perno | [signature] |
| Lead Auditor | Flavio Monopoli | [signature] |

| Date President Approved: | xx/yy/2006 |
| Audit Opinion: | INADEQUATE |

A 00013

*Alitalia* [illegible]

Audit and Safety Department

Internal Communication

Ref. No. <u>A74/2006</u>
Of <u>March 1, 2006</u>

From:  L. Travaglione (DMD)
To:      President

Re:      Audit Report No. 36/2005

I am transmitting a copy of the Audit Report No. 36/2005 – Washington Station.

Director

L. Travaglione
[signature]

```
+-------------------------------------------+
|                 [stamp]                   |
|       INCOMING CORRESPONDENCE             |
|    PRESIDENT – MANAGING DIRECTOR          |
|             MARCH 2, 2006                 |
|             Prot. No. 346                 |
+-------------------------------------------+
```

A 00014

INTERNAL AUDIT

Synthesis Table for the President:

The audit carried showed, from the viewpoint of the internal control system, the following non-compliance:

1.  The conformity controls for the certification of the service received are marred by the absence of a reference contract that would detail their number and payment terms, showing shortages in the comparison between the invoice and the service provided.

2.  The control received on services managed by the Manager of the station is not supported by suitable documentation (contracts); specifically, this documentation is often absent or in any case incomplete in formal aspects (authorization signature) and substantial aspects (lack of details of technical specifications).

3.  The process concerning the centralized management of the stocks of consumption and use materials for the provision of catering has shown shortages and operating problems with additional costs for the Company.

4.  Management of security activities is neither adequately supported by a formal contract nor by a detail of the technical specifications of the service provided.

5.  For various types of costs, there was no control on the prices applied in the invoice and on the allocation of the cost to the correct cost item by the NYC Administration, which potentially may expose the Company to pay amounts higher than those owed.

6.  The control received on services managed by the Administration is not supported by adequate documentation (contract); specifically, this documentation is often absent and in any case incomplete in formal aspects (authorization signature) and substantial aspects (lack of details of technical specifications).

7.  The a posteriori control of the payments for services provided regulated by clearance through the Clearing House is actually not done.

8.  The verification by the Manager of the transactions charged to the cost center of the station is practically absent, and has no visibility in the accounting systems.

[signature]

| | | |
|---|---|---|
| Director Auditing and Safety | Luigi Travaglione | [signature] |
| Manager Operational Audit | Antonio Perno | [signature] |
| Lead Auditor | Flavio Monopoli | [signature] |

| | |
|---|---|
| Date President Approved: | xx/yy/2006 |
| Audit Opinion: | REQUIRES ATTENTION |

A 00015

*Alitalia* [illegible]

Audit and Safety Department

Internal Communication

Ref. No. A72/2006
Of March 1, 2006

From:  L. Travaglione (DMD)
To:       President

Re:       Audit Report No. 34/2005

I am transmitting a copy of the Audit Report No. 34/2005 – Chicago Station.

Director

L. Travaglione
[signature]

```
+-----------------------------------------+
|               [stamp]                   |
|      INCOMING CORRESPONDENCE            |
|  PRESIDENT – MANAGING DIRECTOR          |
|           MARCH 2, 2006                  |
|           Prot. No. 362                  |
+-----------------------------------------+
```

A 00016

## INTERNAL AUDIT

Synthesis Table for the President:

The audit carried showed, from the viewpoint of the internal control system, the following non-compliance:

1.  The conformity controls for the certification of the service received are marred by the absence of a reference contract that would detail their number and payment terms, showing shortages in the comparison between the invoice and the service provided.

2.  The services managed by the Manager of the station are not supported by suitable documentation (contracts); specifically, this documentation is often absent or in any case incomplete in formal aspects (authorization signature) and substantial aspects (lack of details of technical specifications).

3.  Concerning the accounting of the services, shortages were found which potentially might expose the company to pay amounts for goods/services not received.

4.  The process concerning the centralized management of the stocks of consumption and use materials has shown shortages and operating problems with additional costs for the Company.

5.  For various types of costs, there was no control on the prices applied in the invoice and on the allocation of the cost to the correct cost item by the NYC Administration, which potentially may expose the Company to pay amounts higher than those owed.

6.  The services managed by the NYC Administration are not supported by adequate documentation (contract); specifically, this documentation is often absent and in any case incomplete in formal aspects (authorization signature) and substantial aspects (lack of details of technical specifications).

7.  The a posteriori control of the payments for services regulated by clearance through the Clearing House is actually not done.

8.  The verification by the Manager of the station, of the transactions charged to the cost center of the station is practically absent, and has no visibility in the accounting systems and in fact is not supported by any reports produced by the NYC administrative offices.

[handwritten] idem with [illegible]

| | | [signature] |
|---|---|---|
| Director Auditing and Safety | Luigi Travaglione | [signature] |
| Manager Operational Audit | Antonio Perno | [signature] |
| Lead Auditor | Flavio Monopoli | [signature] |

| | |
|---|---|
| Date President Approved: | xx/yy/2006 |
| Audit Opinion: | INADEQUATE |

A 00017