Exhibit 60

# CHARGE OF DISCRIMINATION

| | ENTER CHARGE NUMBER |
|---|---|
| This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form. | FEPA<br>[ ] EEOC |

<u>New York State Division of Human Rights</u> and EEOC
*(State or local Agency, if any)*

| NAME (Indicate Mr., Ms., or Mrs.)<br>Dursun Oksuz | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| STREET ADDRESS  CITY, STATE AND ZIP CODE<br>3185 Crescent Street, Astoria, N.Y.  11106 | DATE OF BIRTH<br>8/10/73 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.) *See attached.

| NAME<br>Alitalia Linee Aeree Italeane, S.P.A. | NO. OF EMPLOYEES/MEMBERS<br>more than 15 | TELEPHONE NUMBER (Include Area Code)<br>212-903-3300 |
|---|---|---|
| STREET ADDRESS  CITY, STATE AND ZIP CODE<br>350 Fifth Avenue, Suite 3700, New York, N.Y.  10118 | | COUNTY<br>New York |
| NAME<br>Francesco "Franco" Gallo, Senior Vice President | | TELEPHONE NUMBER (Include Area Code)<br>212-903-3300 |
| STREET ADDRESS  CITY, STATE AND ZIP CODE<br>350 Fifth Avenue, Suite 3700, New York, N.Y.  10118 | | COUNTY<br>New York |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))<br>RACE    COLOR   ✓ SEX   RELIGION   NATIONAL ORIGIN<br>RETALIATION   AGE   DISABILITY   OTHER (Specify) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST  August 2005<br>CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

**See Attached Rider.**

| X I want this charge filed with both the EEOC and the State or local agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary to meet State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Jan 16, 2006         *D. Oksuz*<br>Date            Dursun Oksuz<br>                Charging Party (Signature) | SIGNATURE OF COMPLAINANT RICHARD CORENTHAL<br>Notary Public, State Of New York<br>No. 02CO4967393<br>Qualified In Westchester County<br>Commission Expires June 4, 20_12_<br>*D. Oksuz*<br>Dursun Oksuz<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)<br>Jan 16, 2006 |

EEOC FORM 5 (Rev 06/92)           PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

A 00090

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE. STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

\*

Virgilio ("Gino") Ferrara
Manager, General & Traffic Accounting
Alitalia Linee Aeree Italeane, S.p.A.
350 Fifth Avenue
Suite 3700
New York, NY   10018

Rider - Dursun Oksuz EEOC Charge

1. In or about July 2003, I, Dursun Oksuz ("Oksuz"), a male, started working at Alitalia Linee Acree Italiane, S.p.A. ("Alitalia") in Alitalia's New York office located at 666 Fifth Avenue, New York, New York, as a temp account payable clerk employed by Snelling Personal Temporary Agency. I was initially paid $11.00 per hour as a temp. My hourly rate was increased to $14.00 per hour in or about July, 2004.

2. In or about December 2004, Alitalia hired me as a permanent employee in the position of cashier and financial analyst at an annual salary of $32,000. After six months probation, Alitalia increased my annual salary to $35,000. I reported to Virgilio ("Gino") Ferrara ("Mr. Ferrara"), Alitalia's Manager of General and Traffic Accounting, in the New York office. At all relevant times herein, Mr. Ferrara has been employed by Alitalia as Manager of General and Traffic Accounting at its New York office.

3. In the latter part of August 2005, Mr. Ferrara asked me to help him purchase and install a computer in his apartment located in Glendale, New York. I agreed and met Mr. Ferrara in Queens. Before going to Best Buy to purchase a computer, Mr. Ferrara told me he wanted to pick Francesco Gallo ("Mr. Gallo"). Mr. Ferrara had not previously told me that he planned to pick up Mr. Gallo. We picked up Mr. Gallo in Manhattan and then drove to Best Buy in Queens. After purchasing the computer at Best Buy, we went to a street fair in Queens before going to Mr. Ferrara's apartment. Later that day, Mr. Gallo accompanied Mr. Ferrara and me to Mr. Ferrara's apartment to install the computer.

4. At all relevant times herein, Mr. Gallo has been employed by Alitalia as Senior Vice President of Corporate Affairs for North America and Mexico. It is my understanding that, at all relevant time herein, Mr. Gallo has been one of the most senior and powerful officials in Alitalia's New York Office and oversees many departments, including human resources and regulatory compliance, including Alitalia's compliance with the security requirements of the U.S. Department of Homeland Security and the Federal Aviation Administration ("FAA").

5. After arriving at Mr. Ferrara's apartment, Mr. Gallo and Mr. Ferrara offered me a drink and later made sexual overtures toward me. I felt afraid about what might happen to me at work if I said no to them since Mr. Ferrara was my boss and Mr. Gallo was in charge of the New York office, including supervision of the human resources department. I had sex with Mr. Gallo and Mr. Ferrara in Mr. Ferrara's apartment that evening.

6. Since in or about August 2005, I have had sex on numerous occasions with Mr. Ferrara and Mr. Gallo. Mr. Gallo arranged for me to have sex with him and Mr. Ferrara on trips to Mr. Gallo's house in the Poconos and on trips to Lake Placid, New York, Montreal, Canada and Istanbul, Turkey. Mr. Gallo and Mr. Ferrara covered my hotel and meal expenses on these trips. Mr. Ferrara, Mr. Gallo and I engaged in various forms of sex, including oral sex and anal sex, on numerous occasions. Upon information and belief, Mr. Ferrara is in his early 60's and Mr. Gallo is in his late 50's. I am currently ?

years old. Upon information and belief, Mr. Ferrara and Mr. Gallo, unbeknownst to me, had a sexual relationship before they made sexual overtures toward me.

7. Since in or about August, 2005, Mr. Gallo and Mr. Ferrara repeatedly kissed me, touched me on my backside and made sexual overtures toward me while I was working at Alitalia. I tried to stop them from kissing and touching me while I was working.

8. Since in or about August 2005, Mr. Gallo repeatedly sent me text messages and instant e-mail messages of a sexual nature to my home computer, including messages indicating that he was masturbating while on line with me.

9. Since in or about August 2005, Mr. Ferrara repeatedly sent me instant messages of a sexual nature on my home computer.

10. In or about December 2005, I became increasingly anxious and depressed about Mr. Gallo and Mr. Ferrara. Mr. Gallo and Mr. Ferrara became increasingly jealous of me. I felt like I was simply their sexual object.

11. One day in December, 2005, Mr. Ferrara came into my office and found me looking for another job on the computer. He became alarmed and I believe he told Mr. Gallo that I was looking for another job since Mr. Gallo immediately came to talk to me. Mr. Gallo told me not to leave the company. He said he would try to obtain a promotion for me to a management position. Mr. Gallo also offered me a partial ownership interest in his consulting company called D&G Logistics LLC which I declined.

12. In or about January 2006, I started being treated by a psychiatrist and a psychologist for depression and anxiety because of Mr. Gallo and Mr. Ferrara.

13. In or about December, 2005 and January, 2006, Mr. Gallo told me repeatedly that he was trying to arrange to have me promoted to a management position in Alitalia. In the latter part of January, 2006, Mr. Gallo told me that he was trying to arrange to have me promoted to the position of Vice President of Regulatory Affairs which reports directly to him.

14. On or about February 24, 2006, I was promoted to Vice President of Regulatory Affairs for Alitalia's North American and Mexico operations. My salary was increased to $5,000 per month and I was promised that my salary would be increased to $6,666 per month after I successfully completed six-month probation. I reported directly to Mr. Gallo. Mr. Gallo told me not to worry about passing the probationary period. Mr. Gallo also promised that I would receive training in order for me to perform the duties of Vice President of Regulatory Affairs, which included handling legal and security matters for Alitalia's operations in North America and Mexico.

15. Despite his promises, Mr. Gallo provided me with little training and with very few assignments or responsibilities. It became clear to me that Mr. Gallo arranged for my promotion in order to keep me in the company and to continue to have sex with me. I grew increasingly depressed and anxious over my work situation and started having anxiety attacks at work.

A 00093

16. On or about June 2, 2006, I requested to go on sick leave due to depression and anxiety for which I am receiving medical treatment. I am taking several medications for depression.

17. On or about June 5, 2006, my attorneys sent Alitalia's attorney in Rome a letter complaining about sexual harassment on my behalf. I am currently on sick leave.

3

77734

A  00094